IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARCOS DaSILVA and MATTEUS FERREIRA, on behalf of themselves and all others similarly situated,<br><br>    Plaintiffs,<br><br>v.<br><br>BORDER TRANSFER OF MA, INC.,<br><br>    Defendant. | Case No.: 1:16-cv-11205-PBS |

**MEMORANDUM IN SUPPORT OF**
**<u>MOTION TO DISMISS</u>**

I. **ARGUMENT SUMMARY**

 Border Transfer of MA, Inc. ("Border Transfer") respectfully requests that this Court hold the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501(c) ("FAAAA") preempts both the Massachusetts Wage Act and unjust enrichment claims Plaintiffs assert, and dismiss the Plaintiffs' Class Action Complaint on this ground.

 Border Transfer is a federally-licensed property broker that entered into Contract Carrier Agreements with each Plaintiff's federally-licensed motor carrier business to transport property. Those Agreements detail the scope of the delivery services Plaintiff's respective businesses would provide as independent contractors along with the financial terms for doing so.

 Nothing in Plaintiffs' lawsuit claims Border Transfer failed to honor its obligations under those Agreements. Rather, Plaintiffs' complaint seeks to use Massachusetts state law as a basis to rewrite the terms under which each of them agreed to transport property. In this way, Plaintiffs' claims impermissibly seek to alter the manner in which Border Transfer provides services. Because the FAAAA preempts any state law claim that seeks to modify a broker's contractual obligations related to the rates, routes, or services provided, the FAAAA must preempt both of Plaintiffs' state

law claims. *Rowe v. New Hampshire Motor Transp. Ass'n,* 552 U.S. 364, 371 (2008); *see also Northwest, Inc. v. Ginsburg*, 134 S. Ct. 1422 (2014).

The Court must alternatively dismiss the unjust enrichment claim because the Agreement between Plaintiffs and Border Transfer governs their respective relationships.[1] *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003) ("Where a contract does govern the parties' relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies.").

## II.   BACKGROUND

Border Transfer is a federally authorized property broker. *Agreement* ¶ I(A), II ("[Plaintiff] acknowledges and agrees that [Defendant] is a property broker regulated and authorized by the Federal Motor Carrier Safety Administration ('FMCSA')."). Plaintiff Ferreira operated Father & Son Transporting LLC, and Plaintiff DaSilva operated Alpha Logistics Trucking LLC, both of which were federally authorized motor carriers of property that entered into Agreements with Border Transfer to provided pick-up and delivery services as independent contractors. *Compl.* ¶¶ 2-4, 10 (alleging Plaintiffs delivered Sears product and signed contracts to provide services as independent contractors); *see also Agreements*, ¶ I(C) (Plaintiffs' respective businesses are "authorized by the FMCSA to operate as a motor carrier"), ¶ 2 (services Plaintiffs' respective businesses provides "may include pick-up and/or delivery within residences and business locations" of property), ¶ 8 (Plaintiffs' respective businesses "shall perform the Carrier Services provided for hereunder as an independent contractor").

After their Agreements with Border Transfer ended, Plaintiffs filed this Complaint asserting

---

[1] Plaintiffs DaSilva's and Ferreira's Contract Carrier Agreements are attached as Exhibits A and B. While Plaintiffs did not attach the Agreements to the Complaint, a party filing a Rule 12(b)(6) motion may refer to materials referenced in a complaint *See, e.g., Watterson v. Page,* 987 F.2d 1, 3–4 (1st Cir.1993) (recognizing that a court's consideration of "documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint" does not convert a motion to dismiss to one for summary judgment) (citing cases). The Complaint references the Agreements (*e.g.*, *Compl*., ¶¶ 10, 27), and consequently the Court can consider the Agreements without converting the Motion into one for summary judgment.

claims for: (1) purported violations of the Massachusetts Wage Law (*Compl.* ¶¶ 23-25); and (2) unjust enrichment (*Compl.* ¶¶ 26-27). Both claims are predicated on Border Transfer's alleged misclassification of Plaintiffs as independent contractors. *E.g.*, *Compl.* ¶ 11 (alleging Plaintiffs were misclassified as independent contractors), ¶ 23 and ¶ 26 (incorporating all previous allegations into Massachusetts Wage Law and unjust enrichment claims).

### III.   ARGUMENT

#### A.   Motion to Dismiss Standard

Under Rule 12(b)(6), the Court must dismiss a complaint failing to state a claim for which relief could be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Overka v. Am. Airlines, Inc.*, 790 F.3d 36 (1st Cir. 2015) (granting motion to dismiss after concluding Airline Deregulation Act preempted plaintiff's Massachusetts unjust enrichment claim)[2]; *Remington v. J.B. Hunt Transport, Inc.*, 2015 WL 501884 (D. Mass. Feb. 5, 2015), *aff'd in part*, 15-1252 (1st Cir. Feb. 22, 2016) (granting motion to dismiss after concluding FAAAA preempted Massachusetts Wage Act claim).

#### B.   The FAAAA has a broad preemptive scope

The FAAAA preempts any state law or claim "related to a price, route, or service of any motor carrier . . . broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). There are three exceptions to this exemption, none of which apply here. 49 U.S.C. § 14501(c)(2)(A).[3]

This broad preemption provision emanated from Congressional desire to complete the deregulation of trucking that began in 1980. *See Morales v. Trans World Airlines*, 504 U.S. 374, 384 (1992) (noting Congress' use of the words "related to" in the FAAAA's preemption provision

---

[2] Congress "copied the language of the air-carrier pre-emption provision of the Airline Deregulation Act" in creating the FAAAA, and courts rely on Airline Deregulation Act pre-emption cases in analyzing FAAAA preemption issues. *Rowe*, 552 U.S. at 370.

[3] The three exceptions to the FAAAA's preemption reach are laws specific to (1) state safety regulatory powers; (2) state authority to impose highway route controls or limitations based on the size or weight of the motor vehicle or the hazardous nature of the cargo; and (3) state authority to regulate minimum amounts of financial responsibility relating to motor carrier insurance requirements. These narrow exceptions are not subject to expansion by the judiciary. *Rowe*, 552 U.S. at 374.

expresses "a broad pre-emptive purpose."). Prior to 1980, both federal and state governments regulated the transportation industry. Those regulations dictated, both directly and indirectly, how transportation services could be provided and the prices that could be charged for those services.

In 1980, Congress passed the Motor Carrier Act, which deregulated *interstate* trucking. 94 Stat. 793. Fourteen years later, Congress removed states from the regulatory equation completely when it deregulated *intrastate* trucking by passing the FAAAA. In enacting the FAAAA, Congress' goal was to commend the trucking industry to market forces to ensure competition "efficiency, innovation, and low prices, as well as variety and quality." *Rowe*, 552 U.S. at 371 (internal quotations omitted).

The free market, of course, manifests itself in the form of the agreements willing participants enter into without the government interfering or restricting the terms of those agreements. This broad ban therefore precludes states, and individuals relying on state laws, from advancing claims that would disrupt market-driven outcomes in the transportation industry as reflected in the agreements private parties reach without state interference.

### 1. Plaintiffs' unjust enrichment claim falls within the FAAAA's broad preemptive scope

Plaintiffs' unjust enrichment claim asserts "Border Transfer has been unjustly enriched through the use of independent contractor agreements that violate Massachusetts public policy" and that "Border Transfer [] unjustly benefited by the Plaintiffs' . . . delivery services while requiring Plaintiffs . . . to bear the costs of Border Transfer's delivery business." *Compl.* ¶ 27.

Analyzing whether this claim has a sufficient "connection with, or reference to [a broker's] prices, routes or services"[4] and is therefore preempted under the FAAAA requires a two-step analysis. *Tobin v. Federal Express Corp.*, 775 F.3d 448 (1st Cir. 2014). First, the court must address the "mechanism question" of "whether the Plaintiff's claim is predicated on a law, regulation, or other provision having the force and effect of law." *Id.* at 453. Second, the court

---

[4] *Nw.*, 134 S. Ct. at 1430 (internal quotations omitted).

assesses the "linkage question" of "whether the claim is sufficiently related to [the broker's] prices, routes, or services to warrant preemption." *Id*. (internal quotations omitted).

The first question was answered in the affirmative when the First Circuit addressed Airline Deregulation Act-preemption of unjust enrichment claims in *Brown v. United Airlines, Inc.*, and no reason exists to depart from this precedent here. 720 F.3d 60, 66 (1st Cir. 2013) (holding in the context of an unjust enrichment claim that "to the extent that a state common-law claim relates to a price, route, or service of an air carrier, it is preempted by the" Airline Deregulation Act); *see also Nw.*, 134 S. Ct. at 1431 (concluding Airline Deregulation Act preempted state common law claim given "the ADA's deregulatory aim can be undermined just as surely by a state common-law rule as it can by a state statute or regulation.")

Plaintiffs' unjust enrichment claim also satisfies the linkage requirement given its connection to Border Transfer's services. When determining whether a claim sufficiently relates to the services of a motor carrier or broker to trigger preemption, the First Circuit describes "the relevant inquiry" as "whether enforcement of the plaintiff's claims would impose some obligation on [the broker]-defendant with respect to conduct that, when properly undertaken, is a service." *Tobin*, 775 F.3d at 454.  Because First Circuit precedent dictates that both the decision to work with independent contractors and the financial terms of that work are components of the transportation services provided, the requisite linkage exists and the unjust enrichment claim is therefore FAAAA-preempted. *See Schwann*, 813 F.3d at 438-440; *see also Frey v. Bekins Van Lines, Inc.,* 802 F. Supp. 2d 438, 442 (E.D.N.Y. 2011) (concluding FAAAA preempts "non-contractual state law" unjust enrichment claims and identifying other decisions arriving at same conclusion).

### 2. Plaintiffs' Massachusetts Wage Act claim falls within the FAAAA's broad preemptive scope

Like the unjust enrichment claim, Plaintiffs' Massachusetts Wage Act cause of action is predicated on Border Transfer purportedly misclassifying them as independent contractors and deducting expenses that Plaintiffs contend are Border Transfer's responsibility. *Compl.* ¶¶ 23-25. Whether brought as a common law unjust enrichment claim or statutory claim under the

Massachusetts Wage Act, the FAAAA preempts Plaintiffs efforts to compel service terms different than those in the Agreement.

Specifically, Massachusetts law serves as the predicate for the Massachusetts Wage Act claim, and the "mechanism question" is therefore satisfied. *Tobin*, 775 F.3d at 453; *see also Chambers v. RDI Logistics, Inc.*, 2015 WL 9911425, at *11 (Mass. Super. Ct. Oct. 26, 2015) (finding drivers' claims of misclassification under Section 148B preempted by the FAAAA and describing the Massachusetts' Attorney General's position arguing to the contrary in *Mass. Delivery Ass'n* as "seeking in such action to enforce a policy of hiring employees when market forces prompted delivery companies to adopt an independent contractor model").

The linkage question is likewise satisfied. Both the "decision whether to provide a *service* directly, with one's own employee, or to procure the *services* of an independent contractor" and whether to reimburse "for business related expenses" are decisions implicating "the way in which a company chooses to allocate its resources and incentivize those persons providing the service." *Schwann*, 813 F.3d at 438, 439 (emphasis added). This interference with the service terms of the Agreement is precisely what Congress intended the FAAAA to prohibit—supplanting market forces with a state service-determining law—and accordingly the FAAAA must preempt all of Plaintiffs' efforts to do so here. *See, e.g., Massachusetts Delivery Ass'n v. Healey*, 821 F.3d 187 (1st Cir. 2016); *Schwann*, 813 F.3d at 438-40.

### 3. The FAAAA preempts Prongs 1 and 3 of Section 148B of the Massachusetts Wage Act

Plaintiffs' Massachusetts Wage Act claim is also preempted for the alternative reason that the FAAAA preempts the first and third prongs of the Massachusetts independent contractor law providing the foundation for the Wage Act claim—Section 148B.

Section 148(B) provide that "an individual performing any service . . . shall be considered to be an employee" unless: "(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and, (2) the service is performed outside the usual course of the business of the employer; and, (3)

the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed." In February 2016, the First Circuit held the FAAAA preempted Prong 2 of Section 148B, but left open the question of whether Prongs 1 and 3 could survive the broad scope of FAAAA preemption because the defendant "eschew[ed] any argument that Prongs 1 and 3 . . . were preempted." *Schwann*, 813 F.3d 429.

While the First Circuit did not address whether the FAAAA preempts misclassification claims under the first and third prongs of Section 148B, the FAAAA jurisprudence compels a preemption finding. The First Circuit's preemption analysis, as set out in *Tobin*, focuses on whether the claims at issue would impermissibly impact services, not whether the plaintiff will win. *Tobin*, 775 F.3d at 454. In other words, regardless of the outcome, it is the application of the state law standard to a broker, not the broker's ability to meet that standard, that governs preemption.

In this case, Plaintiffs' claims under Section 148B's first and third prongs seek the same relief that the First Circuit previously found preempted – using a state law to disregard the terms of the Agreements they entered with Border Transfer and recasting them as Border Transfer's employees. That the First Circuit in *Schwann* observed in obiter dicta that prongs one and three bear resemblance to tests applied by other states in determining independent contractor status is irrelevant. The Supreme Court has made clear that it matters not whether the claim at issue is the same as or different from other state law claims. "[T]o interpret the [FAAAA] to permit these, and similar, state requirements could easily lead to a patchwork of state service-determining laws, rules, and regulations. That state regulatory patchwork is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive marketplace." *Rowe*, 552, U.S. at 373.

Lest there be some concern that empirical evidence of a claim's impact on a broker's prices, routes, or services is necessary to support a finding of preemption, the First Circuit has dispelled that notion. "We have previously rejected the contention that empirical evidence is necessary to warrant FAAAA preemption, and allowed courts to 'look[] to the logical effect that the particular

7

scheme has on the delivery of services or the setting of rates.'" *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11, 21 (1st Cir. 2014). It is the potential impact of a claim—not the actual impact—that matters. *Id*.

Here, federal regulatory framework defines the isolated roles of Plaintiffs and Border Transfer in the federal transportation infrastructure. As a broker, Border Transfer "sells, offers for sale, negotiates for, or holds itself out by solicitation, advertisement, or otherwise as selling, providing, or arranging for, transportation by motor carrier for compensation." 49 U.S.C. § 13102(2). As the FMCSA explains, "[b]rokers . . . are transportation intermediaries who procure the services of motor carriers to transport property. Brokers generally do not handle the freight and do not assume legal liability for cargo loss and damages. On behalf of shippers, they arrange for motor carriers to transport individual shipments from origin to destination." *Federal Motor Carrier Safety Admin., Registration of Freight Forwarders and Brokers*, 71 Fed. Reg. 50115-02 (Aug. 24, 2006).

Plaintiffs, on the other hand, each operated motor carriers and represented to Border Transfer that their businesses held all of the federal and state licenses required to provide the authorized motor carrier services promised under their Agreements. *See, e.g., Agreement*, ¶ 16 (Operating Authority and Compliance with Laws); 49 U.S.C. § 13102(14) (defining "motor carrier"); 49 U.S.C. § 13901(a) (identifying federal government requirement that operating authority be obtained before transporting freight in interstate commerce).

Border Transfer cannot legally perform the services Plaintiffs' motor carriers provided. Likewise, Plaintiffs' motor carriers are not permitted to broker freight based merely on their status as carriers. *See, e.g.*, 49 U.S.C. § 14916 (maximum civil penalty of $10,000 for providing interstate brokerage services without authority from the FMCSA). In addition, interstate motor carriers must fulfill registration, branding (i.e. signage), and public liability insurance requirements. 49 U.S.C. § 14102(a)(4); 49 C.F.R. §§ 365, 390. The Federal Motor Carrier Safety Regulations, 49 C.F.R. §§ 382 through 397, also impose other compliance obligations on motor carriers, including maintenance of driver logs, hours of service requirements, driver qualification

file and logbook retention requirements, daily equipment inspection report requirements, OSHA training, and drug and alcohol testing.

Plaintiffs' claim that Border Transfer misclassified them under Massachusetts law goes directly to the core of the services Border Transfer performs as a broker. If Plaintiffs obtain the declaration they seek from this Court—that Border Transfer employs truck drivers who transport goods (*Compl*. Prayer for Relief ¶¶ D, G)—it will effect a fundamental change in Border Transfer's services as a broker. Indeed, successful prosecution of Plaintiffs' claims would require Border Transfer to obtain additional operating authority from the FMCSA and expand its services to include those of a motor carrier. "[W]here the [claim] drills into the core of [a broker's] services and liability for a breach of that duty could effect fundamental changes in the [broker's] current or future service offerings, the plaintiff's claims are preempted by the [FAAAA]." *Tobin*, 775 F.3d at 456.

### C. Plaintiff's contract with Border Transfer precludes recovery on the unjust enrichment claims

Alternatively, Plaintiff's unjust enrichment claim should be dismissed on the basis that recovery on an unjust enrichment theory is unavailable when, as here, the parties' relationship is founded on an express contract. *In re Lupron Mktg. & Sales Practices Litig.*, 295 F. Supp. 2d 148, 182 (D. Mass. 2003)("Where a contract does govern the parties' relationship, the contract provides the measure of the plaintiff's right and no action for unjust enrichment lies.").

It is undisputed Plaintiffs' relationship with Border Transfer emanates from the Agreement each signed. *E.g., Compl*. ¶ 10 ("Plaintiffs bring this action on behalf of a class of similarly-situated individuals . . . who have executed contract carrier agreements (either personally or on behalf of corporate entities) and who personally provided delivery services for Border Transfer in Massachusetts."). Also undisputed is the Agreement Plaintiffs signed contain express provisions regarding the independent contractor relationship formed along with the costs Plaintiffs agree to bear—the same issues for which Plaintiffs' unjust enrichment claim seeks redress. *Compare Agreement* ¶¶ 2(b), 4, 6(d), 8, 11, *with Compl*. ¶¶ 26-27. The Agreement therefore precludes

recovery on the unjust enrichment claim, and the Court should dismiss that claim from the Complaint.

## IV.   CONCLUSION

Border Transfer is not attempting to use the FAAAA to fend-off Plaintiffs efforts to enforce the parties' Agreement, which the Supreme Court has made clear is excluded from the FAAAA's preemptive scope.  To the contrary, Plaintiffs are attempting to use state law to create rights found nowhere in their Agreement.   The Supreme Court has uniformly held that parties to a contract with a broker may not use state law to alter those arrangements.  No reason to depart from this rule exists here.

Border Transfer respectfully requests that the Court enter judgment in its favor on Plaintiffs' Complaint.

*/s/ Judith Leggett*
Judith Leggett / BBO # 635346
Leggett Law Firm, LLC
 Tower Circle, Suite 2
Avon, MA  02322
Telephone: (617) 780-7163
Judith@LeggettLawFirm.com

*ATTORNEYS FOR DEFENDANT BORDER TRANSFER OF MA, INC.*

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 8, 2016.

                                                  */s/ Judith Leggett*
                                                  Judith Leggett

4815-3273-0166, v. 2