UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                            )
MARCOS DaSILVA and MATTEUS  )
 FERREIRA, on behalf of themselves )
and all others similarly situated,         )
                                            )
Plaintiffs,                              )    Case No. 16-cv-11205-PBS
                                            )
v.                                         )
                                            )
BORDER TRANSFER OF MA, INC.  )
Defendant.                             )
_____)

## PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

### I.   INTRODUCTION

The Defendant contracts with Sears to provide home appliance and furniture installation and deliveries of Sears products throughout Massachusetts. Plaintiffs worked exclusively for the Defendant delivering and installing these Sears products. Plaintiffs brought this lawsuit on behalf of themselves and all others similarly situated alleging that Border Transfer misclassified them as independent contractors under the Massachusetts Wage Act, and as a result, Border Transfer's practice of making deductions from its delivery driver's compensation for such things as damage claims and uniforms, and by requiring the drivers to pay for their own worker's compensation and cargo insurance, violates the Massachusetts Wage Payment Statute, M.G.L. c. 149, § 148, and constitutes unjust enrichment. Border Transfer now argues that all of Plaintiffs' claims are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. 14501(c)(1). In doing so, however, Border Transfer simply misrepresents or ignores the case law here and elsewhere, including the holding of the First Circuit, that only Prong 2 of the Wage Act's definitional section, which requires a finding of employment status if the work

1

performed is within the employer's "usual course of business," is preempted by the FAAAA.[1] Schwann v. FedEx Ground Package Sys., Inc., 813 F.3d 429, 440-41 (1st Cir. 2016). The First Circuit did so because it held that Prong 2 was "something of an anomaly" that would essentially bar the use of legitimate independent contractor delivery drivers by delivery businesses in Massachusetts. Schwann, 813 F.3d at 438. At the same time, however, Schwann held that delivery companies did not have cart blanche to misclassify drivers so as to avoid the obligations that every other Massachusetts employer has under this state's wage act. Schwann, 813 F.3d at 440 ("We do not hold that FedEx has free rein to classify workers by fiat as independent contractors.").

Since Schwann, two Massachusetts courts have agreed that the Prongs 1 and 3 of the wage statute are not preempted by the FAAAA. In Khan v. East Coast Critical, Justice Douglas Wilkins of the Suffolk Superior Court held, in following Schwann, "Prongs 1 and 3 of 148B(a) on their face adopt wide-spread and apparently nationally uniform tests for the determining the employer/employee relationship, including the degree of control and the employee's investment in the business." No. 2015-2762-D (Suffolk Sup. Ct. May 4, 2016) at p. 3 (attached as Ex. A). Justice Sharon Frison reached the same conclusion in Wilson v. Xpressman Trucking & Courier, Inc., No. 14-01110 (Mass. Super. Apr. 6, 2016) (attached hereto as Ex. B) (holding that Plaintiffs

---

[1] Pursuant to M.G.L. c. 149, § 148B(a), which governs who is considered to be an employee under the Massachusetts Wage Act, "an individual performing any service ... shall be considered to be an employee" unless:

(1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

(2) the service is performed outside the usual course of the business of the employer; and,

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

may pursue their wage claims under Prongs 1 and 3 of Section 148B). The Massachusetts Wage Act, therefore, is not preempted by the FAAAA.

Elsewhere, in every instance where a wage law has been challenged, including where the primary claim was independent contractor misclassification, the courts have refused to find FAAAA preemption. See Costello v. BeavEx, Inc., 810 F.3d 1045, 1055 (7th Cir. 2016) (Illinois Wage Payment and Collection Act which prohibits deductions in the same manner as the Massachusetts Wage Act is not preempted by the FAAAA as it "regulates the motor carrier *as an employer,* and any indirect effect on prices is too tenuous, remote, or peripheral") (emphasis in original); Amerijet Int'l Inc. v. Miami-Dade County, 627 Fed. App'x 744, (11th Cir. Sept. 21, 2015) (holding state minimum wage law was not preempted by the FAAAA); Dilts v. Penske Logistics, LLC, 769 F.3d 637, 646 (9th Cir. 2014), *cert. denied*, 135 S.Ct. 2049 (California meal and rest break laws were not preempted by the FAAAA because "[t]hey do not set prices, mandate or prohibit certain routes, or tell motor carrier what services they may or may not provide, either directly or indirectly."); Echavarria v. Williams Sonoma, 2016 WL 1047225, at *9 (D.N.J. Mar. 16, 2016) (New Jersey wage law not preempted by the FAAAA).

In addition to the Seventh, Ninth, and Eleventh Circuits, many other courts have held that the FAAAA does not preempt generally applicable state employment laws. In People ex rel. Harris v. Pac Anchor Transp., Inc., 329 P.3d 180 (Cal. 2014), *cert. denied*, 135 S.Ct. 1400, the state of California argued that delivery drivers had been misclassified as independent contractors and that the defendant had committed various wage and labor violations. Id. at 183. The Supreme Court of California held that the wage claims and the underlying independent contractor misclassification claims were not preempted by the FAAAA because motor carriers "are free to use independent contractors as long as they are properly classified," and the "sole premise" of the misclassification claim is "to ensure that employers properly classify their employees or

3

independent contractors in order to conform to state law." Id. at 190; see also Villalpando v. Exel Direct Inc., 2015 WL 5179486, *24-30 (N.D. Cal. Sept. 3, 2015) (motor carriers "may adopt whatever business model it wishes. What it cannot do is treat its drivers as employees while avoiding California's wage and hour rules by requiring its drivers to enter into a contract that simply *calls* the drivers independent contractors.").[2]

Border Transfer argues that even though Schwann preempted only Prong 2, the First Circuit "left open" the question of whether Prongs 1 and 3 were preempted. This is simply wrong. The First Circuit considered that exact question and concluded that only Prong 2 was preempted by the FAAAA and that Prong 1 and 3 remained severable and enforceable. See Schwann, 813 F.3d at 440 (1st Cir. 2016) (finding Prong B was preempted); Massachusetts Delivery Ass'n v. Healey, 821 F.3d 187, 189 (1st Cir. 2016) (accord).[3] Even a cursory reading of the logic and

---

[2] See also Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1190 (9th Cir.1998) (holding that the FAAAA does not preempt California's prevailing wage law when enforced against transportation companies); Robles v. Comtrak Logistics, Inc., 2014 WL 7335316, *8 (E.D. Cal. Dec. 19, 2014) (same); Godfrey v. Oakland Port Services Corp., 179 Cal.Rptr.3d 498, 505-10 (Cal.Ct.App. 2014) (adopting the reasoning in Dilts and Pac Anchor to hold that meal and rest break laws are not preempted by the FAAAA), cert. denied, 136 S.Ct. 318; Gennell v. FedEx Ground Package Sys., Inc., 2013 WL 4854362, *5-7 (D.N.H. Sept. 10, 2013) (holding that any effect of delivery drivers' wage deduction and expense reimbursement claims was "simply too tenuous to warrant preemption" under the FAAAA); Delivery Express, Inc. v. Sacks, 2016 WL 3198321, at *4 (W.D. Wash. June 9, 2016) (holding state worker's compensation law not preempted by FAAAA and citing Dilts for proposition that "a state law that simply increases the overall cost of doing business or makes it more costly for freight brokers to choose some routes or services relative to others does not meet the "related to" test for FAAAA preemption); W. Ports Transp., Inc. v. Employment Sec. Dep't of State of Wash., 41 P.3d 510, 519 (Wash. App. 2002) ("We decline to infer that Congress, in enacting federal motor carrier law, intended to preempt state unemployment law.")..

[3] On the same day as the Schwann opinion, the First Circuit also held that Prongs 1 and 3 were not preempted in Remington v. J.B. Hunt Transport, Inc., No. 15-1252 (1st Cir. Feb. 22, 2016).

language in the opinion demonstrate that Prongs 1 and 3, which track most state law tests for employee status are not preempted.  East Coast Critical, supra. [4]

The Massachusetts Wage Act does not dictate the amount or the type of wages that Border Transfer must pay Plaintiffs and its other delivery drivers.  The law does not regulate the number of hours Plaintiffs may work,[5] the types of products they may deliver, the time deliveries may be performed, the prices Border Transfer may charge customers for delivery, or the routes Border Transfer's drivers must take.  But it does prohibit Border Transfer from unilaterally deducting money out of the compensation checks of the drivers, when those drivers are under Border Transfer's control or completely dependent upon Borders for their work.  Martins v. 3PD Inc., 2014 WL 1271761, at *7 (D. Mass. Mar. 27, 2014) (holding that deductions from employee's wages for damage chargebacks, insurance costs, administrative fees, truck repair, and truck lease payments recoverable under Massachusetts Wage Act); Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 494 (2011) (employers cannot pass on costs of worker's compensation to their employees).

For the reasons discussed in more detail below, Border Transfer's motion to dismiss must be denied. [6]

---

[4]   Moreover, the issue of whether any part of the ABC test is preempted has been briefed and is awaiting oral argument before the Massachusetts Supreme Judicial Court in Chambers v. RDI Logistics, Inc., No. SJC-12080.

[5]   Plaintiffs are not entitled to overtime pay because Plaintiffs' trucks had gross vehicle weight ratings over 10,001 pounds, and are therefore exempt from overtime pay under Massachusetts and federal law.  Brooks v. Halsted Commc'ns, Ltd., 620 F. Supp. 2d 193, 195 (D. Mass. 2009).

[6]   In Counts II, Plaintiffs also allege that Border Transfer has been unjustly enriched by shifting its business related expenses to Plaintiffs.  However, in the event that the court agrees that there is no preemption of Count I, Plaintiffs will voluntarily dismiss their claim for unjust enrichment and decline to pursue it, as the Wage Act presents an adequate remedy at law to recover their unpaid wages and expenses.

## II.	BACKGROUND

Plaintiffs worked as delivery drivers who performed delivery and installation work for Border Transfer on a full-time basis, five days a week, for extended periods of time April 2012 to November 2015.[7]  See Compl. at ¶¶ 2-3.  Border Transfer provides delivery services for Sears and contracts with delivery drivers, such as Plaintiffs, to delivery Sears retail merchandise.  Id. at ¶ 9.  Plaintiffs arrived each morning at a Sears warehouse where they attend a daily meeting and are given a manifest that dictates the order and schedule of their deliveries.  Compl. at ¶ 11.  Plaintiffs were required to wear specific uniforms.  Id.

Plaintiffs were required to log the completion of each delivery throughout the day and to keep in constant contact with Border Transfer dispatchers.  Id.  Plaintiffs were required to only use helpers that were approved by Border Transfer, and Border Transfer could terminate those helpers at any time.  Id.  Plaintiffs were required to have a truck that met Border Transfer's specifications.  Id.

---

[7]  Border Transfer attempts to recast the relationship between it and the Plaintiffs as between a federally authorized property broker [Border Transfer] and federally authorized motor carriers [Plaintiffs].  Massachusetts courts have expressly rejected arguments that, based on these labels, a worker cannot be an employee under Section 148B.  Martins v. 3PD, Inc., 2013 WL 1320454, at *15 (D. Mass. Mar. 28, 2013) ("An employer cannot escape liability under Section 148B by attempting to obfuscate the nature of its business or through simple sleight of hand.").  Moreover, merely contracting with a delivery driver's corporate entity does not prevent that driver from being found to be an employee under Section 148B.  Id. at * 17("A number of state and federal cases have held that an individual can bring an action under Section 148B even if the employer's formal contractual relationship is with an incorporated entity."); Amero v. Townsend Oil, No. 07–1080 at 5 n. 4; ("Townsend insists that Amero's decision to incorporate precludes him from enjoying the benefits of the Wage Act.... [N]ot only does Townsend's argument ignore economic reality, but if it were to carry the day, any employer who wanted to avoid the requirements of the Wage Act would simply require its employees to incorporate as a condition of employment."); De Giovanni v. Jani–King, 262 F.R.D. 71, 86 (D.Mass.2009) (certifying a class even though "the corporation controlled [one named plaintiff's] franchise[.] [Named Plaintiff] still meets the broad class definition for the employment classification claims—all "individuals who have performed cleaning work for Jani–King ...").

Border Transfer made deductions from Plaintiffs' pay for alleged damage to the product being delivered or the customers house, as well as for when a driver was unable to complete a delivery or was absent from work.  Id. at ¶¶ 19-20.

Though Border Transfer required Plaintiffs and other drivers to sign an agreement stating that they were independent contractors, Plaintiffs are wholly reliant on Border Transfer for work. While at Borders they worked for no one else, and effectively could not do so.  Id. at ¶ 17.  Indeed, Plaintiffs do not negotiate with customers regarding delivery rates, and may not contact customers directly.  Id. at ¶ 17.

## III.     ARGUMENT

### A.     Preemption under the FAAAA Does Not Generally Apply to Basic State Wage Protection Laws.

Most states have had their own wage law for well over fifty years.[8]  Most of these laws prohibit wage deductions in the same manner as the Mass. Wage Act.[9]  All of these acts must by necessity, include a test for who are covered employees.  As Judge Wilkins noted in East Coast Critical, Prongs 1 and 3 present factors that have traditionally been used in state laws across the country.  ("Prongs 1 and 3 of 148B(a) on their face adopt wide-spread and apparently nationally uniform tests for determining the employer/employee relationship, including the degree of control and the employee's investment in the business.").

---

[8]     While states had already begun regulating child labor and maximum working hours for women, by 1923, 23 states had passed minimum wage statutes.  Bruce Goldstein, et al., Enforcing Fair Labor Standards in the Modern American Sweatshop: Rediscovering the Statutory Definition of Employment, 46 UCLA L. Rev. 983, 1076 (1999).

[9]     See, e.g., Cal. Lab. Code §§ 221 and 224; Conn. Gen. Stat. Ann. § 31-71e; 820 Ill. Comp. Stat. 115/9; Del. Code. Ann. Tit. 19, 1101; Ind. Code Ann. § 22-2-6-2; Iowa Code § 91A.5(2); Kan. Stat. Ann. § 44-319; Ky. Rev. Stat. Ann. § 337.060; La. Rev. Stat. Ann. § 23:635; Minn. Stat. § 181.79 subd. 1(a); N.J.S.A. 34:11–4.1 to –4.14l N.Y. Lab. Law § 193(1), (2); N.C. Gen. Stat. Ann. § 95-25.8; Wis. Stat. § 103.455; Vt. Stat. Ann. tit. 21, §§ 301 and 385.

The right to control test grew out of respondeat superior in the 19th century and is looked at in some manner when considering employment relationships in most jurisdictions. [10] See, e.g., Case of McDermott, 283 Mass. 74, 76 (1933) ("essence" of employee relationship is the "right of control"); Sproul v. Hemmingway, 31 Mass. 1, 3, 14 Pick. 1, 5 (1833). Moreover, the "right to control" test used for many state wage laws looks to factors very similar to Prongs 1 and 3.[11]

Other state employment statutes and the federal Fair Labor Standards Act, rely upon the "economic realities" test that requires the court to analyze whether an employee is economically dependent on the alleged employer.[12] Speen v. Crown Clothing Corp., 102 F.3d 625, 630 (1st Cir. 1996) (defining the economic realities test holding that "employees are those who as a matter of economic reality are dependent upon the business to which they render service") (quotations and

---

[10]   Indeed, even where a state wage law is silent as to who is an employer, courts use the right to control test. Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 323 (U.S. 1992).

[11]   See, e.g., Craig v. FedEx Ground Package Sys., Inc., 300 Kan. 788, 798, 335 P.3d 66, 76 (2014) (identifying "right to control" test applicable to Kansas wage payment law and finding that FedEx drivers were employees under statute); Slayman v. FedEx Ground Package Sys., Inc., 765 F.3d 1033, 1042 (9th Cir. 2014) (finding that FedEx drivers were employees for purposes of state wage payment law under Oregon's "right to control test"); Alexander v. FedEx Ground Package Sys., Inc., 765 F.3d 981, 984 (9th Cir. 2014) (FedEx drivers were employees as a matter of law under California "right to control" test); Wolf v. DaCom, Inc., 499 N.W.2d 728, 731 (Iowa Ct. App. 1993) (right to control test used under Iowa wage and hour law); Horack v. S. Real Estate Co., 563 S.E.2d 47, 51 (N.C. Ct. App. 2002) (right to control used under North Carolina wage law); .

[12]   See, e.g., Ariz. Rev. Stat. 23-362(D) (adopting economic realities test for Arizona minimum wage law); Gurrobat v. HTH Corp., 323 P.3d 792, 810 (Haw. 2014) (using right to control and economic realities tests under Hawaii wage payment law); KRS 337.010(1)(e), 803 Ky. Admin. Regs. 1:005 § 1(2) (economic realities test used under Kentucky wage laws); Terry v. Sapphire Gentlemen's Club, 336 P.3d 951, 955-56 (Nev. 2014) (adopting economic realities test under Nevada minimum wage statute); Campusano v. Lusitano Const. LLC, 56 A.3d 303, 308 (Md.Ct.Spec.App.2012) (same in Maryland); Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 189 (S.D.N.Y. 2003) (same under New York wage law); Cejas Commercial Interiors, Inc. v. Torres–Lizama, 260 Or.App. 87, 316 P.3d 389, 394 (2013) (same in Oregon); Commonwealth, Dep't of Labor & Indus., Bureau of Labor Law Compliance v. Stuber, 822 A.2d 870, 873 (Pa.Commw.Ct.2003) (same in Pennsylvania); Anfinson v. FedEx Ground Package Sys., Inc., 244 P.3d 32, 40–41 (Wash App. 2010), affd, 174 Wash.2d 851, 281 P.3d 289 (2012) (same in Washington).

citations omitted) (emphasis added).  The analysis of a workers "dependence" on the putative employer under the economic realities test is synonymous with the consideration of a worker's economic dependence under Prong 3 of the Massachusetts "ABC" test.  See Coverall N. Am., Inc. v. Com'r of Div. of Unemployment Assistance, 447 Mass. 852, 858 (2006) (consideration under prong three is whether "the nature of the business compels the worker to depend on a single employer for the continuation of the services").  Other states wage laws identically look to control and whether the workers operate independent businesses[13] or have ABC tests that have a more limited Prong 2,[14] that have not been found to be preempted by the FAAAA.[15]  See BeavEx, supra, Echavarria, supra.  Thus, with Prongs 1 and 3, the Massachusetts Wage Act relies on employment relationship facts looked at in almost every other state wage law and should not, therefore, be preempted.  Schwann. Id. at 440 (holding that "state laws that are more or less nationally uniform . . . pose no patchwork problem").

---

[13]     See, e.g., Colo. Rev. Stat. Ann. 8--4-101(5) (for wage claim act requiring employers to show 1) free from control and 2) engaged in independent business); Mont. Code Ann. 39-3-101 to 39-3-706 (uses AB test – right to control and independent business).

[14]     It is noteworthy that in both Beavex and Echavarria, the state laws at issue utilized an ABC test that included a "prong two" that is broader than the "usual course of business" prong in the Massachusetts statute. In Illinois and New Jersey, an employer could satisfy the second prong by demonstrating that the worker either performs services outside of the company's "usual course of business," or outside the company's "usual place of business." These two decisions serve to highlight that the major issue with the Massachusetts ABC test that served as the basis for the First Circuit's ruling in Schwann was the "anomaly" presented by the second prong of the Massachusetts test, under which a delivery company was effectively prohibited from using an independent contractor for deliveries. Where no similar prohibition was effected by the Illinois and New Jersey ABC tests in Beavex and Echavarria, there was no FAAAA preemption.

[15]     See Tianti, ex rel. Gluck v. William Raveis Real Estate, Inc., 651 A.2d 1286 (1995) (adopting "ABC" test for Connecticut wage payment law); Illinois Wage Payment and Collection Act, 820 Ill.Comp.Stat. 115/2; Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1229(1); Hargrove v. Sleepy's, LLC, 106 A.3d 449 (N.J. 2015) (applying a conjunctive ABC test for purposes of New Jersey's Wage Payment Law); and Vermont Wages and Medium of Payment Law, 21 V.S.A. § 341.

The difference between Massachusetts and these other states has been Prong 2, which requires a finding of employment when the work is performed within an employer's "usual course of business." The First Circuit held that Prong 2 was "something of an anomaly" and would effectively prohibit the use of legitimate independent contractors by FedEx for performance of any delivery service.[16] Schwann, 813 F.3d at 438.

If Border Transfer were correct, then every wage law in the country would be preempted. But every court that has addressed this issue has found that generally applicable wage laws are not preempted. Recently, in Costello v. Beavex, a defendant motor carrier argued that compliance with Illinois's wage payment law– which is quite similar to the statute at issue in this case and utilizes an ABC test with same prongs one and three that are in the Massachusetts statute - required the motor carrier to convert its delivery drivers from independent contractors to employees, and that this would have far-reaching and detrimental effects on its prices, routes, and services. 810 F.3d at 1056 (citing 820 Ill. Comp. Stat. § 115/2). The Seventh Circuit reasoned that there was an important distinction between laws that "affect a carrier's relationship with its customers and those that affect the carrier's relationship with its workforce." Id. at 1054 (citing Morales v. Trans World Airlines, Inc., 504 U.S. 374, 388 (1992) (preempting a state law claim because "it would give consumers a cause of action … for an airline's failure to provide a particular advertised fare")). The court held that "[l]aws that affect the way a carrier interacts with its customers fall squarely within the scope of FAAAA preemption," whereas "[l]aws that merely govern a carrier's relationship with its workforce, however, are often too tenuously connected to

---

[16] Under the First Circuit's interpretation, Prong 2 would cover even bona fide independent contractors. For example, even though a cab company is truly independent, operates dozens of cabs, and transports its own customers most of the time, on the rare occasions it picks up passengers through Uber, it could be held to be an employee under Prong 2 as Uber provides taxi services within its usual course of business. The same result would not be foreordained if only Prongs 1 (right of control) and 3 (independent business) were applied.

the carrier's relationship with its consumers to warrant preemption." Id. This distinction is applicable in the First Circuit as well. See Tobin v. Fed. Express Corp., 775 F.3d 448, 456 (1st Cir.2014) (distinguishing between state laws that regulate "how [a] service is performed (preempted) and those that regulate how an airline behaves as an employer or proprietor (not preempted)).[17] As a result, the Seventh, Ninth, and Eleventh Circuits, as well as numerous other courts, have all held that the FAAAA does not preempt traditional state wage laws. The Seventh Circuit in BeavEx held that the Illinois wage deduction law was not preempted since it "'operate[s] one or more steps away from the moment at which the firm offers its *customers* a service for a particular price,'" and only "regulates the motor carrier *as an employer*." Id. at 1055 (quoting S.C. Johnson & Son, Inc. v. Transport Corp. of America, Inc., 697 F.3d 544, 558 (7th Cir. 2012) ("labor inputs … are affected by a network of labor laws, including minimum wage laws…," "yet no one thinks that the … FAAAA preempts these and the many comparable state laws.")). See also Echavarria, 2016 WL 1047225, at *9 (finding no preemption of New Jersey delivery drivers who claimed they were misclassified as independent contractors).

In Dilts v. Penske Logistics, LLC, 769 F.3d 637, 646 (9th Cir. 2014), cert. denied, 135 S.Ct. 2049, the Ninth Circuit held that a state's meal and rest break laws were not preempted by the FAAAA because "[t]hey do not set prices, mandate or prohibit certain routes, or tell motor carrier what services they may or may not provide, either directly or indirectly." The Ninth Circuit reasoned that:

> [G]enerally applicable background regulations that are several steps removed from prices, routes, or services, such as prevailing wage laws or safety regulations, are not preempted,

---

[17] Judge Douglas Woodlock reached the same conclusion. In Martins v. 3PD, the delivery company defendant argued that, in addition to Prong 2, claims under the Massachusetts Wage Act and for unjust enrichment were preempted. Judge Woodlock expressly held, however, that both the Wage Act and claims for unjust enrichment were not preempted by the FAAAA. Martins v. 3PD, Inc., 2013 WL 1320454, at *13 (D. Mass. Mar. 28, 2013)

> even if employers must factor those provisions into their decisions about the prices that they set, the routes that they use, or the services that they provide.

Id.; see also Californians for Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1187 (9th Cir. 1998) (holding that the FAAAA does not preempt a state prevailing wage law, and that a mere increase in labor costs was not sufficient to implicate a motor carrier's prices, routes, or services), cert. denied, 526 U.S. 160 (1999).

Similarly, the Eleventh Circuit recently held that a state law which increased the minimum wage and imposed heightened record-keeping requirements on a carrier was not preempted because it did not "dictat[e] the types of services [a carrier] must provide" or "prevent a carrier from providing [particular] services," but "merely 'alters the incentives' facing an air carrier," and "[i]n this regard, 'it is no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate.'" Amerijet Int'l Inc. v. Miami-Dade County, 627 Fed. App'x 744, (11th Cir. Sept. 21, 2015) (minimum wage law not preempted because it does not "dictat[e] the types of services [a carrier] must provide," but "merely 'alters the incentives' facing an air carrier," and "[i]n this regard, 'it is no different from myriad state laws in areas traditionally subject to local regulation, which Congress could not possibly have intended to eliminate.'") (quoting Cal. Div. of Labor Stds. Enf. v. Dillingham Constr., 519 U.S. 316, 334 (1997)); Dilts, 769 F.3d at 646.

In addition to the Seventh, Ninth, and Eleventh Circuits, many other courts have held that the FAAAA does not preempt generally applicable state employment laws.[18] More recently, in

---

[18] See, e.g., People ex rel. Harris v. Pac Anchor Transp., Inc., 329 P.3d 180 (Cal. 2014) (delivery drivers' wage and independent contractor misclassification claims were not preempted by the FAAAA because motor carriers "are free to use independent contractors as long as they are properly classified," and the "sole premise" of the misclassification claim is "to ensure that employers properly classify their employees or independent contractors in order to conform to state law."), cert. denied, 135 S.Ct. 1400; Villalpando v. Exel Direct Inc., 2015 WL 5179486, *24-30 (N.D. Cal. Sept. 3, 2015) (motor carriers "may adopt whatever business model it wishes. What

12

Delivery Express, Inc. v. Sacks, 2016 WL 3198321 (W.D. Wash. June 9, 2016), a delivery company sought a declaratory judgment that a state workers' compensation law – which contained exceptions for workers who met criteria that closely follows prongs one through three of M.G.L. c. 149, § 148B, see Was. Rev. Code 51.08.195(1-3) – was preempted by the FAAAA after it was found to have misclassified its drivers as independent contractors.  The delivery company argued that it would be forced to "redesign its operations" to account for the increased cost of the drivers' workers' compensation premiums. Id. at *4.  The court rejected that argument, holding that "a state law that simply increases the overall cost of doing business" is not preempted by the FAAAA, reasoning that "[a]lthough [the delivery company] has presented evidence that it will likely change its business practices to account for workers' compensation premiums, [it] has not presented evidence showing that the assessment of such premiums will *bind* it to specific rates, routes, or services" as required for preemption under the FAAAA. Id. at *5 (emphasis in original).  It is clear then that Border Transfer is wrong, generally applicable wage laws that apply traditional employment tests are not preempted by the FAAAA.

The First Circuit held that traditionally used tests, which must include the "right to control" and "economic realities" tests, are not preempted by the FAAAA because they do not present the same "patchwork" problem that is raised by Prong 2.  Schwann, 813 F.3d at 440 ("Such state laws that are more or less nationally uniform, and therefore pose no patchwork problem, or that have less of a reference to and effect on a carrier's service and routes pose closer questions than that

---

it cannot do is treat its drivers as employees while avoiding California's wage and hour rules by requiring its drivers to enter into a contract that simply *calls* the drivers independent contractors."); Robles v. Comtrak Logistics, Inc., 2014 WL 7335316, *8 (E.D. Cal. Dec. 19, 2014) (same); Godfrey v. Oakland Port Services Corp., 179 Cal.Rptr.3d 498, 505-10 (Cal.Ct.App. 2014) (adopting the reasoning in Dilts and Pac Anchor to hold that meal and rest break laws are not preempted by the FAAAA), cert. denied, 136 S.Ct. 318; W. Ports Transp., Inc. v. Employment Sec. Dep't of State of Wash., 41 P.3d 510, 519 (Wash. App. 2002) ("We decline to infer that Congress, in enacting federal motor carrier law, intended to preempt state unemployment law.").

presented in this case."). Thus, when Prong 2 was removed, the Wage Act was enforceable because Prongs 1 and 3 presented just such a traditional test for employment. This limited holding was confirmed in MDA III. 821 F.3d at 191–92 (quoting Schwann, 813 F.3d at 438). Thus, Plaintiffs claims under the Wage act are not preempted. [19]

Border Transfer, therefore, misrepresents Schwann ruling when it argues that the First "left open the question of whether Prongs 1 and 3" is preempted by the FAAAA. Def.'s Mot. at p. 7. In Schwann, the lower court held that prongs 1 and 3 were preempted by the FAAAA because "enforcing prongs one and three of section 148B against motor carriers would end the same – the 'price, route[s], [and] services' offered by motor carriers would be impacted by forbidding the preferred business model." 2015 WL 501512, *2 (D. Mass. Feb. 5, 2015). The First Circuit rejected and reversed that holding, instead finding that only Prong 2 was preempted. Id. This limited holding was also confirmed in MDA III. See 821 F.3d at 192 (("Applying the reasoning in Schwann, we find that the FAAAA preempts the application of Prong 2 to Xpressman."). The same holdings were made in Khan v. East Coast Critical, LLC et al., No. 2015-2762-D, pp. 3-4 (Suffolk Sup. Ct. May 4, 2016) ("The court also adopts the First Circuit's holding that Prongs 1 and 3 are severable from Prong 2, so that they survive even though Prong 2 is preempted by the FAAAA") and in Xpressman Trucking & Courier Inc., C.A. No. 14-1110 (Worcester Super. Ct.

---

[19] Border Transfer cites to Chambers v. RDI Logistics, Inc., 2015 WL 9911425, at *13 (Mass. Super. Oct. 26, 2015) in support of its argument that the Wage Act itself must be preempted. Def.'s Mot. at p. 6. RDI was issued before the First Circuit's Schwann opinion, and is further flawed because it failed to make any distinction between Prong 2 and Prongs 1 and 3 as in Schwann. Moreover, the decision in RDI Logistics is currently on appeal before the Supreme Judicial Court, which accepted direct appellate review of that case. See Chambers v. RDI Logistics, Inc., SJC No. 12080.

April 8, 2016) ("[t]herefore, plaintiffs may … pursue their wage claims under those two surviving prongs.").[20] Id. at 438.

As the First Circuit held in Schwann, delivery companies do not have "free rein to classify workers by fiat as independent contractors." Schwann, 813 F.3d at 440. The court explained that "motor carriers are not exempt from state taxes, state lawsuits of many kinds, and perhaps most other state regulation of any consequence." Id. (quoting DiFiore, 646 F.3d at 89). "Such state laws that are more or less nationally uniform, and therefore pose no patchwork problem," do not trigger FAAAA preemption. Id. Thus, an employment relationship that merely looks at right of control and whether the workers operate independent businesses does not present a "patchwork problem" and is, as the First Circuit held in Schwann and MDA III and the Massachusetts Superior Court held in East Cost Critical, and Xpressmen, not preempted.

### B. Border Transfer's Argument is Not Support by the History and Purpose of the FAAAA.

Border Transfer seeks a reading of the FAAAA that is at odds with its legislative history. Wyeth v. Levine, 555 U.S. 555, 565 (2009) ("The purpose of Congress is the ultimate touchstone in every pre-emption case."). "In all pre-emption cases … we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." Id. at 566; see In re Pharmaceutical Ind. Avg. Wholesale Price Litig., 582 F.3d 156, 178 (1st Cir. 2009) ("As the Supreme Court recently clarified, the presumption against preemption applies in any field in which there is a history of

---

[20] In fact, the plaintiff in Xpressman had previously filed a motion to intervene in the federal court case Massachusetts Delivery Assoc. v. Healey, arguing that disposition of the FAAAA preemption issue in that case could have a dispositive effect on the plaintiff's state court claims, but the federal court denied that motion on the basis that "even if this Court invalidates the B prong of Section 148B, the other two prongs could still support [a courier's] state court claim." 1:10-cv-11521 (Oct. 18, 2013).

15

state law regulation, even if there is also a history of federal regulation."). "Congress passed the FAAAA in order to curb patchwork of state regulations. However, nothing in the congressional record establishes that Congress intended to preempt states' ability to tax motor carriers, to enforce labor and wage standards, or to exempt motor carriers from generally applicable insurance laws." Pac Anchor, 329 P.3d at 190. "Typical forms of [the] regulation[s] [that concerned Congress] include[d] entry controls, tariff filing and price regulation, and types of commodities carried." H.R. Conf. Rep. No. 103-677, 87 (1994). Congress expressed concern that "[i]n the small package express business, companies frequently ship goods across state lines and back into the state of origin to avoid the higher rates for purely intrastate shipments." Id. at 88. Congress made it clear, however, that "[t]he purpose of [the FAAAA] is to preempt economic regulation by the States, not to alter, determine or affect in any way … whether any carrier is or should be covered by one labor statute or another…." Id.; see Alaska Airlines v. Brock, 480 U.S. 678, 680 (1987) ("Congress sought to ensure that the benefits to the public flowing from [airline] deregulation would not be paid for by airline employees…."); Californians For Safe & Competitive Dump Truck Transp. v. Mendonca, 152 F.3d 1184, 1189 (9th Cir. 1998) (upholding prevailing wage law against preemption challenge because it does not "frustrate[] the purpose of deregulation by acutely interfering with the[] forces of competition"); see also President William J. Clinton, Statement on Signing the FAAAA of 1994, 2 Pub. Papers 1994 (Aug. 23, 1994) (predicting that "employment in the trucking services industry will increase substantially" as a result of the FAAAA's deregulation of "controls on who can enter the trucking industry within a State, what they can carry and where they can carry it, and whether competitors can sit down and arrange among themselves how much to charge shippers and consumers.").

As the Ninth Circuit has observed, "[i]t is revealing to note that Congress identified forty-one jurisdictions which regulated intrastate prices, routes and services, followed by ten

jurisdictions which did not…," and that "[o]f the ten jurisdictions which Congress found <u>did not</u> regulate intrastate prices, routes and services, seven of these jurisdictions had, and continue to have, general prevailing wage laws…."[21] <u>Californians for Safe & Competitive Dump Truck Transp. v. Mendonca</u>, 152 F.3d 1184, 1187 (1998) (emphasis in original), citing H.R. Conf. Rep. 103-677, at 86 (1994).

### C. Plaintiffs' Claims for Unjust Enrichment Are Not Preempted by the FAAAA.

As with Plaintiffs' claims under the Massachusetts Wage Act, Plaintiffs' unjust enrichment claims are related to Border Transfer's conduct as an employer, and will not have a significant impact on its prices routes or service. The First Circuit has held that such claims are not preempted. <u>Tobin</u>, 775 F.3d at 456. Moreover, Judge Woodlock held that an unjust enrichment claim was not preempted in <u>Martins v. 3PD</u>. "3PD's attempts to save its argument by claiming that it does not contend that the FAAAA preempts Section 148B, only that it preempts the Wage Act and unjust enrichment claims. This argument . . . ignores the fact that the Wage Act and unjust enrichment claims do not stand on their own, but are derivative of the Section 148B claim." <u>Martins</u>, 2013 WL 1320454, at *13.

### D. Plaintiffs Have Stated a Valid Claim for Unjust Enrichment.

On a motion to dismiss the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. <u>Langadinos v. American Airlines, Inc.</u>,

---

[21]  In fact, many of the ten jurisdictions identified by Congress as not regulating prices, routes, or services, also had minimum wage or wage payment statutes. <u>See</u>, <u>e.g.</u>, Arizona Revised Stat. § 23-352 (governing the withholding of wages by employers, first enacted under Laws 1980, Ch. 202, § 4); 1992 Delaware Laws Ch. 217 (H.B. 353) (establishing when wages are due and payable); 1992 District of Columbia Laws 9-248 (minimum wage law); 1991 Me. Legis. Serv. Ch. 507 (increasing Maine's minimum wage rate, first established in 1954). Therefore, Congress could not have intended to preempt basic wage laws such as the IWPCA's employee-definition statute, and this Court should uphold the District Court's finding in this respect. <u>Costello</u>, 303 F.R.D. at 303 (finding "no evidence that Congress set out to preempt these generic prevailing wage laws.").

199 F.3d 68, 69 (1st Cir.2000). "If the facts in the complaint are sufficient to state a cause of action, a motion to dismiss the complaint must be denied." Stevens v. Thacker, 550 F. Supp. 2d 161, 163–64 (D. Mass. 2008).

Border Transfer argues that Plaintiffs' claims for unjust enrichment must be dismissed because the parties' relationship is "founded on an express contract." Def.'s Mot. at p. 9. As discussed above, in the event that the Court agrees that there is no preemption of Count I, Plaintiffs will voluntarily dismiss their claim for unjust enrichment and decline to pursue them, as the Wage Act presents an adequate remedy at law to recover their unpaid wages and expenses.

Moreover, because this Court may look only at the facts alleged in the complaint, it would be improper for the Court to assume at this point that there is an enforceable contract between the parties. See Yucesoy v. Uber Techs., Inc., 109 F. Supp. 3d 1259, 1268 (N.D. Cal. 2015). As a result, there is no justification for dismissing Plaintiffs' unjust enrichment claim at this stage in the litigation. Id. ("the Plaintiffs' complaint does not allege the existence of an express contract that governs Uber's payment of fares or gratuities. Of course, to the extent such a contract is later discovered and proven beyond dispute, Plaintiffs' *quantum meruit* claim might lose its viability.").

## IV.   CONCLUSION

For the reasons stated above, Border Transfer has failed to carry it heavy burden of demonstrating preemption of the entirety of Plaintiffs' claims for unpaid wages. City of Columbus v. Ours Garage & Wrecker Serv., Inc., 536 U.S. 424, 438 (2002) (holding that the "[p]reemption analysis 'start[s] with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'") (quoting Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996)). Border Transfer's motion to dismiss, therefore, should be denied.

DATED:  August 22, 2016

Respectfully Submitted,
MARCOS DaSILVA, et al., individually and on behalf of all others similarly situated,
By their attorneys,

  /s/ *Harold L. Lichten*
Harold L. Lichten BBO# 549689
Benjamin J. Weber BBO# 673736
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 5800
hlichten@llrlaw.com
bweber@llrlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 22, 2016, the foregoing document was filed electronically through the ECF System and is available for viewing and downloading from the ECF System, that it will be sent electronically to counsel of record identified as registered participants on the Notice of Electronic Filing, and that paper copies will be sent to those indicated as non-registered participants.

/s/ Harold L. Lichten
Attorney for Plaintiffs