**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

MARCOS DaSILVA and MATTEUS FERREIRA,
on behalf of themselves and all others similarly
situated,

                                    Plaintiffs,

                v.

BORDER TRANSFER OF MA, INC.

                                    Defendant.

Case No: 16-cv-11205-PBS

Leave to file granted on August 31, 2016

**BORDER TRANSFER OF MA, INC.'S REPLY IN SUPPORT**
**OF ITS MOTION TO DISMISS**

**I.      INTRODUCTION**

In its opening memorandum Border Transfer (1) demonstrated how Plaintiffs' own allegations establish under the First Circuit's *Tobin v. Federal Express Corp.* rubric that the Massachusetts Wage Act and unjust enrichment claims implicate, and are related to, transportation services provided pursuant to the parties' Agreements; and (2) established why state law claims interfering with the Agreement terms are FAAAA-preempted as a matter of law based on the Supreme Court's *Nw. Airlines v. Ginsburg* decision, First Circuit precedent in *Overka v. Am. Airlines, Inc.*, *Schwann v. FedEx Ground Package Sys., Inc.*, and others of their ilk. ECF No. 9, pp. 3-6.[1] Border Transfer further demonstrated that the FAAAA preempts Mass. Gen. Laws ch. 149, § 148B ("Section 148B"), and in turn the Massachusetts Wage Act claim predicated on Section 148B is subject to dismissal as a matter of law on this alternative basis. ECF No. 9, pp. 6-9. Finally, Border Transfer established that the parties' Agreements preclude recovery on the unjust enrichment claim. *Id.* at p. 9-10.

Plaintiffs' FAAAA response offers only a mischaracterization of their claims as regulating Border Transfer's "conduct as an employer" that Plaintiffs contend does not sufficiently impact

---

[1] The Agreements are docketed at ECF Nos. 9-1 and 9-2, and the full cites to the FAAAA and cases cited are: Federal Aviation Authorization Administration Act, 49 U.S.C. § 14501(c); *Tobin v. Federal Express Corp.,* 775 F.3d 448 (1st Cir. 2014); *Nw. Airlines v. Ginsburg,* 134 S. Ct. 1422 (2014); *Overka v. Am. Airlines, Inc.,* 790 F.3d 36 (1st Cir. 2015); and *Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429, 438-40 (1st. Cir. 2016).

the company's services, and an illusory "wage law" exception to FAAAA-preemption. These notions have already been persuasively rejected by decisions more authoritative and far better reasoned than those upon which Plaintiffs rely. *E.g., Schwann*, 813 F.3d at 438 (holding that decision to provide services with an independent contractor or employee is "related to" transportation company's services under the FAAAA); *Rowe v. New Hampshire Motor Transp. Ass'n*, 552 U.S. 364, 374 (2008) (rejecting argument that Congress intended to allow courts to expand the list of laws exempt from the FAAAA's preemptive reach).

Most tellingly, however, Plaintiffs do not challenge the inescapable point that the effect of both their Massachusetts Wage Act and unjust enrichment claims is the substitution of Massachusetts law to compel service terms different from those the parties contracted for in their Agreements. Twice the United States Supreme Court has considered whether a state law can provide the basis to alter or disregard the contractual terms agreed to in the free market and both times found the claims preempted. *Am. Airlines v. Wolens*, 513 U.S. 219, 232-33 (1995) (Airline Deregulation Act ("ADA")[2] preemption clause "stops States from imposing their own substantive standards with respect to rates, routes, or services" and "confines courts" to enforcement of "the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."); *Nw. Airlines v. Ginsburg*, 134 S. Ct. 1422 (2014). This case presents no exception to this rule. The Court should accordingly dismiss as a matter of law Plaintiffs' Massachusetts Wage Act and unjust enrichment claims.

## II.   ARGUMENT

### a.   The FAAAA preempts Plaintiffs' request in both the Massachusetts Wage Act and unjust enrichment claims to compel different service terms than those in the Agreement

Border Transfer contends Plaintiffs attempt to substitute Massachusetts law in place of the Agreement impermissibly impacts the company's services in violation of the FAAAA. Plaintiffs

---

[2] Although *Wolens* and *Ginsburg* were decided under the ADA, Congress modeled the FAAAA preemption language on the ADA preemption clause. *Rowe*, 552 U.S. at 368.  Consistent with the FAAAA's text and history, the Supreme Court has instructed that, interpreting the FAAAA's preemption provision, courts should follow decisions interpreting the ADA's preemption clause. *Id.* at 371.

do not challenge that the FAAAA preempts the use of Massachusetts law to enlarge or discard the parties' obligations under the Agreements, a legal axiom applicable to both state statutory and common law claims. *E.g.*, *Wolens*, 513 U.S. at 233 (holding that if parties have a contract to provide transportation services courts are confined "to the parties' bargain, with no enlargement or enhancement based on state laws or policies external to the agreement."); *Overka*, 790 F.3d at 39-40 (affirming district court's dismissal of Massachusetts unjust enrichment claim on ADA-preemption grounds and concluding *Ginsburg* supported First Circuit's reasoning in *Brown v. United Airlines, Inc.*, 720 F.3d 60 (1st Cir. 2013) that the ADA preempts such a claim). This unassailable point along with the metaphysical certainty under First Circuit precedent that the Massachusetts Wage Act and unjust enrichment claims seek to alter Agreement terms related to the transportation services provided compel an FAAAA preemption finding. *Schwann*, 813 F.3d at 438 (holding that decision to provide services with an independent contractor or employee is "related to" transportation company's services under the FAAAA); *see also DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81, 87-88 (1st Cir. 2011) (modification to airlines checked-bag fee related to service because it "would require change in the way the service is provided or advertised.").

Plaintiffs' contentions to the contrary do not undermine this conclusion. For example, Plaintiffs take the position that the Massachusetts Wage Act and unjust enrichment claims fall outside the FAAAA's ambit because both relate to Border Transfer's conduct as an employer as opposed to dictating how services are performed. *E.g.*, Pls.' Opp., p. 11, 17. This assertion does not square with allegations in the Complaint that "through the use of independent contractor agreements that violate Massachusetts public policy … Border Transfer is unjustly benefitted by the Plaintiffs' and other drivers' performance of *delivery services* while requiring Plaintiffs and others similarly situated to bear the costs of Border Transfer's delivery business." *Compl.*, ¶ 27 (emphasis added).[3] Moreover, the Complaint alleges services Border Transfer currently provides

---

[3] While this allegation comes from the unjust enrichment claim it mirrors the relief Plaintiffs' request in the Massachusetts Wage Act claim as well (*Compl.*, ¶ 23-25), which Plaintiffs' Opposition acknowledges ECF No. 11, p. 5, n. 6 ("In Counts II (sic.), Plaintiffs also allege that Border Transfer has been unjustly enriched by shifting its business related expenses to Plaintiffs. However, in the event that the [C]ourt agrees

pursuant to the Agreements result in control over Plaintiffs indicative of an employment relationship.[4] The corollary to Plaintiffs' theory that the services Border Transfer currently provides result in control over Plaintiffs indicative of an employment relationship is that Border Transfer must in turn alter its services in order to maintain a non-employee relationship. Congress intended to avoid such alteration of contractual service terms via state-law claims, and in turn the FAAAA preempts all of Plaintiffs' efforts to do so here. *Ginsburg*, 134 S. Ct. at 1433 (recognizing that substituting state policy for the bargained for agreement of the parties disrupts FAAAA's deregulatory aim because the "best interests" of market participants are "most effectively promoted, in the main, by allowing the free market to operate.").

Plaintiffs' assertion that these claims "will not have a significant impact on [Border Transfer's] services" is also unfounded. Pls.' Opp., p. 17. The First Circuit rejects the premise that empirical evidence of a claim's impact on prices, routes, or services is necessary to support a finding of preemption. *Mass. Delivery Ass'n v. Coakley,* 769 F.3d 11, 21 (1st Cir. 2014). Moreover, in *Ginsberg*, the Supreme Court held that preemption of the plaintiff's claim for breach of implied covenant was warranted irrespective of the measure of the impact on the defendant's prices and services. *Ginsberg*, 134 S. Ct. at 1433.

In *Ginsberg*, the fact that plaintiff was using a state law to challenge his expulsion from the defendant's frequent flyer program, alone, was sufficient to justify preemption of the claim. *Id*. at 1431 (claim preempted where "reason for seeking reinstatement of [plaintiff's] membership [was] to obtain reduced rates and enhanced services."). Border Transfer is under no obligation to provide a quantitative measure of the impact of Plaintiffs' claims. And, in any event, Plaintiffs'

---

there is no preemption of Count I, Plaintiffs will voluntarily dismiss their claim for unjust enrichment . . . as the Wage Act presents an adequate remedy at law to recover their unpaid wages and expenses.").

[4] *Compare, e.g., Compl.* ¶ 11(a)(required attendance at morning meetings to "receive instruction on aspects of deliveries" constitutes control indicative of employment), *and* ¶ 11(d) (a requirement to "make deliveries in two-hour time windows" reflects control indicative of employment), *with* ECF No. 9-1 p. 1 (requiring Plaintiffs' companies to provide "Carrier Services" that include "pick-up and/or delivery within residences and businesses locations in accordance with customer requirements"), *id.*, p. 9, §§ 1(a), 2(a) (identifying customer morning meeting requirement and instructions from customer on what to do if delivery time window is not met).

argument does not comport with First Circuit precedent that the decision to work with independent contractors and the financial terms of that work fit squarely within the realm of transportation services the FAAAA forbids state laws from interfering with. *Schwann*, 813 F.3d at 438-40; *see also United Airlines, Inc. v. Mesa Airlines, Inc.*, 219 F.3d 605, 610-11 (7th Cir.), cert. denied, 531 U.S. 1036 (2000) ("[W]hen the state begins to change the parties' financial arrangements . . . it is supplying external norms, a process that the national government has reserved to itself in the [ground transportation] business.").

Try as they might, therefore, Plaintiffs cannot escape the reality that each entered an Agreement to "perform the Carrier Services provided for . . . as an independent contractor." ECF Nos. 9-1 and 9-2, § 8. Nor can Plaintiffs avoid the promise at their "sole cost and expense [to] furnish all supplies and equipment necessary [and] to pay all operating expenses" including the insurance, workers' compensation coverage, and workers' pay Plaintiffs specifically request recovery of under Massachusetts law. *Id.*, §§ 3(B), 6(D), 6(F), 11, 12. Plaintiffs do not dispute the Agreement terms or contend Border Transfer breached those Agreements. Instead they request that the Court apply Massachusetts law to upend their contractual arrangement, shift their agreed upon financial arrangements, and retroactively determine that each was an employee. In other words, the effect of Plaintiffs' state-law claims is to compel service terms different from those the parties contracted for, which the FAAAA preempts.

### b. The FAAAA's preemption of Section 148B provides an alternative basis for dismissal of the Massachusetts Wage Act claim

The bases on which Plaintiffs dispute Border Transfer's alternative argument for dismissing the Massachusetts Wage Act claim—that the FAAAA preempts Prongs 1 and 3 of Section 148B—fail for the following reasons.

<u>First</u>, accepting Plaintiffs' argument that "generally applicable wage laws are not preempted" by the FAAAA would impermissibly expand on the three exceptions Congress provided to the FAAAA's preemptive reach. 49 U.S.C. § 14501(c)(2)(A). Wage laws are not among the exceptions, and the Court bars the judiciary from creating a wage law exception here. *United States v. Johnson*, 529 U.S. 53, 58 (2000) ("When Congress provides exceptions in a

statute, it does not follow that courts have authority to create others."); *see also Rowe*, 552 U.S. at 374 (recognizing the FAAAA "explicitly lists a set of exceptions" to the law and refusing to read a public health exception into the FAAAA).

As for the authority Plaintiffs cited in support of their sweeping generalization to the contrary, the cited decisions here and in the parentheticals below demonstrate Plaintiffs' citations are misplaced, whether because of the absence of any worker classification issue or inapplicable arguments contrary to what Border Transfer advocates here. *See Mass. Delivery Ass'n v. Healey*, 821 F.3d 187, 192 (1st Cir. 2016) (noting that "decisions from other circuits that the Attorney General argues are inconsistent with *Schwann—Costello v. BeavEx, Inc. . . . Amerijet International, Inc. v. Miami–Dade County*, . . . and *Dilts v. Penske Logistics, LLC . . .*—were already considered" and rejected).[5] No wage law exception exists, and the Court is not allowed to create one.

Second, Plaintiffs' assertion that a resemblance between Prongs 1 and 3 and laws in other states counsels against finding preemption likewise lacks merit. *E.g.*, Pls.' Opp., p. 7 (citing *Khan v. East Coast Critical, LLC*, No. 2015-2762-D (Suffolk Sup. Ct. May 4, 2016) as support for proposition). It matters not for preemption purposes whether the claim at issue is the same as or different from other state law claims. *Rowe*, 552 U.S. at 373 ("to interpret the federal law to permit

---

[5] *Californians for Safe & Competitive Dump Truck Transp. v. Mendoca,* 152 F.3d 1184, 1187 (9th Cir. 1998) (case analyzing whether FAAAA preempts application California labor code to operations of motor carriers who have chosen to use employees to transport freight); *Delivery Express, Inc. v. Sacks*, 2016 WL 3198321 (W.D. Wash. June 9, 2016) (concludes, contrary to First Circuit statement in *Brown*, that a presumption against preemption exists and, contrary to Supreme Court's analysis in *Rowe*, concludes that the ability to comply with the law militates against a preemption finding); *Echavarria v. Williams Sonoma*, 2016 WL 1047225, at *9 (D.N.J. Mar. 16, 2016) (case did not involve request to reclassify broker as employer, endorsed non-existent "generally applicable background regulation" exception to FAAAA's preemptive scope, and held a presumption against preemption exists "in this traditional area of state power," which the First Circuit has specifically rebuked (*Brown,* 720 F.3d at 68 ("the presumption against preemption does not apply" in the FAAAA context)); *Villalpando v. Exel Direct Inc.*, 2015 WL 5179486, at *24-30 (N.D. Cal. Sept. 3, 2015) (adopting "decisions of the Ninth Circuit and therefore" declining to follow approach "taken by the First Circuit" in case not involving property broker); *People ex rel. Harris v. Pac Anchor Transportation, Inc.*, 329 P.3d 180 (Cal. 2014) (state court opinion interpreting federal law that, contrary to Supreme Court precedent, relies on fallacy that in order to be preempted a state's employee classification test must wholly prohibit the use of independent contractors).

these, and similar, state requirements could easily lead to a patchwork of state service-determining laws . . . inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive market place."). What matters here is the impact of the enforcement of Plaintiffs' claims on Border Transfer's services. *Tobin*, 775 F.3d at 454.

Here, such enforcement would necessitate that broker Border Transfer acquire additional licensing from the federal government to transport freight and fulfill registration, branding (*i.e.* signage), public liability insurance, and safety compliance obligations. *See also* Def.'s Mem. pp. 8-9 (listing in detail operational changes Border Transfer would need to make in order to transport goods in interstate commerce under its own motor carrier authority). This modification in the services contemplated by Plaintiffs' Section 148B employment allegation goes directly to Border Transfer's core services as a broker and is in turn FAAAA-preempted. *Tobin*, 775 F.3d at 456.

It also distinguishes this case from the inapposite *Costello v. BeavEx*, 810 F.3d 1045 (7th Cir. 2016) decision Plaintiffs are fond of citing that did not involve property broker services or Section 148B. Rather, the Seventh Circuit answered only the question certified by the district court in the case—whether the FAAAA preempted the second prong of the test for employment contained in the Illinois Wage Payment and Collection Act ("IWPCA"), 820 ILCS 115/2(2). *Id*. at 1049 n.1. As a result, the Seventh Circuit engaged in no analysis of the FAAAA's preemptive effect on plaintiffs' claims or any subsection of Illinois employment test other than the second prong, and further explicitly distinguished Section 148B from the IWCPA in the opinion. *Id*. at 1055.

Moreover, it was critical to the Seventh Circuit in *Costello* that the parties in the case could contract around the IWPCA's prohibition on deductions from wages. *Id*. at 1057 (citing reasoning in *Ginsburg* for proposition that FAAAA does not preempt a state law that permits the parties to contract around its requirements). No such flexibility exists with respect to the Massachusetts Wage Act: "No person shall by a special contract with an employee or by any other means exempt himself from this section or from section one hundred and fifty." Mass. Gen. Laws ch. 149, § 148.

In *Schwann*, which was issued after *Costello*, the First Circuit embraced these distinctions and noted BeavEx's failure to show that the IWPCA's test would require a change in BeavEx's services. *Schwann*, 813 F.3d at 440 n.8. Here, the change in Border Transfer's services that would be required by the enforcement of Plaintiffs' claims is obvious—Border Transfer would have to provide motor carrier services. And even fully informed by the Seventh Circuit's rationale in *Costello*, the *Schwann* court held that Prong 2 was preempted. *Costello* is of no moment.

Third, Plaintiffs are incorrect that Border Transfer's assertion that the First Circuit left open the issue of whether Prongs 1 and 3 were FAAAA preempted "is simply wrong." *Schwann* does not hold that Prongs 1 and 3 escape the FAAAA's preemptive reach. Rather, the First Circuit made clear that the sole reason for its reversal and remand of the district court's holding in that regard was FedEx's decision to forego arguing that either prong was preempted, a point the First Circuit confirmed in the companion *Remington v. J.B. Hunt*, No. 1 15-1052 (1st Cir. Feb 22, 2016) case decided the same day as *Schwann*: "Our decision to reverse the district court's preemption argument [in *Schwann*] as to Prongs 1 and 3 was based on FedEx's decision not to advance any argument that Prongs 1 and 3 were preempted by the FAAAA." Moreover, the *Schwann* court made no comment on whether claims under Prongs 1 and 3 or purportedly similar laws in other states are preempted by the FAAAA. *Contra* Pls.' Opp., pp. 4, 14-15. Rather, the court stated that such laws "pose closer questions than that presented in this case." *Schwann*, 813 F.3d at 440. Every aspect of the *Schwann* court's discussion on Prongs 1 and 3 is therefore *dicta*.[6]

Fourth, Plaintiffs' are mistaken in their contention that "Border Transfer seeks a reading of the FAAAA that is at odds with its legislative history." *See* Pls.' Opp., pp. 15-17. In enacting the FAAAA, Congress' "overarching goal [wa]s [to] help[] ensure transportation rates, routes, and services that reflect the maximum reliance on competitive market forces, thereby stimulating

---

[6] Plaintiffs' citation to *Wilson v. Xpressman Trucking & Courier, Inc.* provides no support for their position. The decision incorrectly states that "Prong 2 preempts the Massachusetts Wage Act," and states the First Circuit affirmed in *Schwann* and its companion case, *Remington v. J.B. Hunt Transport, Inc.*, that "Prongs 1 & 3 are not preempted." ECF No. 113-10. The First Circuit made no such holding in either case. *Schwann*, 813 F.3d at 440-41; *Remington*, No. 15-1215, slip op. at 2.

efficiency, innovation, and low prices, as well as variety and quality." *Rowe*, 552 U.S. at 371 (internal quotations omitted). By deregulating the transportation market Congress liberated participants in the transportation industry to devise their own methods for transporting freight; allowing the marketplace, not states to determine the manner in which they did so. Effectuating this policy decision requires more than just eliminating federal regulation (and prohibiting state regulation) on the front end. Parties must have assurance that the terms upon which they agree will be honored. "The stability and efficiency of the market depends fundamentally on the enforcement of agreements freely made based on the needs by the contracting parties at the time." *Wolens*, 513 U.S. at 230; *see also Difiore*, 646 F.3d at 88 (service arrangements are just what Congress did not want states regulating, whether at high cost or at low.").

Fifth, a finding of preemption will not leave individuals contracting to provide transportation services as independent contractors without a remedy. The FAAAA does not preempt state law claims designed to enforce the contractual agreements that transportation companies reach. *Wolens*, 513 U.S. at 233. So, if an independent contractor was duped into entering an agreement or had a gun held to his head and was forced to sign it, he could argue that no contract was formed because it was not freely made. *E.g., P.L.A.Y., Inc. v. NIKE, Inc.*, F. Supp. 2d 60, 65 (D. Mass. 1998) (permitting rescission of a contract "only upon a showing of fraud, accident, mistake, or some type of grossly inequitable conduct that renders the contract void *ab initio*."). Were Plaintiffs to succeed on that argument, they would be free to rescind the contract. *Id.* Similarly, a motor carrier operator such as the Plaintiffs are free to argue that the broker breached the agreement. *See Ginsberg*, 134 S.Ct. at 1433. However, when the parties have freely entered a contract and performed under it, the FAAAA's deregulatory goal demands that the contract be honored and enforced. *Wolens*, 513 U.S. at 230.

**c.     The Agreement's existence requires dismissal of the unjust enrichment claim**

Plaintiffs' assure the Court they will voluntarily dismiss the unjust enrichment claim if the Court agrees not to find preemption of the Massachusetts Wage Act claim. Pls.' Opp., p. 18. Because "the mere availability of" a statutory claim, not its viability, bar an unjust enrichment

claim, Massachusetts law dictates that the Court should not accept this barter. *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012) ("The viability of her Chapter 93A claim . . . is beside the point; its 'mere availability' bars her claims for unjust enrichment"). Nor should it accept Plaintiffs invitation to adopt the Northern District of California's approach of waiting until a determination that "an enforceable contract between the parties" exists before dismissing an unjust enrichment claim. Under Massachusetts law, the "mere availability" of a statutory claim bars the unjust enrichment request. *Id.* "Massachusetts does not allow litigants to override an express contract by arguing unjust enrichment" and dismissal of the unjust enrichment claim on this alternative basis is therefore required. *Reed v. Zipcar, Inc.*, 883 F. Supp. 2d 329, 334 (D. Mass. 2012) (citing *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006)).

## III.   CONCLUSION

The Supreme Court made clear in *Wolens* and *Ginsburg* that state law claims may not alter or impair the enforcement of contracts related to transportation prices, routes, or services freely made in the marketplace without running afoul of the FAAAA. Both of Plaintiffs' claims violate this principle, and are in turn FAAAA-preempted. The FAAAA alternatively preempts the Massachusetts Wage Act claim because a fundamental change in Border Transfer's services as a broker would follow if Plaintiffs obtained their requested relief under Section 148B. And an alternative basis for dismissing Plaintiffs' unjust enrichment claim also exists given the existence of the Agreements, which provides the foundation for the parties' relationship here.

Border Transfer respectfully requests that the Court enter judgment in its favor on Plaintiffs' Complaint.

Respectfully submitted,

**BORDER TRANSFER OF MA, INC.**

*/s/Adam C. Smedstad*
Adam C. Smedstad
(Admitted *Pro Hac Vice*)
Scopelitis, Garvin, Light, Hanson & Feary
30 W. Monroe Street, Suite 600
Chicago, IL 60603-2427
Telephone:  312-255-7200
asmedstad@scopelitis.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 9, 2016.

*/s/Adam C. Smedstad*

4815-2332-6007, v. 5