UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
MARCOS DaSILVA and MATTEUS    )
FERREIRA, on behalf of themselves )
and all others similarly situated, )
                              )
                Plaintiffs,   )      Civil Action
                              )      No. 16-11205-PBS
v.                            )
                              )
BORDER TRANSFER OF MA, INC.,  )
                              )
                Defendant.    )
_____)
```

**MEMORANDUM AND ORDER**

January 5, 2017

Saris, C.J.

**INTRODUCTION**

Plaintiffs DaSilva and Ferreira used to work as delivery drivers for Defendant Border Transfer. They claim that Border Transfer improperly treated them as independent contractors when they were in fact employees, and that as a result Border Transfer unlawfully deducted certain business expenses from their pay. Border Transfer moves to dismiss on the basis that the plaintiffs' claims are preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1).

Border Transfer fails to show that the plaintiffs' claims are preempted. However, the unjust enrichment claim is barred because there is an available remedy at law. Border Transfer's motion to dismiss (Docket No. 8) is **DENIED** as to Count I of the complaint and **ALLOWED** as to Count II of the complaint.

## BACKGROUND

### I. Factual Allegations

Border Transfer provides delivery services for large retail stores such as Sears. The plaintiffs worked as delivery drivers for Border Transfer delivering Sears merchandise. Their relationship with Border Transfer was governed by Contract Carrier Agreements.[1]

The agreements stated that the plaintiffs were independent contractors. However, the plaintiffs allege that they should have been classified as employees because Border Transfer exercised substantial control over their drivers and the drivers did not have the ability to maintain an independently established business. The drivers were required to report to a Border Transfer/Sears facility five mornings a week, where they were instructed on how to assemble equipment and how to interact with customers. They were directed to load goods on their trucks

---

[1] The agreements are attached to Border Transfer's motion to dismiss as Exhibits A and B. They are incorporated by reference in the complaint and are properly part of the motion to dismiss record. Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).

in a specific order and to deliver them at specific times, according to daily manifests provided by Border Transfer. The drivers were required to log each delivery on a cell phone application. They also had to be in contact with Border Transfer and Sears dispatchers throughout the day regarding the status of deliveries, cancellations, and rescheduling. Each day, the drivers had to return haul-aways (equipment removed from customers' homes or businesses) to the warehouse.

The drivers were not permitted to use helpers unless those helpers passed Border Transfer's background checks. Border Transfer could terminate those helpers at any time.

The drivers were required to own or lease a truck that met Border Transfer's specifications. They were also required to carry insurance at levels dictated by Border Transfer.

Border Transfer monitored customer ratings for each driver and would suspend drivers whose ratings dropped below a certain level. Border Transfer could also terminate the contract with the drivers without cause.

Certain expenses were deducted directly from drivers' compensation, including when Border Transfer determined that a delivery had been made in an unsatisfactory manner -- for instance, when goods or consumer property were damaged. The cost of uniforms was also deducted, as was the cost of paying for a replacement driver when a driver could not complete a delivery.

Certain expenses, such as worker's compensation coverage, cargo insurance, fuel costs, vehicle maintenance costs, and payments to helpers, were borne by the drivers.

## II. Procedural History

After their agreements with Border Transfer expired, the plaintiffs filed this putative class action complaint. They asserted two counts: (1) violation of the Massachusetts Wage Law, Mass. Gen. Laws ch. 149, § 148, and (2) unjust enrichment. Both causes of action claimed that Border Transfer improperly treated the plaintiffs as independent contractors rather than as employees, and as a result unlawfully deducted certain expenses from their pay.

On August 8, 2016, Border Transfer moved to dismiss on the basis that the plaintiffs' claims are preempted by the FAAAA.

## DISCUSSION

### I. Motion to Dismiss Standard

A Rule 12(b)(6) motion is used to dismiss complaints that do not "state a claim upon which relief can be granted." See Fed. R. Civ. P. 12(b)(6). In evaluating a Rule 12(b)(6) motion, the Court must accept the factual allegations in the plaintiffs' complaint as true, construe reasonable inferences in their favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772

4

F.3d 63, 71 (1st Cir. 2014).

## II. Legal Framework

### A. Massachusetts Wage Law

The Massachusetts Wage Law requires prompt and full payment of wages due. It provides that "in no event shall wages remain unpaid by an employer for more than six days from the termination of the pay period in which such wages were earned by the employee." Mass. Gen. Laws ch. 149, § 148. The Massachusetts Supreme Judicial Court has interpreted the statute as banning improper wage deductions, even where the employee has given his or her assent. Camara v. Attorney Gen., 941 N.E.2d 1118, 1121–22 (Mass. 2011).

The term "employee" in the Massachusetts Wage Law is defined by the Massachusetts Independent Contractor Statute:

> [A]n individual performing any service, except as authorized under this chapter, shall be considered to be an employee under those chapters unless:
> (1) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and
> (2) the service is performed outside the usual course of the business of the employer; and,
> (3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 149, § 148B(a). All three prongs must be met for a worker to be an independent contractor rather than an

employee. The case law refers to the three prongs as Prongs 1, 2, and 3 (or, occasionally, Prongs A, B, and C).

**B.   FAAAA Preemption**

The FAAAA expressly preempts any state law "related to a price, route, or service of any motor carrier . . . or any motor private carrier, broker, or freight forwarder with respect to the transportation of property." 49 U.S.C. § 14501(c)(1). There are three exceptions to the preemption provision, none of which apply here. Id. § 14501(c)(2).

Congress copied the FAAAA preemption provision from the preemption clause of the Airline Deregulation Act of 1978 ("ADA"), 49 U.S.C. § 41713(b)(1). See Rowe v. N.H. Motor Transp. Ass'n, 552 U.S. 364, 370 (2008). The ADA was part of a wave of federal deregulation and was based on Congress's determination that "'maximum reliance on competitive market forces' would favor lower airline fares and better airline service." Id. at 367–68 (quoting Morales v. Trans World Airlines, Inc., 504 U.S. 374, 378 (1992)). The purpose of ADA preemption was to "ensure that the States would not undo federal deregulation with regulation of their own." Id. at 368 (quoting Morales, 504 U.S. at 378).

By adopting the wording of the ADA preemption clause in the FAAAA, Congress also adopted the Supreme Court's "broad preemption interpretation" of the ADA. Rowe, 552 U.S. at 370.

Like the ADA, the FAAAA was intended to "help[] ensure transportation rates, routes, and services that reflect 'maximum reliance on competitive market forces,' thereby stimulating 'efficiency, innovation, and low prices,' as well as 'variety' and 'quality.'" Id. (quoting Morales, 504 U.S. at 378).

Under the broad ADA/FAAAA preemption standard, a state law is preempted "if it expressly references, or has a significant impact on, carriers' prices, routes, or services." Mass. Delivery Ass'n v. Coakley, 769 F.3d 11, 17–18 (1st Cir. 2014). A state law can be preempted even if its effect on prices, routes, or services "is only indirect." Rowe, 552 U.S. at 370. Of course, there must be a limit to preemption because, "in a broad sense, everything 'relates to' everything else in some manner." Schwann v. FedEx Ground Package Sys., Inc., 813 F.3d 429, 436 (1st Cir. 2016). Therefore, state laws that only have a "tenuous, remote, or peripheral" impact on prices, routes, or services are not preempted. Rowe, 552 U.S. at 371.

The First Circuit has held that a state law's potential impact on prices, routes, and services is sufficient for preemption if that impact is significant, rather than tenuous, remote, or peripheral. Mass. Delivery Ass'n, 769 F.3d at 21. The potential impact need not be proven by empirical evidence. Rather, courts may "look[] to the logical effect that a particular scheme has on the delivery of services or the setting

7

of rates." Id. (alteration in original) (quoting N.H. Motor Transport Ass'n v. Rowe, 448 F.3d 66, 82 n.14 (1st Cir. 2006), aff'd, 552 U.S. 364 (2008)).

In Schwann, the First Circuit applied the broad FAAAA preemption standard to the Massachusetts Independent Contractor Statute and found Prong 2 to be preempted. According to the First Circuit, Prong 2 was "something of an anomaly" in "mak[ing] any person who performs a service within the usual course of the enterprise's business an employee for state wage law purposes, . . . even if those persons could be deemed independent contractors under federal law and the law of many states." Id. at 438. As such, Prong 2 caused "regulatory interference" by "preclud[ing] FedEx from providing for first-and-last mile pick-up and delivery services through an independent person who bears the economic risk associated with any inefficiencies in performance." Id. at 438–39. That, the First Circuit reasoned, would have a significant effect on the carrier's routes and services as a matter of logic. Id.

### III. **FAAAA Preemption**

Border Transfer argues that the FAAAA preempts the plaintiffs' unjust enrichment claim, the Massachusetts Wage Act claim, and the entirety of the independent contractor definition statute in § 148B.

In response, the plaintiffs argue for a categorical rule that the FAAAA does not preempt generally applicable state employment laws. The plaintiffs rely on a number of out-of-circuit cases, principally Costello v. Beavex, 810 F.3d 1045, 1055 (7th Cir. 2016) (holding that the Illinois Wage Payment and Collection Act, which prohibits wage deductions in a similar way as the Massachusetts Wage Law, is not FAAAA-preempted because it "regulates the motor carrier as an employer, and any indirect effect on prices is too tenuous, remote, or peripheral"); Amerijet Int'l Inc. v. Miami-Dade County, 627 Fed. App'x 744 (11th Cir. Sept. 21, 2015) (holding a state minimum wage law not FAAAA-preempted); and Dilts v. Penski Logistics, LLC, 769 F.3d 637, 646-47 (9th Cir. 2014) (holding that California meal and rest break laws were not FAAAA-preempted because they were "generally applicable background regulations that are several steps removed from prices, routes, or services").

However, the First Circuit has already rejected a categorical rule of that nature. In Massachusetts Delivery Association v. Coakley, the Massachusetts Attorney General "argue[d] for a categorical rule against preemption of 'background' labor laws" that "are generally applicable and not directed to a particular area of federal authority." 769 F.3d at 18. The First Circuit "refuse[d] . . . to adopt such a categorical rule exempting from preemption all generally

9

applicable state labor laws." Id. at 20. The First Circuit noted that Supreme Court precedent favored a broad reading of "related to" preemption and that the Attorney General's proposed categorical rule would "creat[e] an utterly irrational loophole (there is little reason why state impairment of the federal scheme should be deemed acceptable so long as it is effected by the particularized application of a general statute)." Id. (quoting Morales, 504 U.S. at 386). Instead, wrote the First Circuit, "we must carefully evaluate even generally applicable state laws for an impermissible effect on carriers' prices, routes, and services," and "engage with the real and logical effects of the state statute, rather than simply assigning it a label." Id.

The First Circuit in Schwann conducted such an analysis on Prong 2 and found it to be preempted. That conclusion is binding here. See N.H. Motor Transp. Ass'n, 448 F.3d at 72–73 ("[I]f a state law is preempted as to one carrier, it is preempted as to all carriers."). The plaintiffs argue that Schwann also did that work for Prongs 1 and 3 and found them to be, unlike Prong 2, not preempted. But the plaintiffs misrepresent the holding of Schwann. Schwann held that Prong 2 was preempted, but said nothing about whether either Prongs 1 or 3 was preempted. Instead, Schwann vacated and reversed the district court's holding that Prongs 1 and 3 were preempted on the basis that

FedEx never made such an argument either before the district court or before the First Circuit. Schwann, 813 F.3d at 441. That the First Circuit in Schwann "h[e]ld FedEx to its decision not to argue to us that Prongs 1 and 3 are preempted," id., is different from a holding on the merits that Prongs 1 and 3 are not preempted.

As such, the question before the Court is whether the Massachusetts Wage Law claim and Prongs 1 and 3 of the Massachusetts Independent Contractor Statute actually have a significant impermissible effect on carriers' prices, routes and services. Border Transfer's "related to" analysis fails to make that showing. Border Transfer does nothing more than argue in a conclusory manner that the plaintiffs' state law claims are service-determinative, with a citation to Schwann. But the FAAAA analysis is not so simple and Schwann does not do the work that Border Transfer wants it to.

Schwann's holding on Prong 2 does not extend to Prongs 1 and 3. Schwann found it to be significant that Prong 2 made any person who performs a service within the usual course of the enterprise's business an employee for state wage law purposes -- in other words, it necessarily made any person who drove for FedEx an employee. Schwann, 813 F.3d at 438. That was a severe constraint on FedEx's business model that, by preventing FedEx from being able to set up drivers with particular economic

11

incentives, had a significant effect on FedEx's routes and services as a matter of logic. But, as the Massachusetts Supreme Judicial Court recently held, Prongs 1 and 3 do not have such a drastic effect. See Chambers v. RDI Logistics, Inc., 2016 WL 7253568, at *7 (Mass. Dec. 16, 2016) ("Unlike prong two, there is nothing intrinsic to [Prongs 1 and 3] that prevents motor carriers from using independent contractors."). Prongs 1 and 3 still allow a carrier to use an independent contract driver model as long as the carrier does not exert a certain level of control over them or prevent them from engaging in an independently established trade.

Schwann also suggested that state laws that are anomalous relative to laws of other states would logically have a greater effect on prices, routes, and services. It emphasized that not only did Prong 2 constrain carriers' business models by automatically making any driver an employee, but that it was also unlike the law of many other states. Prongs 1 and 3, in contrast, are fairly standard elements of an independent contractor test. See Khan v. E. Coast Critical, LLC, No. MICV 2015-2762-D (Mass. Sup. Ct. May 4, 2016), slip op. at 3 ("Prongs 1 and 3 of § 148B(a) on their face adopt wide-spread and apparently nationally uniform tests for determining the employer/employee relationship . . . ."). As the First Circuit suggested, "state laws that are more or less nationally uniform,

and therefore pose no patchwork problem, or that have less of a reference to and effect on a carrier's service and routes pose closer questions than that presented in this case." Schwann, 813 F.3d at 440.

Border Transfer's "related to" argument boils down to an assertion that the Massachusetts Wage Law plus the Massachusetts Independent Contractor Statute "compel different service terms than those in the Agreement." Docket No. 27 at 2. But the basis for that argument is tenuous because the agreement between Border Transfer and its drivers does not contain service terms. Border Transfer fails to allege any facts that Massachusetts law, by overriding Border Transfer's contract with the drivers, has a significant impact on the services that Border Transfer provides to its customers.

Instead, Border Transfer makes the legal argument that if the Court finds under Massachusetts law that Border Transfer employs truck drivers who transport goods, then that finding may also trigger "motor carrier" status under federal law. Border Transfer considers itself to be a broker, not a motor carrier. See 49 U.S.C. § 13102(2) (defining "broker"), (14) (defining "motor carrier"). Border Transfer claims that if it were required to meet the various operating requirements that federal law imposes on motor carriers, there would be a significant impact on the services that it currently offers. See, e.g., id.

13

§§ 14101, 14102. Any application of the federal motor carrier statute to Border Transfer, however, would be by operation of the federal statutory definition of a motor carrier, see id. § 13102(14), and federal regulations that define the terms "employer" and "employee" for purposes of the federal motor carrier safety regulations, 49 C.F.R. § 390.5. The parties have not addressed any case law construing these definitions. In any event, whether the plaintiffs fall within the definition is a matter of federal law, not state law.

On this record, the Court does not find the Massachusetts Wage Act or Prongs 1 or 3 of the Massachusetts Independent Contractor Statute preempted by the FAAAA. Border Transfer's motion to dismiss is **DENIED** as to Count I.

## IV. Unjust Enrichment

A party with an adequate remedy at law cannot claim unjust enrichment. Santagate v. Tower, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005). The Massachusetts Wage Act is available as a statutory remedy, and that is sufficient to bar unjust enrichment. Reed v. Zipcar, Inc., 883 F. Supp. 2d 329, 334 (D. Mass. 2012) (noting that the viability of the remedy at law "is beside the point" and that "mere availability" of the remedy at law bars unjust enrichment), aff'd, 527 F. App'x 20 (1st Cir. 2013); see also Fernandes v. Havkin, 731 F. Supp. 2d 103, 114

(D. Mass. 2010).  Border Transfer's motion to dismiss is **ALLOWED** as to Count II.

## ORDER

Border Transfer's motion to dismiss (Docket No. 8) is **DENIED** as to Count I and **ALLOWED** as to Count II.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge