UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                                )
MARCOS DaSILVA and MATTEUS    )
 FERREIRA, on behalf of themselves   )
and all others similarly situated,              )
                                                                )
Plaintiffs,                                               )      Case No. 16-cv-11205-PBS
                                                                )
v.                                                           )
                                                                )
BORDER TRANSFER OF MA, INC.    )
And PATRICK MCCLUSKEY,            )
                                                                )
Defendants.                                            )
_____)


**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STRIKE
THE TESTIMONY OF THOMAS N. HUBBARD**

**INTRODUCTION AND BACKGROUND**

Plaintiffs, on behalf of themselves and a certified class of others similarly situated, have asserted wage claims against Defendants Border Transfer of MA, Inc. and Patrick McClusky ("BTMI") under the Massachusetts Wage Act. The central issue in this case—and the one that will determine liability—is whether BTMI misclassified its drivers as "independent contractors," under the ABC test set forth in M.G.L.A. Ch. 149 § 148B. BTMI has moved for summary judgment regarding the employment status of one class member, Humberto Chantre, claiming that he did not personally provide delivery services for BTMI.[1] If that is true, then he is not

---

[1] "Regardless of the timeframe ambiguity for Mr. Chantre's class membership, the undisputed facts demonstrate he is not "an individual" covered by Section 148B, and, even if Section 148B applied, he does not qualify as an employee under Section 148B given the absence of control (Section B(2)) and his operation of Chantre Delivery as an independently established business (Section B(3))." Defendant's Memorandum in Support of Motion for Summary Judgment (hereafter "Summary Judgment Memo"), Docket #111, pg. 14.

1

within the class definition.[2] In support of that motion, BTMI has submitted purported expert testimony by Thomas N. Hubbard who opines that economically the plaintiffs appear to be independent contractors, not employees.[3] *See Generally* Hubbard Report, Docket # 110.29. Hubbard has drafted an unsworn opinion that claims to offer economic analysis to justify this conclusion, but really offers his own legal conclusions by grossly misapplying the Massachusetts ABC test, which does not utilize any of the factors he discusses. Plaintiffs now move under Federal Rules of Civil Procedure 26(e) and 37(c)(1) as well as Federal Rule of Evidence 702 to exclude Hubbard's testimony for three dispositive reasons and they seek costs for being required to address this issue.

First, it is dispositive that BTMI did not disclose Hubbard as an expert witness until they attached his report in support of their motion for summary judgment on October 8, 2018. Yet over a year ago, BTMI was served with expert interrogatories (attached hereto as **Exhibit 1** ("Plaintiffs' Interrogatories")) and it stated in response that it had not identified any expert witnesses (attached hereto as **Exhibit 2** ("BTMI's Response")). BTMI at no point supplemented its response to this interrogatory to inform the Plaintiffs that it would be using Hubbard. As a result, BTMI has failed to comply with the FRCP 23(e) requirement to timely supplement their responses to interrogatories and is therefore subject to the penalties imposed by FRCP 37(c)(1), including the exclusion of Hubbard's report and the responsibility to pay the reasonable expenses the plaintiffs have incurred because of BTMI's failure to make proper disclosure. The case law in this circuit unanimously supports the striking of his undisclosed report.

---

[2] That class being, "All individuals who 1) entered into a Contract Carrier Agreement (or similar agreement) directly or through a business entity; 2) personally provided delivery services for Border Transfer on a full-time basis in Massachusetts (at least 40 hours per week); and 3) who were classified as independent contractors, at any time since June 23, 2013," as per the order granting class certification in this case, Docket No. 95.
[3] Plaintiffs of course deny the assertions made in Hubbard's report.

Second, the Hubbard Report fails several of the FRE 702 eligibility requirements for expert witness evidence. As the report is unsworn, it is *per se* inadmissible. Even it was admissible, Hubbard's testimony consists entirely of opinions and legal conclusions that do not help the trier of fact to understand the evidence or determine any fact in issue. It is well established that expert testimony cannot instruct a federal court as to the applicable law or make legal conclusions about the parties' compliance with the law. Yet Hubbard's report does just that when it asserts that Plaintiffs are independent contractors based on a variety of facts already in evidence. As a result, Hubbard's testimony is nothing more than a legal brief that BTMI seeks to improperly introduce as expert testimony, and therefore under Federal Rule of Evidence 702, it should be excluded. Indeed, such opinions about whether someone is or is not an independent contractor have been stricken by a number of other courts.

Finally, the only apparent citation of the Hubbard Report in the Defendant's legal memorandum concerning the instant motion for summary judgment concerns whether BTMI only exercises control over the plaintiffs at its shipper clients' behest. Summary Judgment Memo, Docket #111, pg. 18.  This issue is both irrelevant under the Massachusetts ABC test, and incorrect as a matter of law, since control imposed because of customer demands is still control under prong A. See Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013), Molina v. S. Florida Exp. Bankserv, Inc., 420 F. Supp. 2d 1276 (M.D. Fla. 2006), Hurst v. Buczek Enterprises, *LLC*, 2012 WL 1564733, *14 (N.D. Cal. May 2, 2012).

**ARGUMENT**

I. **HUBBARD WAS NOT TIMELY DISCLOSED AS AN EXPERT WITNESS AND THEREFORE HIS UNDISCLOSED REPORT CANNOT BE USED TO SUPPORT BTMI'S SUMMARY JUDGMENT MOTION PER FRCP 26(e), and 37(c)(1).**

On March 17, 2017, the Plaintiffs filed and served their first set of interrogatories on BTMI. The following was the 19th interrogatory:

> Please identify any experts that Border Transfer intends to use in this matter. Please state each expert's name, the subject upon which the expert is anticipated to testify, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion of each expert.

(Exhibit 1, pg.9). On June 8, 2017, BTMI filed and served their response to these interrogatories. The following was BTMI's response to the 19th interrogatory:

> BTMI has not identified experts in this matter at this time. BTMI Reserves the right to do so as trial in this matter approaches and will provide all required information consistent with any expert disclosure requirements ordered by the Court.

(Exhibit 2, pg. 19). On May 16, 2018, BTMI filed and served a supplemental response to Plaintiff's interrogatories, attached as **Exhibit 3** ("BTMI's Supplemental Response"). This supplemental response did not modify BTMI's previous response to the 19th interrogatory or state any intent to call an expert witness. After this point, BTMI did not provide any further supplemental responses to the Plaintiffs' Interrogatories.

The Hubbard Report tells us that BTMI had contacted Hubbard in June of 2018. Hubbard Report, Docket #110.29, pgs. 8, 19. By then, BTMI had been in possession of Plaintiffs' interrogatories for over a year and had supplemented its responses to them less than 2 months beforehand. Exhibit 1, Exhibit 2. When they did not do so, they violated FRCP Rule 23(e) which states that "a party that has responded to an interrogatory must supplement or correct its disclosure or response in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect." FRCP 23(e)(1)(a). Given that the Plaintiffs' Interrogatory requested the identities and purposes of any expert witnesses the BTMI intended to call, the defendants responded to that interrogatory that they did not have any intent to call an expert witness and that as of June 28, 2018 at the latest, BTMI had knowledge that this statement was no longer correct because they intended to use at least one expert witness, but still never provided any disclosure till the report was filed by BTMI as an exhibit on October 8th, there is no question that BTMI did not comply with FRCP 23(e).

Violations of FRCP 23(e) are subject to penalties established by FRCP Rule 37(c)(1), which are that, "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial," and that in addition, the court may "order payment of reasonable expenses, including attorney's fees." FRCP 37(c)(1). The 1st Circuit has affirmed the importance of this rule in Wilson v. Bradlees of New England, Inc., 250 F.3d 10, (1st Cir.2001), stating that 37(c)(1) "gave teeth to a significantly broadened duty to supplement Rule 26 disclosures by making mandatory preclusion 'the required sanction in the ordinary case.'" Id., at 19, *Quoting* Klonoski v. Mahlab, 156 F.3d 255, 269 (1st Cir.1998). In that case, which also concerned untimely disclosed expert evidence used to support a summary judgment motion, the court confirmed that once the moving party had established that the evidence in question was

untimely disclosed, a court had no obligation to even view or consider the evidence before deciding to exclude it. Id., at 20-21. This stringent standard of exclusion has since been regularly followed in this Circuit. *See e.g.,* Primus v. United States, 389 F.3d 231, 234–35 (1st Cir. 2004), Osgood v. Town of Salisbury, 105 F. Supp. 3d 160, 164 (D. Mass. 2015), Puma AG Rudolf Dassler Sport v. Payless ShoeSource, Inc., No. CIV.A.06-11943-RGS, 2008 WL 686592, at *2 (D. Mass. Mar. 14, 2008). Most notably, this standard has been upheld to exclude not just expert evidence, but the entirety of the testimony of expert witnesses from consideration during summary judgment motions where the party offering said evidence failed to supplement their responses to interrogatories in a timely fashion. Providence Piers, LLC v. SMM New England, Inc., No. CV 12-532S, 2015 WL 9699936, at *3 (D.R.I. Oct. 1, 2015), *report and recommendation adopted*, No. CV 12-532 S, 2016 WL 126742 (D.R.I. Jan. 11, 2016)

## II. HUBBARD'S UNSWORN TESTIMONY CONSISTS OF EITHER LEGAL CONCLUSIONS OR LAY INTERPRETATIONS OF EXISTING EVIDENCE AND THEREFORE DOES NOT ASSIST THE TRIER OF FACT UNDER FRE 702.

### a. The Hubbard Report is unsworn, and therefore is inadmissible hearsay, not proper expert evidence

The Hubbard Report is not a sworn statement. While Hubbard's signature appears on page 25 of the document, Hubbard swears no oaths to the Court alongside it, nor is any such oath attached elsewhere in MBTI's evidence in support of its motion. Hubbard Report, Docket # 110.29, pg. 25. Multiple federal circuits, including the First Circuit, have held that an expert report can only be admitted at the summary judgment stage if they are sworn statements.

Redondo Const., Co. v. Izquierdo, 929 F. Supp. 2d 14, 19 (D.P.R. 2013), *aff'd in part*, *vacated in part, remanded sub nom*. Redondo Const. Corp. v. Izquierdo, 746 F.3d 21 (1st Cir. 2014) ("Expert reports are inadmissible hearsay. Thus, because plaintiff's 2010 Expert Report is unsworn, it is an inadmissible hearsay document that cannot be considered as part of the summary judgment record. *See* Pack v. Damon Corp., 434 F.3d 810, 815 (6th Cir.2006) (expert report was 'unsworn and thus is hearsay, which may not be considered on a motion for summary judgment'); Capobianco v. City of N.Y., 422 F.3d 47, 55 (2d Cir.2005) (stating that unsworn physician's letters 'generally are inadmissible hearsay that are an insufficient basis for opposing a motion for summary judgment'); Garside v. Osco Drug, Inc., 895 F.2d 46, 50 (1st Cir.1990) ('Hearsay evidence, inadmissible at trial, cannot be considered on a motion for summary judgment.'). Accordingly, this court should exclude the Hubbard Report from consideration at summary judgment.

### b. The crux of the Hubbard Report is a legal conclusion.

The terms "employee" and "independent contractor" are legal terms created by common law and statute. The definitions of these phrases often vary from jurisdiction to jurisdiction and from cause of action to cause of action within them. While there may be commonly accepted definitions for "employee" and "independent contractor" in the fields of economics or business, Massachusetts has its own specific definition of the terms under its wage act, separate and apart from the common law. This despite MBTI's statements implying that Hubbard has somehow defined these terms from an economic, and not legal, perspective.[4] But it is simply irrelevant

---

[4] *E.g.* "IV. FROM AN ECONOMIC PERSPECTIVE, THE PLAINTIFFS ARE INDEPENDENT CONTRACTORS, NOT EMPLOYEES." Hubbard Report, Docket #110.29, pg. 15."

whether he disagrees with the Massachusetts test, or thinks the court should apply economic analysis to the problem. The trier of fact must apply the test set forth in the statute, section 148B, not in the economic literature. Thus "[g]enerally, where the evidence is not in conflict or the facts are admitted, the question of whether a person is an employee or an independent contractor is a matter of law to be decided by the court." Bostic v. Connor, 524 N.E.2d 881, 884 (1988). Hubbard is clearly engaged throughout the report in defining legal terms, no matter that he fails to cite a single case to support his determinations.

Under the federal rules of evidence, expert testimony may only be admitted if it is of use to the factfinder, which legal interpretation is not. FRE 702(a), In re Fedex Ground Package Sys., Inc. Employment Practices Litig., No. 3:05-MD-527 RM, 2010 WL 1838400, at *4 (N.D. Ind. May 4, 2010), *Quoting* RLJCS Enter. Inc. v. Prof. Benefit Trust Multiple Employer Welfare Benefit Plan and Trust, (487 F.3d 494, 498 (7th Cir.2007). ("Legal arguments are costly enough without being the subjects of experts' depositions… [i]f specialized knowledge…would assist the judge, the holders of that knowledge can help counsel write the briefs and present oral argument."). Following this logic, the court in In re FedEx held that an expert's testimony concerning FedEx delivery drivers' independent contractor status was legal interpretation and therefore inadmissible. ("[I]nterpretation of the law on independent contractor status and conclusion that FedEx drivers aren't employees isn't a proper subject for expert testimony." In re

---

"Neither the facts that Plaintiffs cite in support of their claim, nor the evidence from deposition testimony or otherwise, supports Plaintiffs' position that Plaintiffs are Employees of BTMI." Hubbard Report, Docket #110.29, pg. 5.

"Employees typically have none of these rights. Contractors typically do." Hubbard Report, Docket #110.29, pg. 14.

"The fact that work is monitored and assessed and that there can be consequences from such an assessment, does not mean that work is completed by employees." Hubbard Report, Docket #110.29, pg. 21.

FedEx, *4.). As the First Circuit has also held legal interpretations inadmissible as expert evidence, this Court should therefore hold that the Hubbard Report has no place in the courtroom to assist the judge under FRE 702. Nieves–Villanueva v. Soto–Rivera, 133 F.3d 92, 100 (1st Cir.1997) ("Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards.") (citation and internal quotation marks omitted).

### c. Hubbard largely supports his legal conclusions with evidentiary judgments that could be made by a layperson, not expert analysis.

Importantly, while Hubbard is providing unneeded legal interpretation, Hubbard does not provide substantive economic in a way that would distinguish him from a layperson examining the facts, which this Circuit has held to be the "fundamental" question for whether to allow expert testimony. ("The fundamental question that a court must answer in determining whether a proposed expert's testimony will assist the trier of fact is '[w]hether the untrained layman would be qualified to determine intelligently and to the best degree, the particular issue without enlightenment from those having a specialized understanding of the subject matter involved.'" United States v. Shay, 57 F.3d 126, 132 (1st Cir. 1995) (internal citations omitted)). This ruling built upon previous Supreme Court precedent explicitly favoring excluding expert opinions where lay interpretation of facts is possible. Salem v. United States Lines Co. 370 U.S. 31, 35 (1962). The court in Bostic held that the factual issues involved in determining independent contractor status were categorically those that can be understood by lay fact finders. ("The jury did not require any technical or specialized testimony by appellant's expert to understand the distinctions between an employee and an independent contractor." Id., at 886).

As Bostic and the other cases cited demonstrate that an expert report on independent contractor status is impermissible as legal interpretation and unnecessary to interpret the facts involved, it has no place in the courtroom. The Plaintiffs therefore urge the Court to follow these precedents and to exclude this report under FRE 702.

### III. THE USE OF HUBBARD'S TESTIMONY CONCERNS AN ISSUE THAT IS LEGALLY IRRELEVANT TO THE LIABILTY QUESTION AT HAND AND THEREFORE SHOULD BE EXCLUDED UNDER FRE 702

There is exactly one (1) mention of Hubbard, or his report, in MBTI's memo in support of its motion for summary judgment:

> "As Professor Hubbard observed, many requirements that Plaintiffs identify as indicative of control—making deliveries pursuant to daily manifests and within certain delivery windows, logging the completion of deliveries, or having a truck that meets certain specifications —constrain BTMI in "how it supplies services to Innovel" and in its selection of motor carriers that can meet Innovel's requirements." Summary Judgment Memo, Docket #111, pg. 18.

But whether BTMI`s obligation to enforce customer requirements against the plaintiffs in this case constitutes evidence of control under Prong A of Section 148B or not is actually a legal question addressed by many courts and is otherwise irrelevant. As the Court correctly cited in its ruling on MBTI's motion to dismiss, a worker is an employee under Massachusetts law unless they satisfy the first prong of the so-called "ABC Test," that "the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact." Memorandum and Order, Docket no. 49, p. 5. Mass. Gen. Laws ch. 149, § 148B(a).

Other employers have similarly asked courts to disregard their substantial control over Plaintiffs' work, arguing that their control is necessary because of the unique nature of their business or the requirements of their customers. Courts have flatly rejected these attempts to

10

justify or downplay an employers' control over its workers. In Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir. 2013), the court held "the economic reality inquiry requires us to examine the nature and degree of the alleged employer's control, not why the alleged employer exercised such control. Business needs cannot immunize employers." Id., 1316. In Molina v. S. Florida Exp. Bankserv, Inc., 420 F. Supp. 2d 1276 (M.D. Fla. 2006) the court rejected the defendant's argument that "any monitoring it did was done at the behest of its customers" and was therefore irrelevant to the analysis of employee status. Id. at 1284 n.24. The court observed that "[t]he Defendant's reasoning is circular. Any employer's business is, in essence, directed by the needs of its customers." Id.; *See also* Hurst v. Buczek Enterprises, *LLC*, 2012 WL 1564733, *14 (N.D. Cal. May 2, 2012) (rejecting the same argument because if accepted it "would indicate that any worker who completes tasks that are geared toward implementing client requests would become a contractor rather than an employee.") The Court should likewise hold that the reason MBTI exercises its control is irrelevant, and in so doing recognize the expert evidence at issue is irrelevant and inadmissible.

## **CONCLUSION**

For the foregoing reasons, Plaintiffs request that this Court grant its motion to strike the report of Thomas N. Hubbard under FRCP 37(c)(1) and FRE 702 because the Defendant BTMI failed to accurately respond to Plaintiffs' interrogatory requesting the disclosure of expert witnesses and because his testimony does not assist a trier of fact, but is instead an unsworn and improper legal judgment on an irrelevant set of facts that a layperson could readily interpret if they mattered. The Plaintiffs additionally request the court also order the Defendant BTMI to

compensate the plaintiffs for all reasonable attorney fees and expenses incurred as a result of their failure to timely disclose Hubbard as an intended expert witness.

Respectfully Submitted,

DATED:  October 26, 2018

MARCOS DaSILVA, et al., individually and on behalf of all others similarly situated,

By their attorneys,

  */s/ Harold L. Lichten*
Harold L. Lichten BBO# 549689
Benjamin J. Weber BBO# 673736
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 5800
hlichten@llrlaw.com
bweber@llrlaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on October 26, 2018, the foregoing document was filed electronically through the ECF System and is available for viewing and downloading from the ECF System, that it will be sent electronically to counsel of record identified as registered participants on the Notice of Electronic Filing.

/s/ Harold L. Lichten
Attorney for Plaintiffs

12