## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|   |   |   |
|---|---|---|
| MARCOS DaSILVA and MATTEUS FERREIRA, on behalf of themselves and all others similarly situated, | ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 16-cv-11205-PBS |
| v. | ) ) ) | |
| BORDER TRANSFER OF MA, INC. and PATRICK McCLUSKEY, | ) ) ) ) | |
| Defendants. | ) ) | |

_____

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

## I.    INTRODUCTION

Border Transfer's motion for summary judgment, simply puts window dressing on many of the same arguments it has already unsuccessfully raised in this case.  Despite the largely undisputed facts that Plaintiffs and the class they represent worked full-time exclusively for Border Transfer, performed the work assigned by Border Transfer according to the methods proscribed by Border Transfer, and were entirely reliant on Border Transfer for their incomes, Border Transfer argues that Plaintiffs cannot recover under the Wage Act because Border Transfer required its drivers to form corporate entities.  This Court has already held, however, that "incorporation cannot be a shield to prevent liability under the Wage Act."  Order dated Nov. 9, 2017 at p. 21 (ECF No. 95). Furthermore, Judge Douglas Woodlock held, in a nearly identical case, that delivery drivers could recover the same categories of deductions at issue in this case under the Wage Act, even though the

drivers contracted with the defendant through corporate entities.[1]  Martins v. 3PD Inc. ("Martins II"), 2014 WL 1271761, at *11 (D. Mass. Mar. 27, 2014) (citations omitted).  Moreover, this same argument has been rejected time and time again, because if Defendants were correct, every employer could avoid liability by simply making their workers incorporate.  Amero v Townsend Oil Co., 2009 WL 1574229, at *3, n. 4 (Mass.Super. Apr. 15, 2009) (rejecting the argument that an individual's "decision to incorporate precludes him from enjoying the benefits of the Wage Act" because such an argument "ignore[s] economic reality" and would enable "any employer who wanted to avoid the requirements of the Wage Act simply [to] require its employees to incorporate as a condition of employment."); Vargas v. Spirit Delivery & Distribution Servs., Inc., 245 F.Supp.3d 268, 287 (D. Mass. 2017) (accord); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745 *3 (Dec. 30, 2013)(same); De Giovanni v. Jani–King Int'l, Inc., 262 F.R.D. 71, 86 (D. Mass. 2009) (accord); Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 623-24 (2013) (employer cannot avoid liability under the Wage Act by contracting for an individual's services through an intermediary entity).  Thus, Border Transfer may not similarly avoid its obligations under the Wage Act. See Padovano v. FedEx Ground Package Sys., Inc., 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016) ("If any business could avoid the [New York wage law] by simply classifying their workers as independent contractors and compensating them through corporations rather than paying them directly, the [wage law] would be rendered useless.").[2]

---

1       Moreover, Judge George O'Toole held that Home Delivery America, which held the Sears contract and performed deliveries out of the same facility in Westwood, Massachusetts, could not escape liability under the Wage Act simply because it contracted with drivers who were required to form corporate entities.  Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745, at *2 (D. Mass. Dec. 30, 2013) ("I agree with those courts that have concluded that a worker can qualify as an employee under § 148B even if he has incorporated his business, and the employer's formal relationship is with the entity and not the individual.").

2       Indeed, there is nearly universal support for the proposition that an employer may not circumvent the wage laws by requiring workers to incorporate. See below at Footnote 5.

Border Transfer otherwise argues that some of the deductions it makes are permissible given that Plaintiffs agree to them in their contractor agreements.  As this Court has held, however, the SJC has interpreted the statute as banning improper wage deductions, even where the employee has given his or her assent.  Order dated Jan. 5, 2017 at p. 5 (ECF No 49) (citing Camara, 458 Mass. at 760).  Thus, the mere fact the contracts spell out the deductions is no defense under the Wage Act.

Border Transfer further argues that Plaintiffs may not recover worker's compensation and cargo insurance premiums merely because, rather than deduct those mandatory costs from Plaintiffs compensation, Border Transfer requires the drivers to pay their premium out of their own pockets.  As the SJC has held, however, employers may not require their employees to pay the costs of worker's compensation and other liability insurance in an attempt to indemnify themselves for "costs [that] are related to future damages that may never come to pass, and even if they do, may not be the responsibility of the employee."  Awuah v. Coverall N. Am., Inc., 460 Mass. 484, 495 (2011).  The SJC expressly prohibited precisely the kind of end-run around the Wage Act now proposed by Border Transfer, holding that "[a]n agreement between an employer and an employee that the employee will obtain insurance for the benefit of the employer also violates the Wage Act because it is a 'special contract' that has the effect of exempting the employer from the obligations to pay earned wages in full."  Awuah, 460 Mass. at 497, n. 22 (emphasis added).  Thus, Border Transfer may not avoid the Wage Act simply by requiring its drivers to pay for worker's compensation and cargo insurance out of pocket.

Border Transfer further argues that, even if deductions for damage to Sears merchandise violate the Wage Act, such damage claims are preempted by the Carmack Amendment and the FAAAA.  This argument borders on the frivolous, because the Carmack amendment exclusively regulates freight claims by shippers, who own the merchandise, against the motor carriers with whom they contracted to do the shipping.  As Plaintiffs are not shippers, and do not own the freight,

the amendment has no relevance here.  Moreover, because the Wage Act is an exercise of Massachusetts' traditional police powers to protect its workers, there is a strong presumption that the claims under the Wage Act are not preempted.  See, e.g., Lupian v. Joseph Cory Holdings LLC, 905 F.3d 127, 131 (3d Cir. 2018).  Similarly, this Court has already held that Plaintiffs' claims are not preempted by the FAAAA.  Order at ECF No. 49.

Border Transfer further argues that Plaintiffs cannot recover deductions Border Transfer makes for uncompleted  deliveries.  Border Transfer argues that, even though it pays its drivers "per stop," such deductions are lawful because the driver has not "earned" his compensation as required under the Wage Act.  The SJC has held that the "plain and ordinary meaning" of "earn" is "[t]o acquire by labor, service or performance."  Awuah, 460 Mass. at 492, (quoting Black's Law Dictionary 584 (9th ed. 2009)).  Thus, drivers who load appliances into their trucks, drive to customers' homes, and therefore attempt installation have certainly provided ample labor and earned their compensation under the Wage Act. The fact that the installation could not be completed is not grounds to allow deductions, but even if it were, this fact simply means that a very small category of deductions may not be granted at trial -- it has no effect on any other issue in this case.

Finally, Border Transfer spends much of its brief arguing that one contractor, Humberto Chantre, who did not personally provide make any deliveries for Border Transfer since approximately February 2016, is not an employee under the Wage Act.  This reflects a fundamental misunderstanding of the case.  Chantre is only a member of the class in this case during the period that he actually made deliveries full time for Borders. If he then stopped doing that, he is by definition not part of the class.  The class certified by this Court includes  contractors who have "personally provided delivery services for Border Transfer on a full-time basis in Massachusetts (at least 40 hours per week)."  Order at p. 33 (ECF No. 95).  As Chantre himself attests, after approximately February 2016 (the class is certified back to June 2013) he did not personally provide

4

delivery services for Border Transfer and, therefore not a class member after that date.[3]  As discussed in more detail below, the Court should deny Border Transfer's motion for summary judgment.

## II.     STATEMENT OF FACTS

Plaintiffs rely upon their statement of material facts filed with their motion for partial summary judgment, which is being filed concurrently with this opposition and upon their response to Defendants' statement of facts, as well as Plaintiffs' counterstatement of facts being filed along with this memorandum.

## III.    ARGUMENT

### A.     Border Transfer's Drivers Cannot Waive Their Claims under the Massachusetts Wage Act.

In spite of overwhelming authority holding that Massachusetts workers cannot waive their rights under the Wage Act, Border Transfer argues that its delivery drivers waived their claims to recover deductions and insurance premiums that the drivers were required to pay out of pocket merely by signing Border Transfer's contractor agreements.  Defs.' Mem. at p. 6.  This is a non-starter.  See Camara v. Attorney Gen., 458 Mass. 756, 760 (2011) (employee's right to earned wages under the Wage Act "cannot be overcome by an employee's assent"); ECF No. 49 at p. 5.

The Wage Act provides that "[n]o person shall by a special contract with an employee or by any other means exempt himself" from the duty to pay employees a lawful wage. M.G.L. c. 149 § 148.  Border Transfer pretends that it is not clear what is meant by "special contracts."  Defs.' Mem. At p. 6.  There is, however, no confusion in the courts.  The SJC has "consistently held that the legislative purpose behind the Wage Act (and especially the 'special contract' language) is to

---

[3]      An analysis of Border Transfer's daily logs however, shows that Chantre did operate a truck on a full-time basis from July 2013 to February 2016.  Pls.' Counter. SOF, ¶ 8.  Thus, he would be a class member during that time.

provide strong statutory protection for employees and their right to wages." Crocker v. Townsend Oil, 464 Mass. 1, 979 N.E.2d 1077, 1086 (Mass.2012).  Indeed, "the SJC has made clear that any attempt by an employer to shift the ordinary costs of doing business to its employees must be met with skepticism and carefully scrutinized." Martins II, 2014 WL 1271761, at *5 (citing Awuah, 952 N.E.2d at 898–900; Camara, 941 N.E.2d at 1121–24 & n. 11.  The SJC recognized that the "special contracts" language first appeared in 1896 and has long been held to mean that "[a]n agreement to circumvent the Wage Act is illegal even when 'the arrangement is voluntary and assented to.'" Melia v. Zenhire, Inc., 462 Mass. 164, 170 (2012) (quoting Camara v. Attorney Gen., 458 Mass. 756, 760–761 (2011)).  Indeed, by including the ban on "special contracts," "the Legislature was cognizant, in general, of the risk that employers or other persons may seek to find ways, through special contracts or other means, to attempt to avoid compliance ... and intended to thwart such schemes." Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 622, 990 N.E.2d 1054, 1067 (2013)) (quoting DiFiore v. Am. Airlines, Inc., 454 Mass. 486, 497 (2009)).

Thus, the fact that the contracts signed by Defendants' drivers described the deductions made from their compensation and otherwise required them to pay for worker's compensation and cargo insurance cannot be held to waive any of the Plaintiffs' claims under the Wage Act.  See Depianti, 465 Mass. at 624, 990 N.E.2d 1054 ("To allow such an end run around M.G.L. c. 149, § 148, would contravene the express purpose of the statute and would nullify the provision therein that specifically forbids this type of arrangement by a special contract with an employee or by any other means.") (quoting M.G.L. c. 149, § 148); Salerno v. Baystate Ford, Inc., 2016 WL 513747, at *3 (Mass. Super. Feb. 5, 2016) ("as the Plaintiffs rightly point out, an employee's post-hoc acquiescence in such a practice would offend the statute's prohibition on 'special contracts' designed to circumvent compliance with the Wage Act"); Patel v. 7-Eleven, Inc., 322 F. Supp. 3d 244, 253 (D. Mass. 2018) (accord); Meschino v. Frazier Indus. Co., 2016 WL 4083342, at *4 (D.

Mass. Aug. 1, 2016) ("Although the Wage Act does not define "special contract," the Supreme Judicial Court (SJC) has interpreted the statute as banning any arrangement that would deduct or withhold payment of earned wages, even where the employee has given his assent.") (citing Camara, 458 Mass. at 760-761).

### B.   Plaintiffs May Recover Amounts Border Transfer Required Them to Pay for Worker's Compensation and Cargo Insurance.

Border Transfer argues that Plaintiffs may not recover worker's compensation and cargo insurance premiums that Plaintiffs themselves were required to take out of their own compensation, merely because Border Transfer did not directly deduct those amounts from their pay.  Defs.' Mem. at. p. 7-8.  Essentially what Border Transfer is arguing is that it may require its employees to indemnify the company for any future losses related the deliveries they perform.  The SJC, however, has held that such a scheme violates the Wage Act.  The SJC has plainly held that an employer generally may not reduce an employee's pay simply because they were involved in an accident of caused damage because such deductions shift "the ordinary costs of doing business" onto the employees.  Camara v. Attorney Gen., 458 Mass. 756, 762, n. 11 (2011).  Accordingly, in Awuah, the SJC held that "an employer may not deduct insurance costs from an employee's wages where those costs are related to future damages that may never come to pass, and even if they do, may not be the responsibility of the employee."  Awuah, 460 Mass. at 495 (holding that, under state wage payment law, an employer may not deduct from wages the costs of workers' compensation insurance or other insurance costs such as "comprehensive liability insurance" and "janitorial bonding").  In addition, the SJC expressly held that an employer violates the Wage Act it requires employees to go out and pay for insurance for the employer's benefit.  Awuah, 460 Mass. at 497 n.22.  Whether paid from a deduction or out-of-pocket, "[a]n employer's insurance costs, when borne by an employee, reduce wages just as effectively as if the employer had obtained the policy

and deducted funds from the wages." Id. (citing G.L. c. 149, § 150 ("assignment of future wages payable weekly under [§ 148] shall not be valid ... if made or procured to be made to another person for the purpose of relieving the employer from the obligation to pay weekly")). Other courts have also held that employers may not indemnify themselves against future liability by requiring their employees to pay for cargo insurance. See, e.g., Coleman v. FedEx Ground Package Sys., Inc., 2012 WL 2407538, at *7 (W.D. Ky. June 25, 2012) (cargo insurance deductions violated Kentucky wage law because employer could not insure itself against losses that occurred through no willful negligence of the drivers); Gennell v. FedEx Ground Package Sys., Inc., 2013 WL 4854362, at *9 (D.N.H. Sept. 10, 2013).

In Martins II, the court held that "[u]nder the SJC's decision in Awuah, an employer may not transfer the cost of worker's compensation insurance or other insurance coverage 'intended to protect against the risk of damage to an employer's property, or the risk of injury to the person or property of a third party for which an employer may become financially responsible.'" Martins II, 2014 WL 1271761, at *7. Furthermore, Judge Woodlock further held that both worker's compensation and cargo insurance payments were recoverable under the Wage Act, holding that "I see no material difference between the types of insurance costs held to be recoverable as damages in Awuah and the ones at issue in this action." Martins II, 2014 WL 1271761, at *7. Thus, by requiring that its drivers pay for worker's compensation and cargo insurance out of their own pockets, Border Transfer's has required exactly the kind of "special contract" that is impermissible under the Wage Act.

Border Transfer cites to a Massachusetts Appeals Court decision, Fraelick v. PerkettPR, Inc., 83 Mass. App. Ct. 698 (2013), which dealt with an employee's retaliation claim based on a complaint that she was not timely reimbursed for expenses, for the proposition that only literal deductions can be recovered under the Wage Act. Defs.' Mem. at p. 7 n. 16. In Martins II, Judge

Woodlock held that Fraelick was not applicable, however, to the question of whether a misclassified worker had a valid claim for insurance premiums under the Wage Act.  Martins II, 2014 WL 1271761, at *7 ("Apart from the fact that the Appeals Court in Fraelick did not actually determine whether an underlying Wage Act violation had occurred (apart from the retaliation claim, none was alleged). . . the facts of Fraelick are readily distinguishable from the facts of misclassification cases like Awuah and the instant case.").  Moreover, in Fraelick, Massachusetts Appeals Court held that, pursuant to the no "special contracts" language of § 148, it was clear that "[t]he legislative intent, again, is to prevent the unlawful detention of wages, including, as alleged here, by agreement between the employer and employee." Fraelick, 83 Mass. App. Ct. at 704.  After discussing Awuah and Camara, the Appeals Court held that "§ 148 prohibits not just 'special contract[s],' but also wage reductions achieved by 'any other means,' and all but 'valid set-off[s].'" Id. at 708 (emphasis added).  Thus, the decision in Fraelick supports a finding that requiring employees to pay mandatory insurance premiums out of their own pockets violates the Wage Act.

Border Transfer further argues that Plaintiffs cannot recover worker's compensation premiums because they have not pleaded that they were employees under the Worker's Compensation Act.  Defs.' Mem. at p. 9.  This argument goes nowhere because, as Border Transfer readily acknowledges, Plaintiffs' sole claim is that they are owed for insurance premiums that they paid out of their own pocket thus violating  the Wage Act.  Moreover, as Judge Woodlock held, even if the drivers are not employees under the Worker's Compensation Act, once Border Transfer elected to require drivers to obtain worker's compensation, "it was not free to transfer that cost to the drivers." Martins II, 2014 WL 1271761, at *8 (citing Awuah, 952 N.E.2d at 898–900).  Thus, the Plaintiffs' claim for worker's compensation rests on a finding that they are employees under the Wage Act. Moreover, Plaintiffs were plainly employees under the Worker's Compensation Act, which utilizes the common law right to control test similar that the Wage Act's Prong A.  Fleming

9

v. Shaheen Bros., 881 N.E.2d 1143, 1147 (Mass. App. Ct. 2008).  Plaintiffs demonstrate in their motion for summary judgment, however, that Border Transfer retains substantial control over the work performed by its drivers, thus, Border Transfer cannot satisfy either test. [4]  Regardless, merely because a different test may apply under the Worker's Compensation Act, as Judge Woodlock held, that is no bar to recovering fees paid by employees for worker's compensation payments that an employer is obligated to provide.  Moreover, even if Border Transfer is correct, this is an issue for the factfinder.

Border Transfer further argues that Plaintiffs should not be able to recover mandatory insurance premiums they paid under the Wage Act because they worked for Border Transfer through corporate entities.  Defs.' Mem. at p. 9-10.  As discussed above, this Court has already expressly held that "incorporation cannot be a shield to prevent liability under the Wage Act."  Order at p. 21 (ECF No. 95).  Indeed, as this Court found, its decision was supported the overwhelming weight of authority.  Id. (citing Martins I, 2013 WL 1320454, at *7, *9; Vargas v. Spirit Delivery & Distribution Servs., Inc., 245 F.Supp.3d 268, 287 (D. Mass. 2017); De Giovanni v. Jani–King Int'l, Inc., 262 F.R.D. 71, 86 (D. Mass. 2009)).  See also Depianti, 465 Mass. at 623-624 (an employer cannot avoid liability under the Wage Act by contracting for an individual's services through an intermediary entity); Amero v. Townsend Oil Co., Civ. A. 07–01080, Slip Op. at 5, n. 4 (Mass.Super.Ct. Apr. 15, 2009); Padovano, 2016 WL 7056574, at *4 ("If any business could avoid the [New York wage law] by simply classifying their workers as independent

---

[4]     The Worker's Compensation statute, like the Wage Act,  is to be interpreted broadly to effectuate its remedial purpose.  Neff v. Comm'r of Dep't of Indus. Accidents, 421 Mass. 70, 73 (1995); see also Awuah, 460 Mass. at 495("to permit an employer to transfer to its employees the cost of workers' compensation insurance premiums would be inconsistent with both the general intent and the specific language of the Workers' Compensation Act").

contractors and compensating them through corporations rather than paying them directly, the [wage law] would be rendered useless.").[5]

Moreover, in this case there is overwhelming evidence that Border Transfer required its drivers to form corporations to work for Border Transfer. Pls.' Counter. SOF, ¶ 2-4. Indeed, often contractors did not have a corporate entity prior to contracting with Border Transfer. Id., ¶ 3. And, in at least one case, a Border Transfer's manager personally formed the corporate entity for the driver, named Plaintiff Marcos DaSilva. Id., ¶ 4. Thus, there mere fact that Plaintiffs worked for Border Transfer through corporate entities cannot frustrate a Wage Act claim. Depianti, 465 Mass. at 621, 624 (an employer could not perform an "end run" around the Wage Act "by virtue of an arrangement permitting it to distance itself from its employees"). The Court must reject this argument too.

## C. THE MASSACHUSETTS WAGE ACT, AND PLAINTIFFS' CLAIMS SPECIFICALLY, ARE NOT PREEMPTED BY THE CARMACK AMENDMENT OR THE FAAAA

---

[5]     There is nearly universal support for the proposition that an employer may not circumvent the wage laws by requiring workers to incorporate. See Ruiz v. Affinity Logistics Corp., 754 F.3d 1093, 1103 (9th Cir.) cert. denied, 135 S. Ct. 877 (2014) ("While 'purporting to relinquish' some control to the drivers by making the drivers form their own businesses and hire helpers, [defendant] 'retained absolute overall control' over the key parts of the business); Parilla v. Allcom Constr. & Install. Svcs., LLC, 2009 WL 2868432 (M.D. Fl. 2009) (plaintiff who incorporated was an employee; incorporation was a "façade"); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (employment status of mechanics who formed their own corporations must be determined under the applicable classification test) (citing Gustafson v. Bell Atlantic Corp., 171 F.Supp.2d 311 (S.D.N.Y. 2001) (finding employee status despite incorporation)); Meredith v. Honeywell Inter., Inc., 245 Fed.Appx. 325, 328-29 (4th Cir. 2007) ("the fact that [the defendant] had a contract with [a trucking company] the terms of which provided that [the trucking company] was an independent contractor [and] that neither [the trucking company] nor its employees would be considered [the defendant's] employees…[does not] alter the legal obligations of the respective parties"); Martin v. Shelby Telecom, LLC, 2012 WL 2476400, *3-7 (N.D.Ala. June 26, 2012) (worker's incorporated status does not create genuine issue of material fact as to employment status where evidence suggests employer controlled means of work and opportunity for profit); De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 86 (D. Mass. 2009) (certifying class of workers to pursue employment claims even where named plaintiff formed a corporation and hired his own employees).

The Defendants once again claim federal preemption and assert that the "Wage Act cannot be applied to delivery drivers (even those that are employees) because it is preempted by the 1906 Carmack Amendment, which preempts state claims by shippers against motor carriers  for damage to goods in transit.  This Court has already held that Plaintiffs' Wage Act claims are not preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49 U.S.C. § 14501(c)(1), as have all of the courts to recently address claims under the Wage Act.  Order at ECF No. 49; Vargas, 245 F.Supp.3d at 287; Chambers, 476 Mass. at 105 (accord); Portillo v. Nat'l Freight, Inc., 2016 WL 5402215, at *5 (D.N.J. Sept. 26, 2016).  Defendants' latest preemption argument also has no merit.

The Defendants' new preemption argument fails for three reasons.  First, as courts have held for over a century, the Carmack Amendment's purpose, which governs the scope of preemption, is solely to standardize liability arising under contracts between shippers of goods and the entities they contract with.  See e.g. Adams Express Co. v. Croninger, 226 U.S. 491, 506 (1913), Rini v. United Van Lines, Inc., 104 F.3d 502, 504 (1st Cir. 1997), Helvetia Swiss Insurance Company v. Jones.  The relationship between Plaintiffs and Border Transfer is not a shipper-motor carrier relationship, but relationship between employees and an employer, and Plaintiffs clearly do not own nor are they shipping the Sears appliances to someone, and they certainly cannot claim damages from damage to the goods.   Under the Carmack Amendment a shipper "owns the goods being transported."  49 U.S.C. § 13102(13)(C).  Neither Border Transfer nor its drivers owned the Sears merchandise being delivered.  Indeed, Border Transfers' contract with Sears expressly states "Neither [Border Transfer] nor [the contractor-drivers] has any right, title, interest, or claim in Merchandise transported under this Agreement."  Pls. Resp. to Defs.' SOF, ¶ 20.  Obviously, the Wage Act claim filed by the Plaintiffs is not preempted because they did not ship any goods.

Second, as the Third Circuit recently held in an identical case, in holding that the Illinois wage law was not preempted by the FAAAA, when courts analyze whether a federal law preempts "state law claims that pertain to 'areas of traditional state regulation' or police power, we apply a presumption against preemption." Lupian v. Joseph Cory Holdings LLC, 905 F.3d 127, 131 (3d Cir. 2018) (citing Bates v. Dow Agrosciences LLC, 544 U.S. 431, 449 (2005); N.Y. State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co., 514 U.S. 645, 655, (1995)) (emphasis added). There is no dispute that state wage laws such as the Wage Act enforce Massachusetts' "traditional state regulation or police power include regulation of 'the employment relationship to protect workers in the State.'" Id. (quoting DeCanas v. Bica, 424 U.S. 351, 356 (1976); Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 21 (1987) ("[P]re-emption should not be lightly inferred in this area, since the establishment of labor standards falls within the traditional police power of the State.")). As the Carmack Amendment never even remotely contemplated affecting a state's right to determine what monies could be deducted from an employee`s paycheck, the Wage Act claim here cannot be preempted. Indeed, in Schwann v. FedEx Ground, the First Circuit reiterated that there is a presumption that Congress did not intend to preempt "pre-existing and customary manifestation of the state's police power" such as Prongs A and C of the Wage Act. Schwann v. FedEx Ground Package Sys., Inc., 813 F.3d 429, 438 (1st Cir. 2016). Finally, even assuming the Carmack Amendment applies to this transaction, multiple Circuit Courts, (including one the Defendants rely upon) hold that the Carmack Amendment only preempts state claims that involve the liability for physical harms done to property in shipment, not other claims such as deductions from wages which may arise out of such property damage but do not involve a shipper`s claim for compensation from such physical damage. See e.g. Rini v. United Van Lines, Inc., 104 F.3d 502, 504 (1st Cir. 1997), Gordon v. United Van Lines, Inc., 130 F.3d 282, 289 (7th Cir. 1997), Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 382 (5th Cir. 1998).

13

1.     **The purpose of the Carmack Amendment is solely to regulate damages claims by shippers against parties they contract with for shipping.**

The Carmack Amendment was enacted in 1906 as a part of the Hepburn Act, amending the Interstate Commerce Act. The Hepburn Act, 34 Stat. 584, at 595 (June 29, 1906); 49 U.S.C.A. § 14706.  Its purpose was to ensure a uniform rule that both guaranteed shippers' compensation for property lost in transit and provided a uniform rule for freight carriers, so they would not be subject to a multitude of differing liabilities from shippers in different states for lost or damaged property. Rini v. United Van Lines, Inc., 104 F.3d 502, 504 (1st Cir. 1997) ("To achieve national uniformity in the liability assigned to carriers. '[I]t is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject.'").  The statute limits the value of claims that shippers may make against interstate freight carriers for damaged property to the value of the property being transported unless a carrier contracts with the shipper to cap liability at a lower level. The Hepburn Act, 34 Stat. 584, at 595 (June 29, 1906); 49 U.S.C.A. § 14706.  See Lumbermens Mut. Cas. Co. v. GES Exposition Servs., Inc., 303 F. Supp. 2d 920, 921 (N.D. Ill. 2003) ("The Carmack amendment makes interstate carriers liable for the entire value of the property damage they cause, 49 U.S.C. § 14706, and preempts all state law claims based upon the contract of carriage in which the harm arises out of the loss or damage of the goods.  Gordon v. United Van Lines, Inc., 130 F.3d 282, 284 (7th Cir.1997). Carriers may avoid liability by entering into a contract with shippers that meets certain criteria.").

Because of this clear statutory purpose, there is not one case that supports the Defendants' argument that the Carmack Amendment was intended preempt claims beyond those brought by shippers, and certainly none that arise from the employment relationship governing a shipper's employees.  Indeed, Defendants only cite to cases brought by shippers for physical damages to property, which is not the situation here.

More importantly, other courts have specifically held that *only* claims being brought by plaintiffs in their roles as shippers are preempted by the Carmack amendment.  Recently, the court in Helvetia Swiss Insurance Company v. Jones, 2018 WL 4492814 (M.D. Pa. Sept. 19, 2018) examined a Carmack Amendment preemption argument that a defendant motor carrier made, claiming that the call for indemnification by the plaintiff insurance company was preempted by the amendment.  The court rejected this argument, holding that "even though the Carmack Amendment seemingly would have applied to any claims that the plaintiff, as the shipper, raised directly against TAT, its carrier, it is not applicable to the Jones/Midwest's claims for indemnification and contribution against Franzman/TAT since Jones/Midwest are not a shipper seeking to recover for a loss against its interstate carrier." Id., at *6 (emphasis in original).  Previously, the court in In Transit, Inc. v. Excel North American Road Transport, Inc. 426 F. Supp. 2d 1136 (D. Or. 2006) held that "the [Carmack] [A]mendment's purpose intent was to facilitate recoveries against carriers for damage to transported cargo."  Id., at 1140 (2006) (citing Southern Pacific Trans. Co. v. United States, 456 F. Supp. 931, 937 (E.D. Cal. 1978)).

In the present case Plaintiffs are not shippers, and they are not making anything remotely resembling a claim for physical damage to their "goods."  Plaintiffs are simply claiming that as employees (under Section 148B), Border Transfer could not deduct money from their paychecks just because during a delivery, an appliance or piece of furniture owned by a third party was scratched or otherwise damaged.  Relying on section 148, the SJC and other courts have ruled that such deductions are illegal.  Camara, 458 Mass. at 758, Awuah, 703 F.3d at 39, Martins II, supra. This claim is thus so far removed from the claim of a shipper against a carrier for damage to the cargo that the Carmack Amendment nor the FAAAA is not even remotely implicated.

   **2.    None of the cases Border Transfer cites hold that causes of action unrelated to shippers' physical property damages are preempted by the Carmack Amendment.**

Defendants cite the broad-seeming statement "that all state laws that impose liability on carriers based on the loss or damage of shipped goods are preempted," from the Rini decision.  Rini, at 506 (emphasis added).  However, the same paragraph in that decision clarified that this did not preempt a claim made by the plaintiff shipper in that case for damages for emotional harms suffered as a direct result of the motor carrier's destruction of their property, as these would be "separate harms" from those suffered by the plaintiff as a result of the physical deprivation of property.  Id. Even where there was an identity of parties and an identity of action causing the harm, the fact that the harm was of a different kind meant that the state law governed liability, not the Carmack Amendment.  This standard has not been contradicted in this circuit and has been adopted by both the Seventh and Fifth Circuits.[6]  This missing clarification changes the entire application of even the Defendants' preemption standard to the present case. The harms suffered by the Plaintiffs in this case, that their employer deducted money from their paycheck following harms suffered by a third party for property destroyed in interstate shipping, are at least as "separate" than those addressed by the statutes the Rini court found to escape preemption by the Carmack Amendment.

Meanwhile, the First Circuit cases that follow Rini that the Defendants cite do not concern preemption of the Wage Act or of any other state employment law statute.  See York v. Day Transfer Co., 525 F. Supp. 2d 289, 293 (D.R.I. 2007) (state negligence action brought against two companies after a shipper's household goods were damaged by mold); Kashala v. Mobility Services

---

[6]     "Taking Hughes, Pinkerton, and Rini together, we too conclude that the Carmack Amendment does not preempt those state law claims that allege liability on a ground that is separate and distinct from the loss of, or the damage to, the goods that were shipped in interstate commerce." Gordon v. United Van Lines, Inc., 130 F.3d 282, 289 (7th Cir. 1997)).  "[T]he Carmack Amendment preempts any common law remedy that increases the carrier's liability beyond 'the actual loss or injury to the property,' 49 U.S.C. § 11707(a)(1), unless the shipper alleges injuries separate and apart from those resulting directly from the loss of shipped property."  Morris v. Covan World Wide Moving, Inc., 144 F.3d 377, 382 (5th Cir. 1998)).

International LLC, 2009 WL 2144289, (D. Mass. May 12, 2009) (state negligence action brought by an individual for loss of and damages to household goods while being transported); Ameriswiss Technology LLC v. Midway Line of Illinois, Inc. 888 F. Supp. 2d 197, 201 (D.N.H. 2012) (state negligence action brought by a technology company against a transportation company that destroyed their machinery in transit).  These cases all concerned the amounts of compensation owned to a shipper from a motor carrier given the damage to a shipper's property, as is the proper scope of preemption given the Carmack Amendment's purpose.  Accordingly, we ask the Court to hold the Plaintiffs' cause of action, brought under the Wage Act as employees for the harm of unauthorized deductions from their pay, is not preempted by the Carmack Amendment.

### 3.    Plaintiffs' Damage Claims Are Not Preempted by the FAAAA.

Border Transfer has also restated its argument that Plaintiffs damages claims are preempted by the FAAAA.  This Court has already held that Plaintiffs' Wage Act claims are not preempted. See Order (ECF No. 49).  In doing so, the Court held that Border Transfer failed to show that the Wage Act had a "significant impermissible effect on [Border Transfer's] prices, routes and services."  Id. at p. 11.  Similarly, in Martins II, the court expressly rejected the argument that deductions claims were preempted by the FAAAAA.  2014 WL 1271761, at *3.  Indeed, merely requiring Border Transfer to stop taking deduction from Plaintiffs' pay will have only a tangential impact on Border Transfer's prices, routes, or services, which is "too tenuous" to trigger preemption.  See, e.g., Costello v. BeavEx, Inc., 810 F.3d 1045, 1055 (7th Cir. 2016) (Illinois deductions law not preempted because "[l]aws that merely govern a carrier's relationship with its workforce . . . are often too tenuously connected to the carrier's relationship with its consumers to warrant preemption."); Gennell, 2013 WL 4854362, *5-7 (holding that any effect of delivery drivers' wage deduction and expense reimbursement claims was "simply too tenuous to warrant preemption" under the FAAAA).  Indeed, in awarding delivery drivers their deductions unde the

Wage Act, Judge Woodlock expressly rejected the defendant's FAAAA preemption argument. Martins II, 2014 WL 1271761, at *4.  Moreover, most states have wage deduction laws that are similar to the Massachusetts Wage Act.[7]  The cases relied on by Border Transfer for its new FAAAA argument do not involve claims made under state wage laws.  Rather, similar to claims involving the Carmack Amendment, these cases involve a property owner seeking damages from a business shipping its goods.  See, e.g., Alpine Fresh, Inc. v. Jala Trucking Corp., 181 F. Supp. 3d 250, 257 (D.N.J. 2016) (claim for damage to plaintiff's produce by defendant shipping company); Non Typical, Inc. v. Transglobal Logistics Grp. Inc., 2012 WL 1910076, at *1 (E.D. Wis. May 28, 2012) (claim for loss resulting from the theft of a truckload of digital cameras which were purchased by the plaintiff).

      **D.**      **Plaintiffs May Recover Deductions For Unfinished Deliveries.**

Border Transfer further argues that Plaintiffs cannot recover deductions made by Border Transfer for unfinished deliveries.  Defs.' Mem. at p. 13.  These deductions relate to deliveries that drivers try to make, but are unable to complete for reasons such as the customer is not at home.  Pls. Counter. SOF at ¶ 5-6.  This argument goes merely to the scope of damages and involves issues of fact that make it unripe for resolution now.  Nevertheless, Border Transfer argues that it may deduct these amounts because the drivers have not "earned" their wages where they did not complete the delivery.  Plaintiffs, however, are supposed to be paid a flat rate "per stop." Id., ¶ 7.  Border Transfer further acknowledges that it pays drivers for deliveries that may require a return visit by another driver when, for example, the installed appliance has a bad fit.  Id., ¶ 5-6.

---

[7]    See, e.g., Cal. Lab. Code §§ 221 and 224; Conn. Gen. Stat. Ann. § 31-71e; 820 Ill. Comp. Stat. 115/9; Del. Code. Ann. Tit. 19, 1101; Ind. Code Ann. § 22-2-6-2; Iowa Code § 91A.5(2); Kan. Stat. Ann. § 44-319; Ky. Rev. Stat. Ann. § 337.060; La. Rev. Stat. Ann. § 23:635; Minn. Stat. § 181.79 subd. 1(a); N.J.S.A. 34:11–4.1 to –4.14l N.Y. Lab. Law § 193(1), (2); N.C. Gen. Stat. Ann. § 95-25.8; Wis. Stat. § 103.455; Vt. Stat. Ann. tit. 21, §§ 301 and 385.

In a situation where the driver loads their vehicle, drives to a customers' home, but is unable to complete the delivery because the customer is not at home, the drivers has certainly done enough to earn their rate "per stop" and thus, a deduction for failure to complete the delivery is in violation of the Wage Act.  As the SJC held, the "plain and ordinary meaning" of "earn" is "[t]o acquire by labor, service or performance."  Awuah, 460 Mass. at 492, (quoting Black's Law Dictionary 584 (9th ed. 2009)).  Plaintiffs certainly earned their compensation because they provided the labor necessary for the delivery.  Accordingly, in Awuah, the SJC held that deductions made by Coverall from cleaning workers' pay when a client did not pay Coverall, were unlawful under the Wage Act. Awuah, 460 Mass. at 491-93 ("[i]f an employee's work is inadequate, Coverall is free to implement sanctions, including termination; Coverall is not free to withhold—much less recapture—the employee's earned wages").[8]

## E.    Plaintiffs Concede That Chantre Is Only A Proper Class Member for the Period in 2014 to 2015 When He Made Deliveries Full Time And Not Thereafter.

Border Transfer moves for summary judgment on the employment status of Humberto Chantre.  Defs.' Mem. at p. 13-20.  Border Transfer, however, misunderstands this case.  This Court has certified a class defined that includes only individuals who, in addition to entering into a Contract Carrier Agreement with Border Transfer, "personally provided delivery services for Border Transfer on a full-time basis in Massachusetts (at least 40 hours per week)."  Order at p. 33 (ECF No. 95).  By Border Transfer's and Chantre's own admission, Chantre has not personally performed deliveries for Border Transfer since sometime in early 2016.  See Decl. of Humberto Chantre at ¶ 5.  Indeed, a review of Border Transfer's daily logs shows that Chantre has not

---

[8]      Border Transfer, meanwhile, relies on a case where police officers sought wages they claim were owed during a furlough, where no labor was provided.  See Massachusetts State Police Commissioned Officers Ass'n v. Com., 462 Mass. 219, 226 (2012).  That is plainly not the case here, thus so-called "no bill deductions for deliveries that were attempted, but unfinished, are unlawful under the Wage Act.

personally provided delivery services since February 2016.  Pls.' Counter. SOF, ¶ 8.  Moreover,

Plaintiffs have consistently taken the position that absentee contractors who may actually operate

independent business and do not personally provide delivery services are not in the class and are not

part of this case.  See, e.g., Pls.' Reply in Support of Class Cert at p. 12 (ECF No. 86).  Thus,

Border Transfer's motion regarding Chantre is an exercise in futility.  Rather, as will be

demonstrated in Plaintiffs' own motion for summary judgment, Plaintiffs are employees of Border

Transfer for the times they actually provided delivery services themselves on a full-time basis.

While Chantre would be considered an employee from approximately July 2013 to February 2016,

when he personally provided delivery services an average of 4.5 days each week, see Pls.' Counter.

SOF, ¶ 8, Plaintiffs concede that he is outside the class, and not a part of this case, during the time

Border Transfer focuses on in its motion.

## IV.    CONCLUSION

For all these reasons, the Court should deny Border Transfer's motion for summary

judgment and grant Plaintiffs' motion for partial summary judgment on the issue of employment

status.

 DATED:  November 19, 2018                    Respectfully Submitted,
                                             MARCOS DaSILVA, et al., individually
                                             and on behalf of all others similarly
                                             situated,
                                             By their attorneys,


                                               /s/ Harold L. Lichten
                                             Harold L. Lichten BBO# 549689
                                             Benjamin J. Weber BBO# 673736
                                             LICHTEN & LISS-RIORDAN, P.C.
                                             729 Boylston Street, Suite 2000
                                             Boston, MA 02116
                                             (617) 994 5800
                                             hlichten@llrlaw.com
                                             bjweber@llrlaw.com

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on November 19, 2018, the foregoing document was filed electronically through the ECF System and is available for viewing and downloading from the ECF System, that it will be sent electronically to counsel of record identified as registered participants on the Notice of Electronic Filing, and that paper copies will be sent to those indicated as non-registered participants.


/s/ Harold L. Lichten
Attorney for Plaintiffs