# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARCOS DaSILVA and MATTEUS
FERREIRA, on behalf of themselves
and all others similarly situated,

               Plaintiffs,

v.

BORDER TRANSFER OF MA, INC.,
And PATRICK McCLUSKEY,

               Defendants.

Case No.: 1:16-cv-11205-PBS

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' __MOTION FOR PARTIAL SUMMARY JUDGMENT__

# TABLE OF CONTENTS

Page

I.    Introduction ............................................................................................................... 1

    A.    Burden of Proof and Standard of Review ........................................................ 2

II.   Statement of Facts ...................................................................................................... 2

III.  Argument .................................................................................................................... 3

    A.    Wage Act does not apply to motor-carrier owners .......................................... 3

        1.    Motor-carrier owners are not Wage Act "employees" ........................... 3

        2.    The motor-carrier owner's business entities, not BTMI or Pat McCluskey, are
              "employers" under the Wage Act ............................................................ 4

    B.    No basis exists for ignoring the motor carrier's corporate form ..................... 7

        1.    Plaintiffs provide no evidentiary basis to make classwide decision on
              legitimacy of motor carrier's corporate form ........................................ 7

        2.    Plaintiffs' public policy arguments for disregarding motor-carrier owner's
              business entities are misguided ............................................................... 9

        3.    Decisions, both in Massachusetts and other jurisdictions, consider corporate
              form in determination of employment relationship ............................... 9

    C.    Plaintiffs have not proffered an evidentiary basis for granting summary judgment on
       Prongs 1 and 3, or in turn eliminate Defendants' right to establish its affirmative defenses
       as to each class member ................................................................................. 11

        1.    Prong 1 .................................................................................................. 11

        2.    Prong 3 .................................................................................................. 16

    D.    Plaintiffs' new interpretation of Prong 3 requires an FAAAA preemption finding .......... 18

IV.   Conclusion ................................................................................................................ 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Amero v. Townsend Oil Co.*,
 2008 WL 5609064 (Mass. Super. Ct. Dec. 3, 2008) .................................................... 15

*Anderson v. Home Delivery America.com*,
 *2013* WL 6860745 (D. Mass. Dec. 30, 2013) ............................................................ 15

*Anderson v. Liberty Lobby, Inc.*,
 477 U.S. 242 (1986) ...................................................................................................... 2

*Athol Daily News v. Bd. of Review of the Div. of Emp't & Training*,
 786 N.E.2d 365 (Mass. 2003) .......................................................................... 16, 17, 18

*Ayala v. Antelope Valley Newspapers, Inc.*,
 327 P.3d 165 (2014) .................................................................................................... 16

*Bennett v. Dep't of Emp't Sec.*,
 530 N.E.2d 541 (Ill. App. Ct. 1988) ........................................................................... 16

*Big Daddy Drayage, Inc. v. New Jersey Dep't, of Lab. & Workforce Dev*,
 2016 WL 4432542 (N.J. Adm. Aug. 10, 2016) ..................................................... 16, 17

*Browning v. Ceva Freight, LLC*,
 885 F. Supp. 2d 590 (E.D.N.Y. 2012) ................................................................... 13, 16

*Carpetland U.S.A., Inc. v. Ill. Dep't. of Emp't Sec.*,
 776 N.E.2d 166 (Ill. 2002) .......................................................................................... 17

*Ceva Freight v. Emp't. Dep't*,
 379 P.3d 776 (Or. Ct. App. 2016) ............................................................................... 16

*Commonwealth v. Campbell*,
 616 N.E.2d 430 (Mass. 1993) ....................................................................................... 4

*Cook v. Estes Express Lines, Corp.*,
 2018 WL 1773742 (D. Mass. Apr. 12, 2018) ......................................................... 11, 17

*Cooney v. Compass Grp. Foodservice*,
 870 N.E.2d 668 (Mass. App. Ct. 2007) ..................................................................... 4, 5

*Coverall N.A. v. Comm'n*,
 857 N.E.2d 1083 (Mass. 2006) .................................................................................... 18

*Craig v. FedEx Ground*,
 335 P.3d 66 (Kan. 2014) .............................................................................................. 16

*DaSilva v. Border Transfer of MA, Inc.*,
 227 F. Supp. 3d 154 (D. Mass. 2017) ........................................................................... 2

*Debnam v. FedEx Home Delivery*,
 2013 WL 5434142 (D. Mass. Sept. 27, 2013) ............................................................. 11

*Derolf v. Risinger Bros. Transfer, Inc.*,
 259 F. Supp. 3d 876 (C.D. Ill. 2017) .......................................................................... 16

*DeSouza v. EGL Eagle Glob. Logistics, LP*,
  596 F. Supp. 2d 456 (D. Conn. 2009) ..................................................... 13

*Dial-A-Mattress Operating Corp.*,
  326 NLRB No. 75 (Aug. 27, 1998) .......................................................... 16

*Dixie Midwest Express, Inc.*,
  132 M.C.C. 794 (I.C.C. 1982) ................................................................. 14

*Driscoll v. Worchester Telegram & Gazette*,
  893 N.E.2d 1239 (Mass. App. Ct. 2008) ................................................ 16

*Echavarria v. Williams Sonoma, Inc.*,
  2016 WL 1047225 (D.N.J. Mar. 16, 2016) ............................................. 16

*FedEx Home Delivery v. Nat'l Labor Relations Bd.*,
  *849 F.3d 1123 (D.C. Cir. 2017)* .............................................................. 16

*George Hyman Const. Co. v. Gateman*,
  16 F. Supp. 2d 129 (D. Mass. 1998) ........................................................ 7

*Gray v. FedEx Ground, Inc.*,
  799 F.3d 995 (8th Cir. 2015) ................................................................... 12

*Gurry v. Cumberland Farms, Inc.*,
  550 N.E.2d 127 (Mass. 1990) ....................................................... 6, 10, 11

*Idaho Ambucare Ctr., Inc. v. United States*,
  57 F.3d 752 (9th Cir. 1995) ..................................................................... 10

*In re Asacol Antitrust*,
  *Litg.* decision. 907 F.3d 42 (1st Cir. 2018) .............................................. 8

*In re Spookyworld, Inc.*,
  346 F.3d 1 (1st Cir. 2003) ..................................................................... 4, 6

*In the Matter of the Application of Leaseway*,
  1988 WL 1618508 (Ohio P.U.C. Dec. 28, 1988) ................................... 19

*Indus. Claim Appeals Office v. Softrock Geological Servs., Inc.*,
  325 P.3d 560 (2014) ................................................................................ 18

*Kirby of Norwich v. Adm'r*,
  *176* A.3d 1180 (Conn. 2018) .................................................................. 17

*Krauss v. IRIS USA, Inc.*,
  2018 WL 2063839 (E.D. Pa. May 3, 2018) ............................................ 19

*Labor & Logistics Mgmt. v. Adm'r, Unemployment Comp. Act*,
  2012 WL 5205557 (Conn. Super. Ct. Oct. 3, 2012) ............................... 17

*Liberty Ins. Corp. v. Super Trucking Constr.*,
  2018 WL 1954727 (Ill. App. Ct. Apr. 23, 2018) .................................... 16

*Little v. USSC Grp., Inc.*,
  404 F. Supp. 2d 849 (E.D. Pa. 2005) ...................................................... 10

*Luxama v. Ironbound Express, Inc.*,
  2013 WL 3286081 (D.N.J. June 27, 2013) ............................................. 16

*Marlo v. UPS*,
   639 F.3d 942 (9th Cir. 2011) ................................................................................ 18

*Martins v. 3PD*,
   2013 WL 1320454 (D. Mass. Mar. 28, 2013)......................................................... 11

*Merchs. Home Delivery Serv., Inc. v. NLRB*,
   580 F.2d 966 (9th Cir. 1978) ................................................................................ 20

*Miss. Publ'g Corp. v. Murphree*,
   326 U.S. 438 (1946)................................................................................................ 8

*Mohamad v. Palestinian Auth.*,
   566 U.S. 449 (2012)................................................................................................ 4

*Molloy v. Mass. Mortg. Corp.*,
   1998 WL 15938 (Mass. Dist. Ct. Jan. 12, 1998) .................................................... 2

*My Bread Baking Co. v. Cumberland Farms, Inc.*,
   233 N.E.2d 748 (Mass. 1968) ............................................................................... 10

*Penn v. Va. Int'l Terminals*,
   819 F. Supp. 514 (E.D. Va. 1993) ......................................................................... 14

*Prozinski v. Northeast Real Estate Servs., LLC*,
   797 N.E.2d 415 (Mass. Ct. App. 2003) ........................................................ 3, 6, 11

*Q. D.-A. v. Ind. Dep't of Workforce Dev.*,
   96 N.E.3d 620 (Ind. Ct. App. 2018)...................................................................... 16

*Razak v. Uber Tech. Inc.*,
   2018 WL 1744467 (E.D. Pa. Apr. 11, 2018) ......................................................... 16

*Reyes v. XPO Last Mile, Inc.*,
   2016 WL 4063454 (E.D. Pa. July 29, 2016)........................................................... 10

*Rogier v. Chambers*,
   2016 WL 5890024 (Mass. Super. Ct. Sept. 1, 2016) ........................................ 4, 5, 6

*Rowe v. N.H. Motor Transp. Ass'n*,
   552 U.S. 364 (2008)............................................................................................... 20

*Ruggiero v. Am. United Life Ins. Co.*,
   137 F. Supp. 3d 104 (D. Mass. 2015) ...................................................... 12, 17, 18

*Saleem v. Corp. Transp. Grp.*,
   52 F. Supp. 3d 526 (S.D.N.Y. 2014)...................................................................... 16

*Scantland v. Jeffry Knight, Inc.*,
   721 F.3d 1308 (11th Cir. 2013) ............................................................................. 16

*Schwann v. FedEx Ground Package Sys, Inc.*,
   2017 WL 4169425 (D. Mass. Sept. 20, 2017) ................................................. 17, 18

*Schwann v. FedEx Ground Package Sys., Inc.*,
   813 F.3d 429 (1st Cir. 2016)................................................................................... 20

*Sebago v. Bos. Cab Dispatch, Inc.*,
   28 N.E.3d 1139 (Mass. 2015) ......................................................... 13, 16, 17, 18

*Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*,
    559 U.S. 393 (2010) .................................................................................................. 8
*Stellar Ins. Grp., Inc. v. Cent. Cos., LLC*,
    2006 WL 2862218 (W.D.N.C. Sept. 12, 2006) ............................................... 10
*Town Taxi of Cape Cod, Inc.*,
    862 N.E.2d 430 (Mass. App. Ct. 2007) .......................................................... 17
*Tvedt v. Farmers Ins. Grp. of Cos.*,
    91 P.3d 1 (Mont. 2004) .................................................................................... 10
*Tze-Kit Mui v. Mass. Port Auth.*,
    89 N.E.3d 460 (Mass. 2018) ............................................................................. 3
*United States v. Silk*,
    331 U.S. 704 (1947) ......................................................................................... 18
*W. Logistics, Inc. d/b/a Diligent Delivery Sys. v. Indus. Claim Appeals Office*,
    325 P.3d 550 (Colo. 2014) ............................................................................... 16
*W. Ports Transp., Inc. v. Emp't Sec. Dep't*,
    41 P.3d 510 (Wash. Ct. App. 2002) ................................................................ 16
*Weems v. CitiGroup, Inc.*,
    900 N.E.2d 89 (Mass. 2009) ............................................................................. 5
*White v. NFL*,
    *Players Ass'n*, 756 F.3d 585 (8th Cir. 2014) ................................................. 19
*Wilson-McCray v. Stokes*,
    2003 WL 22901569 (N.D. Ill. Dec. 9, 2003) .................................................. 14

## Statutes

15 U.S.C. § 681 ..................................................................................................... 9
Mass. Gen. Laws ch. 148, § 148B ................................................................. 4, 12
Mass. Gen. Laws ch. 149, § 148B ................................................................... 7, 8
Mass. Gen. Laws ch. 175, § 132a ...................................................................... 4

## Rules

Fed. R. Civ. P. 56 .................................................................................................. 2

## Regulations

13 C.F.R. § 108.100 ............................................................................................... 9
24 C.F.R. § 202.5 .................................................................................................... 9
56 Ill. Admin. Code § 2732.200(e) .................................................................... 17

## Other Authorities

*Federal Preemption in Motor Carrier Selection Cases Against Shippers and Brokers*,
39 Transp. L.J. 77 (2012)........................................................................................ 12

## I.        Introduction

Property-broker BTMI contracted with motor carriers to deliver and install products for BTMI's customer, Innovel. The products Innovel contracted with BTMI to broker were from retailers Sears, BJ'S Wholesale, Costco, and Amazon. Plaintiffs' Motion for Partial Summary Judgment asks the Court to conclude that the owners of these motor carriers—whose corporate entities provide this contract carrier service—are BTMI's employees under Massachusetts Wage Act Section 148B. ECF No. 122.

The owner of a corporate entity does not fall within the "employee" definition of Section 148B (Section III(A)(1)). And to the extent Section 148B has any bearing on the "employment" of the owners of those motor carriers, it would consider the motor carrier—the company that paid those individuals—the employer, not BTMI or Pat McCluskey (Section III(A)(2)). Plaintiffs' Motion offers no evidentiary basis to disregard those motor carrier's corporate forms with which BTMI contracted. (Section III(B)).

Even if Section 148B were applicable to Plaintiffs' claims, Plaintiffs have failed carry their burden of demonstrating the absence of material facts as to Prongs 1 and 3. Hyperbole regarding the "control" the Agreements imposed on the motor carriers who signed them has no bearing on whether BTMI imposed control on their owners and does not comport with the reality that motor carriers could among other things (1) accept or reject loads offered; (2) decide who would provide the services; (3) control and direct "the persons operating and/or loading the Equipment or otherwise engaged in such transportation services"; (4) exercise "discretion and judgment . . . in determining the manner and means of performing its obligations under the Agreement"; and (5) provide services to other companies (Section III(C)(1)(i)). The declarations submitted to the Court provide conflicting evidence with respect to BTMI's purported control over the individuals performing delivery services, and provide no basis on which to predict what the remaining motor-carrier owners who have not been deposed will say (Section III(C)(1)(ii)).

So it goes for Prong 3 that considers the totality of the circumstances to gauge whether an individual

is customarily engaged in an independent trade or business (Section III(C)(2)). Plaintiffs proffer no evidence—for the class or themselves—on Prong 3. They elect instead to advocate for the adoption of a Connecticut standard requiring BTMI to show motor carriers were "actively supplying the same kind of services to third persons" while contracting with BTMI, which Massachusetts has not adopted. Pls.' Mot. 11. Plaintiffs provide no authority to support this assertion nor an explanation for abandoning their prior endorsement for a totality of the circumstances standard for assessing Prong 3 when opposing FAAAA preemption. ECF No. 11, p. 9. Indeed, Plaintiffs' new assertion "has a significant impact on the services that [BTMI] provides to its customer[]" Innovel that in turn runs afoul of the FAAAA's preemptive scope (Section III(D)). *DaSilva v. Border Transfer of MA, Inc.*, 227 F. Supp. 3d 154, 160 (D. Mass. 2017).

### A.   Burden of Proof and Standard of Review

Summary judgment may be granted only if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. A "material fact" is a fact that might affect the outcome of a party's case after applying the relevant substantive law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986). "Whether an individual is an employee or an independent contractor is ordinarily a question of fact for the trial court." *Molloy v. Mass. Mortg. Corp.*, 1998 WL 15938, at *1 (Mass. Dist. Ct. Jan. 12, 1998). Plaintiffs must first establish each motor-carrier owner is "an individual" and that BTMI along with Pat McCluskey are "employers" "within the purview of" Section 148B. *Id.* If successful in doing so, the "burden of production [as to Section 148B shifts] to the defendants." *Id.* at *2. "Upon [defendants] introduction of evidence warranting a finding that the plaintiff was not an employee, the presumption disappear[s] or recede[s], and the burden shift[s] back to the plaintiff." *Id.* (internal quotations omitted).

### II.   Statement of Facts

Defendants rely on their previously filed Separate Statement of Undisputed Material Facts in

Support of Motion for Summary Judgment (ECF No. 109) ("SOF"); Response to Plaintiffs' Statement of Material Facts ("Defs.' Resp. SOF") along with their Counterstatement of Material Facts ("Defs.' Counter SOF") filed along with this Opposition.[1]

## III.   Argument

### A.   Wage Act does not apply to motor-carrier owners

#### 1.   *Motor-carrier owners are not Wage Act "employees"*

Plaintiffs' lone claim rests on purported violations of Wage Act Sections 148 and 150. Am. Compl. ¶¶ 26–27. Section 148 requires "[e]very person having employees in his service shall pay weekly or bi-weekly each such employee the wages earned by him." Section 150 gives "[a]n employee claiming to be aggrieved by a violation of" Section 148 a right to bring a lawsuit for recovery of the purportedly unpaid wages. Plaintiffs' Motion does not request a liability finding under Section 148 or damages under Section 150; rather, they ask the Court to hold the motor-carrier owners qualify as "employees" under both Sections.

For the definition of "employee" applicable to Sections 148 and 150, the Wage Act directs us to Section 148B. Mindful that Massachusetts courts construe the scope of the Wage Act narrowly,[2] the analysis pivots to Section 148B's language to determine if motor-carrier owners fall within the "employee" definition. *See, e.g.*, *Tze-Kit Mui v. Mass. Port Auth.*, 89 N.E.3d 460, 462 (Mass. 2018) (Wage Act application "is a question of statutory interpretation" that "begins with the plain language of the statute, which is the principal source of insight into legislative intent.").

Section 148B provides that "an individual performing any service, except as authorized under this chapter, shall be considered to be an employee" unless the evidence demonstrates:

> (1) the individual is free from control and direction in connection with the performance
> of the service, both under his contract for the performance of service and in fact; and

---

[1] "Defs.' Resp. SOF" and "Defs.' Counter SOF" are both contained in the document entitled *Defendants' Response to Plaintiffs' Statement of Material Facts and Counterstatement of Material Facts*.

[2] *Prozinski v. Northeast Real Estate Servs., LLC*, 797 N.E.2d 415, 419 (Mass. Ct. App. 2003).

(3) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

Mass. Gen. Laws ch. 148 § 148B. "Individual" is not defined in the Wage Act. "Absent a statutory definition, 'statutory language should be given effect consistent with its plain meaning.'" *Rogier v. Chambers*, 2016 WL 5890024, at *4 (Mass. Super. Ct. Sept. 1, 2016) (internal citation to *Cooney v. Compass Grp. Foodservice*, 870 N.E.2d 668, 672 (Mass. App. Ct. 2007)). "An ordinary meaning of 'individual' is 'human being,'" which does not encompass motor carrier businesses owned by class members. *Mohamad v. Palestinian Auth.*, 566 U.S. 449, 457 (2012); *Commonwealth v. Campbell*, 616 N.E.2d 430, 431 n. 3 (Mass. 1993) (rejecting attempt to define "individual" as including business entities); *see also In re Spookyworld, Inc.*, 346 F.3d 1, 6 (1st Cir. 2003) (interpreting undefined term "individual" in context of bankruptcy code provision to exclude corporations).

No question the Legislature could have included the motor carrier businesses within the coverage of "employees" under Section 148B. The Legislature did just that—for example, when including corporations in the "employee" definition of other laws. *E.g.*, Mass. Gen. Laws ch. 175, § 132a. Or the Legislature could have permitted business owners to sue in their individual capacity without first demonstrating the basis for ignoring their business's corporate form. Section 148's extension of employer liability to "[t]he president and treasurer of a corporation" provides an example for a legislative directive to disregard corporate veils without resorting to the judicially created test for doing so. Yet no such language or directive exists in Section 148B.

In the absence of legislative intent to allow business owners to stand in the shoes of the corporation they own so that they could qualify as an "employee," a business owner who wishes to do so must establish an evidentiary basis for discarding their corporate election.

> 2. *The motor-carrier owner's business entities, not BTMI or Pat McCluskey, are "employers" under the Wage Act*

4

The Wage Act's use of the term "employer" without special definition confirms the Legislature did not intend to include owners of corporations within the scope of individuals covered by Section 148B. Again, when a statute does not define a term, one must look to its plain meaning; "the plain and common understanding of 'employer' is the entity with which an employee has an express or implied contract to work for compensation and from which he receives pay." *Rogier v. Chambers*, 2016 WL 5890024, at *4 (Mass. Dist. Ct. Sept. 1, 2018); *see also Cooney v. Compass Grp. Foodservice*, 870 N.E.2d 688, 672 (Mass. App. Ct. 2007) (absent a definition "[s]tatutory language should be given effect consistent with its plain meaning").

Given the Wage Act's purpose is "to prevent the unreasonable detention of earned wages" by employers (*Weems v. CitiGroup, Inc.*, 900 N.E.2d 89, 92 (Mass. 2009)) the focus on the payment of wages in defining "employer" makes good sense. Doing so here demonstrates two unassailable facts. First, there were no agreements, express or implied, between BTMI and the motor carrier owners to pay those individuals for the services the motor carriers performed. Defs.' Counter SOF ¶ 1. Second, it is the motor carrier that agreed to and in fact paid the individuals who performed delivery services. Defs.' Counter SOF ¶ 2. It is only the motor carriers, not BTMI, that had an opportunity to "detain earned wages" from "employees" who earned them. *See* Defs.' Counter SOF ¶ 9.

The court in *Rogier* addressed an attempt to pursue claims against entities with which they had no employment agreement. Confronted with allegations by former car salespersons that multiple car dealerships along with their executives were liable for Wage Act violations, *Rogier* analyzed "a pure question of law: Does Massachusetts law recognize that an employee may sue a corporation other than his or her direct employer for violation of employment laws?" *Rogier v. Chambers*, 2016 WL 5890024, at *2 (Dist. Ct. Mass. Sept. 1, 2016). The court concluded that the answer is no. In reaching this conclusion, the court noted that text of other laws proves that the Legislature knows how to expand the

reach of "employer" beyond its plain meaning when it intends to do so. *Rogier*, 2016 WL 5890024, at *3–4. *Rogier* went on to reason that a joint employment situation under the Wage Act could still exist through an application of "common-law principles of the employer-employee relationship," but (as is the case here) no allegations of such a relationship were pled. *Id.* at *4–5.

The same reasoning demonstrates that Pat McCluskey is not Plaintiffs' "employer"; like BTMI, he had no agreement to and did not pay any of the individuals who performed delivery services. *Rogier*, 2016 WL 5890024, at *6 ("The claims against Chambers, individually, may stand only with respect to his role as president and treasurer of the corporations that were direct employers of plaintiffs."). This conclusion comports with the dictate to interpret the Wage Act narrowly[3] while respecting motor carriers' corporate forms. *Gurry v. Cumberland Farms, Inc.*, 550 N.E.2d 127, 134 (Mass. 1990) ("The rule in the Commonwealth is that corporations are to be regarded as separate entities where there is no compelling reason of equity "to look beyond the corporate form for the purpose of defeating fraud or wrong, or for remedying of injuries." . . . "Similarly, most courts refuse to allow corporations to assume the benefits of the corporate form and then disavow that form when it is to their and their stockholders' advantage.").

And this conclusion makes pragmatic sense given the employment presumption that attaches once Section 148B applies. Requiring a corporate officer to disprove his company employed another corporate entity's workers on allegations alone cannot be the law. To put a fine point on it, BTMI has paid out $13.8 million dollars to motor carriers in Massachusetts between June 2013 and June 2018. One company, Martins Trucking LLC, received over $1.6 million dollars alone between April 2014 and June 2018; another company, Chantre Delivery LLC, took in $857,453 between June 2013 and December 2017. These payments are independent of the additional revenue the motor carriers earned

---

[3] *Prozinski*, 797 N.E.2d at 419.

servicing other companies. SOF ¶¶ 30–31; Defs.' Resp. SOF ¶ 79. Plaintiffs' Motion cites no authority

or rationale that would permit the owner of a company to sue a separate company's officers for

"wages," without an evidentiary basis to establish an agreement with those officers to be paid wages.

### B.   No basis exists for ignoring the motor carrier's corporate form

#### 1.   *Plaintiffs provide no evidentiary basis to make classwide decision on legitimacy of motor carrier's corporate form*

Various motor-carrier owners testified that their companies (1) provide services to multiple

businesses; (2) own and operate multiple trucks; (3) make a profit off the labor of their employees; (4)

negotiate rates and turn down work freely; (5) set schedules for who works on a given day; and (6)

formed business entities for reasons ranging from taxes, personal liability protection, wanting to

contract with BTMI, or no stated reason at all. Defs.' Counter SOF ¶ 9.

Ignoring this evidence entirely, Plaintiffs cite to their declarations and those from three other

motor-carrier owners referencing their respective experiences in an attempt to disregard the corporate

forms for all of the motor carrier that contracted with BTMI.[4] Whether to "penetrate the corporate

form" traditionally requires analyzing an amalgamation of factors along with equitable considerations.

*George Hyman Const. Co. v. Gateman*, 16 F. Supp. 2d 129, 149–50 (D. Mass. 1998). The

Massachusetts' Attorney General has suggested a modified approach to assessing the legitimacy of the

corporate form in the Wage Act context that considers "among other factors, whether: the services of

the alleged independent contractor are not actually available to entities beyond the contracting entity,

even if they purport to be so; whether the business of the contracting entity is no different than the

services performed by the alleged independent contractor; or the alleged independent contractor is only

a business requested or required to be so by the contracting entity." Advisory from the Attorney

General's Fair Labor Division on Mass. Gen. Laws ch. 149, § 148B, 2008/1 ("Advisory 2008/1") at 5.

Whether assessed in the context of the more traditional veil piercing factors or the equally holistic

assessment identified by the Massachusetts' Attorney General, no motor carrier could disregard its

corporate existence without first demonstrating a basis to do so under one of these tests. Yet none of

---

[4] Declarations from the three other motor-carrier owners are the subject of Defendants' pending Rule 56(d) motion (ECF 122-00).

the declarations provide a basis on which to ignore the corporate form of their own businesses, much less all motor carriers in the class.

The fact that "willing plaintiffs" choose to have their claims resolved in a class does not "change plaintiffs' separate entitlements to relief nor abridge defendants' rights . . . ." *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 408 (2010). Whatever an individual would have to prove in his own separate case, he must still prove in a class action because Rule 23 "leaves the parties' legal rights and duties intact and the rules of decision unchanged." *Id.* Indeed, the Supreme Court noted that any alternative interpretation of the rule would render it invalid.

> If [Rule 23] governs only "the manner and the means" by which the litigants' rights are "enforced," it is valid; if it alters "the rules of decision by which [the] court will adjudicate [those] rights," it is not.

*Id.* at 407 (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 445 (1946)). The First Circuit reiterated this "core principle that class actions are the aggregation of individual claims, and do not create a class entity or re-apportion substantive claims" in its October 2018 decision, *In re Asacol Antitrust Litg.,* 907 F.3d 42, 56 (1st Cir. 2018).

Were this a single plaintiff case, there is no question but that the plaintiff would have to (1) proffer a legal and evidentiary basis for disregarding his business's corporate form, which a defendant would have the opportunity to challenge through cross-examination and its own witnesses; and (2) if the individual were subsequently deemed an "employee" and the defendant an "employer" under the Wage Act, provide the defendant with an opportunity to establish Prongs 1 and 3 of Section 148B with evidence specific to that individual.

Rule 23 neither reduces any motor-carrier owner's burden to prove these elements nor deprives Defendants of the right to challenge those elements. The Rules Enabling Act forbids anything less. *In re Asacol Antitrust Litig.*, 907 F.3d at 53 ("class certification provides no occasion for jettisoning the rules of evidence and procedure, the Seventh Amendment, or the dictate of the Rules Enabling Act.").

     2.   *Plaintiffs' public policy arguments for disregarding motor-carrier owner's business entities are misguided*

Plaintiffs try to circumvent the Wage Act language with their narrative that BTMI "require[s] all of its drivers to incorporate" (Pls.' Mot. 10), and in turn the motor carrier's corporate form should be ignored. The record does not support Plaintiffs' assertion. Defs.' Counter SOF ¶ 7.

The fact that *some* motor carriers operated as sole proprietorships prior to contracting with BTMI does not alter the inquiry. Plaintiffs cite no evidence that BTMI *forced* any Plaintiff to do anything. Each had the choice to seek property from other brokers with different requirements, just as BTMI had the choice to identify requirements for the motor carriers with which it chose to contract. Plaintiffs cite no authority that would render the election of a corporate form a "sham" simply because an individual formed the company in order to contract with another business.

BTMI is not alone in contracting only with motor carriers that operate business entities. The federal government also contracts with *only* business entities in a variety of contexts. 15 U.S.C. § 681 ("A small business investment company shall be an incorporated body, a limited liability company, or a limited partnership . . . .").[5] Plaintiffs cite no authority that would render the election of a corporate form a "sham" simply because it was a requirement to enter into a contract.

     3.   *Decisions, both in Massachusetts and other jurisdictions, consider corporate form in determination of employment relationship*

Despite Plaintiffs' platitude that "universal" disregard for the corporate form in wage law cases exists, the majority of courts do not differentiate the import of the issue based on the type of claim asserted. Courts elect instead to respect the corporate form and agreement of the parties and "pierce the corporate veil only 'in rare particular situations in order to prevent gross inequity.'" *Gurry v.*

---

[5] *See also* 13 C.F.R. § 108.100 (Small Business Administration requirement that participant in program are "organized as a corporation ('Corporate NMVC Company'), a limited partnership ('Partnership NMVC Company'), or a limited liability company ('LLC NMVC Company')"); 24 C.F.R. § 202.5 (requiring specific business forms to "be approved for participation in" mortgage loan insurance program).

*Cumberland Farms, Inc.*, 550 N.E.2d 127, 134 (Mass. 1990) (citing *My Bread Baking Co. v. Cumberland Farms, Inc.*, 233 N.E.2d 748 (Mass. 1968)).

In *Little v. USSC Grp., Inc.*, 404 F. Supp. 2d 849 (E.D. Pa. 2005) for example, plaintiff Little sought recovery under Pennsylvania's Wage Payment Collection Law from defendant USSC, a company that contracted with Little's company, LTS. USSC denied employing Little and contended its only payment obligations were to LTS. Little claimed "that the sole reason he created LTS was" to contract with USSC, "he and LTS were one and the same," and USSC "always treated [him] as an employee." *Id.* at 853. Siding with USSC, the court held that "[b]y creating a corporate entity to accommodate USSC's request, Little also created a corporate entity that contracted with USSC. Little cannot now ignore that corporate entity's existence. Little is not a party to the Agreement between LTS and USSC. He, therefore, cannot claim a violation of the Pennsylvania WPCL." *Id.* at 854.

Plaintiffs in *Reyes v. XPO Last Mile, Inc.* were also blunted in their attempts to disregard their corporate entities for purposes of recovering wages: "the plaintiffs that formed corporations, limited liability companies, and partnerships which contracted with XPO and paid the individuals through the corporate entity cannot ignore that corporate entity's existence and assert a claim directly against XPO." 2016 WL 4063454, at *3 (E.D. Pa. July 29, 2016). Other decisions are in accord.[6]

The *Martins v. 3PD*, 2013 WL 1320454 (D. Mass. Mar. 28, 2013) decision Plaintiffs' cite to the contrary (1) gives short shrift to the analysis of the Legislature's intended scope of the Wage Act's "employee" term, and assumes with no analysis the defendant qualifies as an "employer"; (2) veers

---

[6] *E.g.*, *Stellar Ins. Grp., Inc. v. Cent. Cos., LLC*, 2006 WL 2862218, at *8 (W.D.N.C. Sept. 12, 2006) (agreeing with argument that "a 'corporation' cannot be an 'employee' or wage earner" under North Carolina's Wage and Hour Act); *Tvedt v. Farmers Ins. Grp. of Cos.*, 91 P.3d 1, 11 (Mont. 2004) (denying request for reimbursement of business expenses and stating "[i]t is simply axiomatic that one corporation cannot be an employee of another."); *Idaho Ambucare Ctr., Inc. v. United States*, 57 F.3d 752, 754–55 (9th Cir. 1995) (concluding payments by out-patient surgery facility to doctor's professional association were not wages subject to FICA and FUTA because doctor "was an employee of [his professional association]"); *Dial-A-Mattress Operating Corp.*, 326 NLRB No. 75, *12 (1998) ("The owner-operators have a separate identify from Dial that suggests independent contractor status. They have formed their own trucking companies . . . . Many have state business certificates for their companies, while several of them function in the corporate form.").

away from the instruction to construe the Wage Act narrowly;[7] and (3) gives no credence to the general rule that barring exceptional circumstances corporate forms should not be disregarded.[8] Perhaps the *Martins* decision would have turned out differently too if, as is the case here, Mr. Martins, the lead plaintiff in *Martins* and a class member here, had signed multiple declarations attesting to (1) the formation of his business for reasons other than BTMI's requirement; (2) owning six trucks; (3) hiring at his own discretion drivers/helpers to operate those vehicles; and (4) dictating the pay and days of work for those drivers/helpers along with himself. Defs.' Counter SOF, ¶ 3.

More recent Massachusetts decisions in *Cook v. Estes Express Lines, Corp.*, 2018 WL 1773742 (D. Mass. Apr. 12, 2018) and *Debnam v. FedEx Home Delivery*, 2013 WL 5434142 (D. Mass. Sept. 27, 2013) have recognized by implication the shortcomings in *Martins'* reasoning. Both cases granted the defendants summary judgment motion on the plaintiff's employment status and found the business entity formation relevant to that determination. Nothing in the remaining cases Plaintiffs cite on this score undermine these decisions or the logic in *Little* or *Reyes*, all of which are consistent with Defendants' position—corporate form does not provide an elixir to wage law liability, but it likewise may not be expediently discarded without a recognized basis for doing so.

### C. Plaintiffs have not proffered an evidentiary basis for granting summary judgment on Prongs 1 and 3, or in turn eliminate Defendants' right to establish its affirmative defenses as to each class member

#### 1. Prong 1

Prong 1 requires that an employer prove "the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact." Mass. Gen. Laws ch. 148, § 148B. Under the terms of the Agreement as explained in Defendants' Summary Judgment Motion (ECF No. 111), motor carriers retained absolute latitude,

---

[7] *Prozinski,* 797 N.E.2d at 419 ("We have construed the wage act narrowly.").
[8] *Gurry v. Cumberland Farms, Inc.*, 550 N.E.2d 127, 134 (Mass. 1990).

within the confines of federal law, to run their business as they saw fit. SOF ¶¶ 28, 30–33, 35–36 (ECF No. 109).[9]

By signing the Agreement, motor carriers acknowledged a non-employment relationship with BTMI existed, and both parties recognized the motor carrier's entitlement to "exercise the discretion and judgment of an independent contractor in determining the manner and means of performing its obligations under [the] Agreement. . . ." SOF ¶ 36. Different versions of the Agreement exist, but all are nonexclusive. Under the various Agreements, motor carriers can (1) accept or reject loads offered; (2) decide who will perform the services under the Agreement; (3) control and direct "the persons operating and/or loading the Equipment or otherwise engaged in such transportation services"; (4) exercise "direction and judgment . . . in determining the manner and means of performing its obligations under the Agreement"; and (5) provide services to other companies. Defs.' Counter SOF ¶ 5. "This all indicates Plaintiffs were not employees." *Derolf v. Risinger Bros. Transfer, Inc.*, 259 F. Supp. 3d 876, 880 (C.D. Ill. 2017) (finding contract terms that largely mirror those here were indicative of independent contractor status); *Gray v. FedEx Ground, Inc.*, 799 F.3d 995, 1000 (8th Cir. 2015) (overturning district court summary judgment order based in part on agreement being indicative of independent contractor relationship); *see also Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 113-14 (D. Mass. 2015) (contract leaving "open to [plaintiff's] discretion" both how to run own business and "how the requisite tasks are to be performed" indicative of independent contractor status).

Plaintiffs attempt to distract the Court from this reality by unsupported hyperbole that the Agreement contains "overwhelming evidence that [BTMI] exhibits substantial control." Pls.' Mot. 15.The "uniform requirement" emanates from Innovel's dictate that any motor carrier delivery team

---

[9] Such minimum qualification standards for motor carriers that brokers contract with are standard in the industry given rampant negligent hiring claims brought against brokers despite such claims ostensibly being FAAAA preempted. *E.g.*, Robert D. Moseley, Jr. & C. Fredric Marcinak, *Federal Preemption in Motor Carrier Selection Cases Against Shippers and Brokers*, 39 Transp. L.J. 77 (2012).

"appear neat, clean and professional in any Sears store and on any delivery route." Defs.' Resp. SOF No. 18 (citing BTMI agreement with Innovel). None of the items reference BTMI's name anywhere, and nothing before the Court suggests the requirement impinged on any motor carrier's control over its operations. *DeSouza v. EGL Eagle Glob. Logistics, LP*, 596 F. Supp. 2d 456, 464–65 (D. Conn. 2009) (uniform requirements are "ancillary to [a contractor's] independent driving," and do not evidence the type of control that is inconsistent with independent contractor status).[10]

The assertion that "Plaintiffs had to display [Innovel] logos if requested" ignores the prohibition on BTMI requiring motor carriers to paint or placard their trucks in a way that adversely affects their ability to serve other customers. Defs.' Resp. SOF ¶ 49.

So it goes with the argument that the Agreement requires performance of deliveries in the manner required by BTMI and Innovel, including within time windows for each delivery as designated on their manifests. Defs.' Resp. SOF ¶ 51. The absurdity of delivery time windows dictated by the consumer being considered indicative of BTMI controlling the motor carrier's operation was recognized in *Penn v. Va. Int'l Terminals*: "If a shipper requested, say, a parcel delivery service, to pick up a package for delivery across the country the next day, before a certain time, it could not be seriously argued that the delivery service became the employee of the shipper." 819 F. Supp. 514, 524–25 (E.D. Va. 1993); *Dixie Midwest Express, Inc.*, 132 M.C.C. 794, 816 (I.C.C. 1982) (determining that licensed property broker can be considered a shipper for purposes of contracting with contract carrier).[11] The requirement of deliveries when promised to a consumer is no different here.

---

[10] *See also Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 607 (E.D.N.Y. 2012) ("As for the final pieces of evidence—namely, that the Plaintiffs were required to wear uniforms; put logos on their vehicles; remain in frequent contact with the Defendants; and attend monthly meetings—these are not dispositive and do not weigh against a finding of independent contractor status as a matter of law.").

[11] *See also Wilson-McCray v. Stokes*, 2003 WL 22901569, at *6 (N.D. Ill. Dec. 9, 2003) (requirements that certain shipments be completed within 24 hours and that drivers report accidents to shipper meant only that shipper "had an interest in making sure that its customers received their goods in a timely manner; and the fact that it monitored this process . . . no more creates any agency relationship than does the designation of overnight delivery on a Federal Express package").

Plaintiffs also make statements that are unsupported by evidence including that (1) BTMI cancels contracts "for failing to perform deliveries pursuant to BTMI's instruction" and (2) motor-carrier owners were required to attend "daily standup meetings," which in practice was not the case and were often led by Innovel. Defs.' Resp. SOF ¶ 35. Still other assertions are directly contradicted by the record, such as Plaintiffs Statement of Fact that BTMI "routinely prohibits contractors from using secondary drivers or helpers that they want to use to make Sears deliveries." Pls.' SOF ¶ 21; Pls.' Mot. 15. As support for this proposition, Plaintiffs rely on the deposition of Rogerio Matos who testified he was not aware of BTMI refusing to allow any motor carrier's preferred helper to work. Matos Dep. 55:4-22. As for drivers, Matos testified:

> Q.  I guess as far as you know, has Border Transfer told a contractor that they could not use a secondary driver if they wanted to use?
> A.  Yes, I do remember one.
> Q.  And why was that?
> A.  Because he got caught stealing.
> Q.  That's frowned upon. Just kidding. Has Border Transfer, as far as you know, told a contractor that they couldn't use a secondary driver that they were proposing to use before they were actually doing any work?
> A.  Before? No.

Matos Dep. 54:13-24. Plaintiffs cannot eliminate this evidence or its import based on conflicting evidence in Zuniga's Declaration—who BTMI has not permitted to cross-examine by Plaintiffs and was never identified as a witness—or Ferriera's anecdotal testimony.

That motor carrier owners "do not have input on how much they are paid per stop" also finds no support in the evidence Plaintiffs cite and is contradicted by testimony to the contrary. Defs.' Resp. SOF ¶¶ 24, 104. And the argument that motor carriers have no say "in what customers pay for deliveries" (Pls.' Mot. 15) has no relevance to the actual control inquiry (and if "customers" is referring to the amount consumers pay for the delivery, BTMI does not have any say in that matter either).

Plaintiffs cannot gloss over these issues with platitudes that "the prevalence of companies" misclassifying "workers [and] particularly delivery drivers [has led] to an abundance of court decisions

holding that 'contractors' like Plaintiffs" are employees. Pls.' Mot. 7. The fact that other courts rendered decisions based on different facts does nothing to alter the record in this case.

A cursory read of Plaintiffs' cases demonstrates their inapplicability. Defendant in the *Anderson v. Home Delivery America.com* case "did not contest the relevant facts" and accordingly no analysis of Prong 1, 2, or 3 exists in the opinion. 2013 WL 6860745 (D. Mass. Dec. 30, 2013). *Amero v. Townsend Oil Co.* made an employment determination under Prong 2 (inapplicable here) and Prong 3 based on the plaintiff not providing "fuel oil delivery services to anyone independent of [the defendant], nor could he have given the non-competition agreement [defendant] required him to sign." 2008 WL 5609064, at *3 (Mass. Super. Ct. Dec. 3, 2008). No such noncompete exists here, and BTMI has proffered evidence that motor carriers it contracted with did provide delivery services to other companies. Defs.' Counter SOF ¶¶ 6, 9; Defs.' Resp. SOF ¶ 79.

Indeed, as the parentheticals set forth below demonstrate, it is striking how distinguishable Plaintiffs' authority is, whether because of the different state laws under which the decisions were issued, the lower threshold for upholding an administrative agency decision, or distinct factual variations.[12] Perhaps most importantly, these decisions stand in stark contrast to numerous decisions refuting the contention that something is inherently wrong with using independent contractors in the

---

[12] *Driscoll v. Worcester Telegram & Gazette*, 893 N.E.2d 1239, 1243 (Mass. App. Ct. 2008) (decision in unemployment insurance context finding employment existed, because *inter alia* newspaper delivery company "manager directly supervised the motor carriers and retained authority to go on the route" to audit performance); *Ayala v. Antelope Valley Newspapers, Inc.*, 327 P.3d 165, 171 (2014) (California decision involving newspaper delivery persons that applied right to control analysis inapplicable here); *Bennett v. Dep't of Emp't Sec.*, 530 N.E.2d 541, 797 (Ill. App. Ct. 1988) (upheld Illinois agency decision on employment status after concluding it was not "contrary to the manifest weight of the evidence"); *Craig v. FedEx Ground*, 335 P.3d 66 (Kan. 2014) (applying Kansas law and right to control test inapplicable here); *Echavarria v. Williams Sonoma, Inc.*, 2016 WL 1047225, at *7 (D.N.J. Mar. 16, 2016) (granting summary judgment for retailer and concluding material facts existed on employment status with respect to both independent contractors and second drivers/helpers of a motor carrier under New Jersey law); *W. Ports Transp., Inc. v. Emp't Sec. Dep't*, 41 P.3d 510, 517 (Wash. Ct. App. 2002) (finding that motor carrier employed owner-operator); *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1316 (11th Cir. 2013) (distinct factual variations including evidence of training, site checks of plaintiffs' work, plaintiff had to request time off, the ability to hire others to "hire and manage others was illusory", and they cold not "negotiate the prices for jobs."); *Hargrove v. Sleepy's* (ECF No. 122-3) (numerous facts that are nonexistent here, including (1) requirement to maintain Sleepy's logo on the truck; (2) uniforms with Sleepy's name; (3) extensive training, including a training manual; (4) "Sleepy's conducts field audits and inspects truck for compliance with Sleepy's policies"; (5) "subject to discipline" "for not following" one of Sleepy's rules; and (6) being given a "specific route to follow.").

transportation industry or that reclassification is always the result when the issue gets adjudicated.[13]

### 2. Prong 3

Prong 3 of Section 148B asks whether the worker is customarily engaged in an independently established trade, occupation, profession, or business. The critical inquiry under this prong is whether "the worker is capable of performing the service to anyone wishing to avail themselves of the services or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services."[14] Courts have not settled on the Prong 3 factors to analyze, although a consensus has emerged that an assessment of the totality of the circumstances focused on "entrepreneurial opportunity" is the inquiry's touchstone. *Sebago v. Bos. Cab Dispatch*, 28 N.E.3d 1139, 1153 (Mass. 2015) (citing with approval language from *Athol Daily News*, 786 N.E.2d 365 (Mass. 2003) and *Town Taxi of Cape Cod, Inc.*, 862 N.E.2d 430 (Mass. App. Ct. 2007) that both focused on entrepreneurial activity).[15]

Citing primarily Connecticut, New Jersey, and Illinois decisions, Plaintiffs contend that to satisfy Prong 3, BTMI must demonstrate the motor carriers were "actively supplying the same kind of services to third persons" at the time the motor carrier contracted with BTMI. Pls.' Mot. 11 (citation to *Labor*

---

[13] *Q. D.-A. v. Ind. Dep't of Workforce Dev.*, 96 N.E.3d 620 (Ind. Ct. App. 2018); *Liberty Ins. Corp. v. Super Trucking Constr.*, 2018 WL 1954727 (Ill. App. Ct. Apr. 23, 2018) (unpublished); *FedEx Home Delivery v. Nat'l Labor Relations Bd.*, 849 F.3d 1123 (D.C. Cir. 2017); *Derolf v. Risinger Bros. Transfer*, 259 F. Supp. 3d 876 (C.D. Ill. 2017); *Ceva Freight v. Emp't Dep't*, 379 P.3d 776 (Or. Ct. App. 2016); *Razak v. Uber Tech. Inc.*, 2018 WL 1744467 (E.D. Pa. Apr. 11, 2018); *Saleem v. Corp. Transp. Grp.*, 52 F. Supp. 3d 526, 539 (S.D.N.Y. 2014), *aff'd* 854 F.3d 131 (2d Cir. 2017); *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 602 (E.D.N.Y. 2012); *Luxama v. Ironbound Express, Inc.*, 2013 WL 3286081 (D.N.J. June 27, 2013); *W. Logistics, Inc. d/b/a Diligent Delivery Sys. v. Indus. Claim Appeals Office*, 325 P.3d 550 (Colo. 2014); *Big Daddy Drayage, Inc. v. New Jersey Dep't, of Lab. & Workforce Dev*, 2016 WL 4432542 (N.J. Adm. Aug. 10, 2016); *In re Marwa*, Issue ID: 0008 9543 96-01, Hearings Dep't., Mass. Department of Unempl. Assist. (June 11, 2015) (attached as Ex. A); *Dial-A-Mattress Operating Corp.*, 326 NLRB No. 75 (Aug. 27, 1998).

[14] *Sebago v. Bos. Cab Dispatch*, 28 N.E.3d 1139, 1153 (Mass. 2015) (quoting *Athol Daily News v. Bd. of Review of the Div. of Emp't & Training*, 786 N.E.2d 365, 373 (Mass. 2003)).

[15] *See also Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 124 (D. Mass. 2015) (concluding in context of Prong 3 that "Ruggiero was 'an entrepreneur operating an independently established business'"); *Cook*, 2018 WL 1773742, at *2 (stating generally in truck driver independent contractor determination that "In *Debnam*, the court concluded that a FedEx driver's extensive and entrepreneurial activities precluded the application of section 148B."). *But see Schwann v. FedEx Ground Package Sys, Inc.*, 2017 WL 4169425, at *5–6 (D. Mass. Sept. 20, 2017) (recognizing decisions that assess entrepreneurial opportunity but holding such opportunity is not dispositive in Prong 3 analysis).

*& Logistics Mgmt. v. Adm'r, Unemployment Comp. Act*, 2012 WL 5205557, at \*6 (Conn. Super. Ct. Oct. 3, 2012)). Neither the Connecticut, New Jersey or Illinois cases cited support this interpretation of Massachusetts law. *Kirby of Norwich v. Adm'r.*, 176 A.3d 1180, 1191 (Conn. 2018) (recognizing that "several of our sister states [] support the proposition that [Prong 3] is satisfied if the putative employee is *free* to engage in an independently established occupation, even if the putative employee does not actually do so" and proceeding to cite Massachusetts and New Jersey decisions); *Carpetland U.S.A., Inc. v. Ill. Dep't. of Emp't Sec.*, 776 N.E.2d 166, 190 (Ill. 2002) (noting Prong 3 analyzed whether individual "has a proprietary interest in the business which he can sell, give away or operate without hinderance from any other party," an assessment guided by thirteen factors found in 56 Ill. Admin. Code § 2732.200(e)); *Big Daddy Drayage, Inc. v. New Jersey Dep't, of Lab. & Workforce Dev.*, 2016 WL 4432542 (N.J. Adm. Aug. 10, 2016) (finding single truck owner-operators were independent contractors despite "fact some of the drivers drove exclusively for" motor carrier given totality of the circumstances that demonstrated "[t[hese driver-owners are small businessman") (last quote citing *United States v. Silk*, 331 U.S. 704, 719 (1947)).

The Massachusetts decisions on which Plaintiffs rely fare no better. *Coverall N.A. v. Comm'n*, involved an unemployment insurance administrative appeal that reasoned in the context of Prong 3 the court can consider whether a worker is "capable of performing the service to anyone wishing to avail themselves of the services," but the court may also consider whether "the nature of the business compels the worker to depend on a single employer for the continuation of the services." 857 N.E.2d 1083, 1087-88 (Mass. 2006) (internal quotations omitted). *Coverall* let the agency decision of employment stand after concluding "substantial evidence" supported the decision, a standard of review that is "considerably less stringent than the summary judgment standard that requires this Court to draw all inferences in favor of [the non-moving party] and make its ruling as a matter of law on a

record of undisputed material facts." *Schwann*, 2017 WL 4169425, at *7. *Coverall* does not undermine the entrepreneurial opportunity focused assessment of the circumstances surrounding each motor carriers relationship with BTMI that drives the Prong 3 analysis here. *Ruggiero v. Am. United Life Ins. Co.*, 137 F. Supp. 3d 104, 123 (D. Mass. 2015).[16] And on that score, Plaintiffs' proffer nothing.

While Defendants have the burden to prove the independent status of an individual if the Wage Act is deemed to apply, it is Plaintiffs' burden to show misclassification occurred on a class basis. *Marlo v. UPS*, 639 F.3d 942, 947 (9th Cir. 2011) (Plaintiff maintains burden to demonstrate liability on a class basis). The court can safely conclude that by failing to proffer any evidence applicable to class members and ignoring the considerations assessed under Prong 3, Plaintiffs have failed to meet their burden. *See also White v. NFL Players Ass'n*, 756 F.3d 585, 594 (8th Cir. 2014) (recognizing "the burden of showing that class litigation is appropriate generally remains on the plaintiff at all times during litigation" and proceeding to emphasize that "so important are the Rule 23 class prerequisites that courts often decertify classes sua sponte, even at the appellate level, after finding that class litigation is no longer appropriate or that the class has become obsolete.").

### D. Plaintiffs' new interpretation of Prong 3 requires an FAAAA preemption finding

Plaintiffs previously framed the Prong 3 analysis in a much less restrictive way to evade an FAAAA preemption finding. Pls.' Opp'n Mot. to Dismiss 9 (ECF No. 11) ("The analysis of a worker's 'dependence' on the putative employer under the economic realities test is synonymous with the consideration of a worker's economic dependence under Prong 3 of the Massachusetts 'ABC' test.").

---

[16] *Sebago v. Bos. Cab Dispatch*, 28 N.E. 3d 1139, 1153 (Mass. 2015); *Athol Daily News v. Bd. of Review of the Div. of Emp't & Training*, 786 N.E.2d 365, 373 (Mass. 2003) ("The better approach to the evaluation required by [Prong 3] is to consider whether the service in question could be viewed as an independent trade or business because the worker is capable of performing the service to anyone wishing to avail themselves of the service"); *see also Indus. Claim Appeals Office v. Softrock Geological Servs., Inc.*, 325 P.3d 560, 565 (2014) (rejecting, under Colorado law, interpretation of Prong 3 that Plaintiffs advocate here because such an approach "subject[s] an employer unfairly to the decisions of the putative employee and an unpredictable hindsight review.").

Plaintiffs now claim that Prong 3 (1) requires "a finding that delivery drivers who had no other 'clientele' at the time they worked for the defendant, were not operating independent businesses" (Pls.' Mot. 12) and (2) that BTMI cannot satisfy Prong 3 because Plaintiffs could not perform "delivery services for any other entity while they made deliveries for" BTMI (Pls.' Mot. 14). These arguments relate directly to BTMI's services as a broker and are FAAAA preempted.

"Hiring motor carriers to transport shipments" is the core service of a property broker. *Krauss v. IRIS USA, Inc.* 2018 WL 2063839 (E.D. Pa. May 3, 2018). As part of that core service, the "market has dictated" that BTMI be able to maintain ongoing relationships with dedicated service commitments from motor carriers to service its Innovel account. These dedicated "contract carrier" arrangements as they were previously called before deregulation have been commonplace for years in the transportation industry given the number of stops in transit, size of the product delivered, and shipper demand for dedicated equipment. *E.g.*, *In the Matter of the Application of Leaseway*, 1988 WL 1618508 (Ohio P.U.C. Dec. 28, 1988).[17]

The upshot of Plaintiffs' Prong 3 allegation is BTMI cannot broker loads from customers, such as Innovel, that require such "contract carrier" services without rendering the owners of the motor carriers' employees. What results from this approach is a restriction on the brokerage services BTMI would otherwise provide its customer, Innovel "that, in the absence of regulation, the market might dictate." *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 996 (2008); Defs.' Counter SOF ¶ 10; *see also Freight Motor Carrier Oversight: Hearing Before the Subcomm. on Surface Transp. of the Comm. on Commerce, Sci., and Transp.*, 102d Cong. 10 (1991)("Contract carrier authority allows carriers to tailor specific service standards to individual shippers and is considered an extremely important

---

[17] *See also Merchs. Home Delivery Serv., Inc. v. NLRB*, 580 F.2d 966, 967 (9th Cir. 1978) (referring to home delivery service as a "contract carrier with operations in twenty-two states, engaged primarily in the delivery of household appliances and furniture from department and furniture stores to the homes of the stores' customers.").

marketing tool in securing shipper business.") (attached as Ex. B).

Plaintiffs' theory directly impacts BTMI's service of selecting motor carriers for its customer, Innovel, and places BTMI between Scylla and Charybdis: stop servicing Innovel given its dedicated carriage requirement, or use employees to transport product for the account. The FAAAA does not countenance such an approach. *See Schwann v. FedEx Ground Package Sys., Inc.*, 813 F.3d 429 (1st Cir. 2016) ("The decision whether to provide a service directly, with one's own employee, or to procure the services of an independent contractor is a significant decision in designing and running a business.").

## IV.  CONCLUSION

Plaintiffs failure to proffer evidence that motor-carrier owners qualify as "employees" or that either Defendant constitutes an "employer" under the Wage Act requires denial of their summary judgment motion. Plaintiffs moreover cannot be permitted under the class action procedural cloak disregard the corporate form of motor-carriers based on the preference and hearsay of a few class members. *In re Asacol Antitrust Litig.*, 907 F.3d at 53 ("class certification provides no occasion for jettisoning the rules of evidence and procedure, the Seventh Amendment, or the dictate of the Rules Enabling Act."). With no such evidence to resolve—up or down—the maintenance or disregard of every motor carrier's corporate form, Prong 1, or Prong 3, Plaintiffs' summary judgment request must be denied.

Dated: December 31, 2018                    Respectfully submitted,

                                            */s/ Andrew J. Butcher*
                                            Adam C. Smedstad, Admitted *Pro Hac Vice*
                                            asmedstad@scopelitis.com
                                            Andrew J. Butcher, Admitted *Pro Hac Vice*
                                            abutcher@scopelitis.com
                                            Scopelitis Garvin Light Hanson & Feary, P.C.
                                            30 W. Monroe Street, Suite 600
                                            Chicago, IL 60603
                                            Phone: (312) 255-7200

20

Paul D. Root, Admitted *Pro Hac Vice*
proot@scopelitis.com
Scopelitis Garvin Light Hanson & Feary, P.C.
10 W. Market Street, Suite 1400
Indianapolis, IN 46204
Phone: (317) 637-1777

***Attorneys for Defendant***
***Border Transfer of MA, Inc. and***
***Patrick McCluskey***

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on December 31, 2018.

*/s/ Andrew J. Butcher*
Andrew J. Butcher

4851-9762-5474, v. 17