# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

MARCOS DaSILVA and MATTEUS )
 FERREIRA, on behalf of themselves )
and all others similarly situated, )

Plaintiffs, )               Case No. 16-cv-11205-PBS

v. )

 )               **LEAVE TO FILE GRANTED**

BORDER TRANSFER OF MA, INC. )    **ON MARCH 22, 2019**
and PATRICK McCLUSKEY, )

Defendants. )

_____

## REPLY IN SUPPORT OF PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT

Defendants' opposition to Plaintiffs' partial motion for summary judgment on their employment status repeats many of the same arguments that they have already unsuccessfully raised in this case. Despite the largely undisputed facts that Plaintiffs and the class they represent worked full-time exclusively for Border Transfer, performed the work assigned by Border Transfer according to the methods proscribed by Border Transfer, and were entirely reliant on Border Transfer for their incomes, Defendants continue to argue that Plaintiffs cannot recover under the Wage Act because Defendants required their drivers to form corporate entities. See Defs.' Opp. at p. 1. The Massachusetts Supreme Judicial Court, however, expressly held that the Wage Act would apply where a delivery company "required [its drivers] to incorporate in order to misclassify them as independent contractors."[1] Chambers v. RDI Logistics, Inc., 476 Mass. 95, 109 (2016). Order dated Nov. 9, 2017 at p. 21 (ECF No. 95).

_____

[1]    Furthermore, the record in this case plainly shows that contractors only incorporated because they were required to by Border Transfer and that, in some instances, Border Transfer physically formed the corporate entity for the contractors who were not able to on their own. Pls.' SOF at ¶¶ 12-14; Pls. Suppl.

Moreover, this same argument has been rejected time and time again, because if Defendants were correct, every employer could avoid liability by simply making their workers incorporate. Amero v Townsend Oil Co., 2009 WL 1574229, at *3, n. 4 (Mass.Super. Apr. 15, 2009) (rejecting the argument that an individual's "decision to incorporate precludes him from enjoying the benefits of the Wage Act" because such an argument "ignore[s] economic reality" and would enable "any employer who wanted to avoid the requirements of the Wage Act simply [to] require its employees to incorporate as a condition of employment."); Vargas v. Spirit Delivery & Distribution Servs., Inc., 245 F.Supp.3d 268, 287 (D. Mass. 2017) (accord); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745 *3 (Dec. 30, 2013) (same); De Giovanni v. Jani–King Int'l, Inc., 262 F.R.D. 71, 86 (D. Mass. 2009) (accord); Depianti v. Jan-Pro Franchising Int'l, Inc., 465 Mass. 607, 623-24 (2013) (employer cannot avoid liability under the Wage Act by contracting for an individual's services through an intermediary entity).  Thus, Border Transfer may not similarly avoid its obligations under the Wage Act. See Padovano v. FedEx Ground Package Sys., Inc., 2016 WL 7056574, at *4 (W.D.N.Y. Dec. 5, 2016) ("If any business could avoid the [New York wage law] by simply classifying their workers as independent contractors and compensating them through corporations rather than paying them directly, the [wage law] would be rendered useless."); Phelps v. 3PD, Inc., 261 F.R.D. 548, 554, 562 (D. Or. 2009) (certifying a class of Oregon delivery drivers "who entered into a contract with 3PD either on his or her own behalf or on behalf of an entity" to pursue state wage claims); W. Ports Transp., Inc. v. Employment Sec. Dep't of State of Wash., 110 Wash. App. 440, 453, 41 P.3d 510, 514 (2002) (truck driver who contracted with company through a separate business entity was still an employee under ABC test).[2]  Moreover, in a remarkably

---

SOF at ¶ 7.  Indeed, Border Transfer informed contractors that they could be terminated for cause if they dissolved their corporation or otherwise changed their business structure.  Pls.' SOF, ¶ 33

[2]      There is nearly universal support for the proposition that an employer may not circumvent the wage laws by requiring workers to incorporate.  See Ruiz v. Affinity Logistics Corp., 754 F.3d 1093, 1103 (9th

similar case, Judge Douglas Woodlock held that delivery drivers could recover the same categories

of deductions at issue in this case under the Wage Act, even though the drivers contracted with the

defendant through corporate entities.[3]  Martins v. 3PD Inc. ("Martins II"), 2014 WL 1271761, at

*11 (D. Mass. Mar. 27, 2014) (citations omitted).

Defendants further argue that, even if the Wage Act applies here, that they can satisfy Prong

A (right to control) and Prong C (independently established business) of the Massachusetts ABC

independent contractor test.  In support of their arguments, Defendants rely on so-called happy

camper declarations taken from contractors who were working for them at the time they were

signed in 2017.  One of those contractors, Jose Medina, no longer works for Defendants and has

now stated that he signed the declaration without reading it and only signed it because he believed

he was required to do so in order to keep his job.  See Pls.' Suppl. SOF at ¶¶ 6-7.  Indeed, reviewing

the declaration now, Medina sees that it contains several errors, including Defendants' self-serving

---

Cir.) *cert. denied*, 135 S. Ct. 877 (2014) ("While 'purporting to relinquish' some control to the drivers by making the drivers form their own businesses and hire helpers, [defendant] 'retained absolute overall control' over the key parts of the business); Parilla v. Allcom Constr. & Install. Svcs., LLC, 2009 WL 2868432 (M.D. Fl. 2009) (plaintiff who incorporated was an employee; incorporation was a "façade"); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 198 (S.D.N.Y. 2006) (employment status of mechanics who formed their own corporations must be determined under the applicable classification test) (citing Gustafson v. Bell Atlantic Corp., 171 F.Supp.2d 311 (S.D.N.Y. 2001) (finding employee status despite incorporation)); Meredith v. Honeywell Inter., Inc., 245 Fed.Appx. 325, 328-29 (4th Cir. 2007) ("the fact that [the defendant] had a contract with [a trucking company] the terms of which provided that [the trucking company] was an independent contractor [and] that neither [the trucking company] nor its employees would be considered [the defendant's] employees…[does not] alter the legal obligations of the respective parties"); Martin v. Shelby Telecom, LLC, 2012 WL 2476400, *3-7 (N.D.Ala. June 26, 2012) (worker's incorporated status does not create genuine issue of material fact as to employment status where evidence suggests employer controlled means of work and opportunity for profit).

3       In another case involving delivery contractors working out of the same facility in Westwood, Massachusetts and also delivering Sears products, Judge George O'Toole held that Home Delivery America could not escape liability under the Wage Act simply because it contracted with drivers who were required to form corporate entities.  Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745, at *2 (D. Mass. Dec. 30, 2013) ("I agree with those courts that have concluded that a worker can qualify as an employee under § 148B even if he has incorporated his business, and the employer's formal relationship is with the entity and not the individual.").

statements he formed a corporation to protect his business and that he could negotiate the pay rate for extra stops.  Id. at ¶¶ 7, 15.  Thus, this Court should give no weight to Defendants' declarations.[4]

Moreover, to prop up their argument that class members ran independent businesses, Defendants rely heavily on declarations signed by Humberto Chantre and Jose Pinto stating that, while they contracted with Border Transfer, they also performed deliveries for other companies. See Defs.' Counter SOF at ¶ 6, 9.  Class members, however, personally provided delivery services for Defendants on a full-time basis.  Chantre and Pinto were not class members while they contracted with multiple companies because they were not personally making deliveries for Defendants at that time.  See Pls.' Resp. to Defs.' Counter SOF at ¶¶ 6, 9.  There is overwhelming evidence, meanwhile, in this case showing that class members worked exclusively for Defendants during the time they were making deliveries for Border Transfer.  Id.  That is even true for Humberto Chantre, who acknowledged in his declaration that he personally performed delivery services for Defendants from 2013 to approximately February 2016, and which is supported by Defendants' delivery logs, and who would have been a class member during that time, but not while he contracted with other companies and was not personally making deliveries for Defendants.[5] Regardless, as demonstrated below and in Plaintiffs' partial motion for summary judgment, Border

---

[4]    Indeed, courts rarely give weight to so-called happy camper declarations signed by a defendants' current workers due to possibility of coercion.  See, e.g., Avilez v. Pinkerton Gov't Servs., 286 F.R.D. 450, 458–59 (C.D. Cal. 2012) (so-called happy camper declarations "reveal more about [the respondent's] loyalty than whether or not they had an ... experience that would render them class members."); Belt v. Emcare, Inc., 299 F.Supp.2d 664, 668 (E.D.Tex.2003) ("[W]here the absent class member and the defendant are involved in an ongoing business relationship, such as employer-employee, any communications are more likely to be coercive.").

[5]    There is no evidence to suggest that Chantre was performing deliveries for other companies while he was personally making deliveries for Border Transfer.  Id.

Transfer, cannot refute the overwhelming evidence demonstrating that Plaintiffs and the class they represent are, indeed employees pursuant to Prongs A and C.[6]

For the reasons stated herein and in Plaintiffs' partial motion for summary judgment, the Court should grant summary judgment in Plaintiffs' favor on their employment status.

## ARGUMENT

**A.    Defendants Cannot Avoid Liability Under the Wage Act Simply By Requiring Class Members to Incorporate and Labeling Them as Motor Carrier Owners.**

Defendants argue that the contractors may not be considered employees pursuant to the Massachusetts Wage Act because they formed corporate entities.  Defs.' Opp. at 3-4.  As discussed above, this Court has already expressly held that "incorporation cannot be a shield to prevent liability under the Wage Act."  Order at p. 21 (ECF No. 95).  Indeed, as this Court found, its decision was supported the overwhelming weight of authority.  Id. (citing Martins I, 2013 WL 1320454, at *7, *9; Vargas, 245 F.Supp.3d at  287 (D. Mass. 2017); De Giovanni v. Jani–King Int'l, Inc., 262 F.R.D. 71, 86 (D. Mass. 2009)).  See also Depianti, 465 Mass. at 623-624 (an employer cannot avoid liability under the Wage Act by contracting for an individual's services through an intermediary entity); Amero v. Townsend Oil Co., Civ. A. 07–01080, Slip Op. at 5, n. 4

---

[6]      Defendants attempt to mislead the Court by arguing that the "Massachusetts courts construe the Wage Act narrowly."  Defs.' Opp. at p. 3.  On the contrary, the "SJC has 'consistently held that the legislative purpose behind the Wage Act (and especially the 'special contract' language) is to provide strong statutory protection for employees and their right to wages."  Martins II, 2014 WL 1271761, at *5 (quoting Crocker v. Townsend Oil, 464 Mass. 1, 979 N.E.2d 1077, 1086 (Mass.2012)) (emphasis added).  Indeed, "[c]onsistent with the Wage Act's 'broad remedial purpose,' the SJC has made clear that any attempt by an employer to shift the ordinary costs of doing business to its employees must be met with skepticism and carefully scrutinized.  Id. (quoting Depianti v. Jan–Pro Franchising Int'l, 465 Mass. 607, 990 N.E.2d 1054, 1067 (Mass.2011)).  The sole case relied upon by Defendants, meanwhile, merely held that the courts narrowly construed what kind of payments could be considered "wages."  See Prozinski v. Ne. Real Estate Servs., LLC, 59 Mass.App.Ct. 599, 603, 797 N.E.2d 415 (2003) (holding that severance payments did not constitute wages, even though holiday pay, vacation pay, and earned commission were wages under the Act).  That case no longer appears to be good law in Massachusetts.  Juergens v. Microgroup, Inc., 2011 WL 1020856, at *2 (Mass. Super. Jan. 28, 2011) (holding that Prozinski no longer good law based on SJC's more recent holding applying broader reading of what constitutes "wages" under the Wage Act in Wiedmann v. Bradford Group, Inc., 444 Mass. 698, 703–04, 831 N.E.2d 304 (2005)).

(Mass.Super.Ct. Apr. 15, 2009); Padovano, 2016 WL 7056574, at *4 ("If any business could avoid the [New York wage law] by simply classifying their workers as independent contractors and compensating them through corporations rather than paying them directly, the [wage law] would be rendered useless.").[7]  Nothing has changed since this Court's original holding and Defendants merely restate the old arguments this Court has already rejected.

Moreover, as discussed above, in this case there is overwhelming evidence that Border Transfer required its drivers to form corporations to work for Border Transfer.  Pls.' SOF, ¶ 12-14; Pls.' Suppl. SOF at ¶ 7.  Indeed, often contractors did not have a corporate entity prior to contracting with Border Transfer.  Id.  And, in at least two cases, a Border Transfer manager personally formed the corporate entity for the driver.  Pls.' SOF at ¶ 14; Pls.' Suppl. SOF at ¶ 7.  Thus, the mere fact that Plaintiffs worked for Border Transfer through corporate entities cannot frustrate a Wage Act claim.  Depianti, 465 Mass. at 621, 624 (an employer could not perform an "end run" around the Wage Act "by virtue of an arrangement permitting it to distance itself from its employees").  This Court must, again, reject Defendants' argument.

In the absence of any helpful authority, Defendants misrepresent a Massachusetts Superior Court opinion in support of their argument that they can use incorporation as a defense.  In Rogier v. Chambers, 2016 WL 5890024, at *3 (Mass. Super. Sept. 1, 2016), the plaintiffs worked at several Herb Chambers auto dealerships.  In Rogier, the defendants admitted that the car salesmen could sue the dealership they worked at as well as the president and treasurer of that dealership.  Rogier v. Chambers, 2016 WL 5890024, at *2.  The issue was whether the salesmen could sue other corporate entities at dealerships where they did not work.  Here, the issue is whether Defendants can shield themselves from liability concerning the work performed directly for them.  Thus, the holding in

---

[7]     There is nearly universal support for the proposition that an employer may not circumvent the wage laws by requiring workers to incorporate.  See above at Footnote 1.

<u>Rogier</u> that salesmen could sue the corporate entities and corporate officials at the locations where they worked, but not corporations for whom they did not work, is simply not applicable in this case and is otherwise completely contrary to the SJC's ruling in <u>Chambers</u> and other substantial authority provided here by Plaintiffs.[8]

Defendants also cite to <u>Little v. USSC Grp., Inc.</u>, 404 F.Supp.2d 849, 853 (E.D.Pa.2005), but that case is not applicable because it involved corporate entities who themselves claimed to be employees of the defendants.  Defs.' Opp. at p. 8-9.  The court held that corporations cannot be considered employees under the Pennsylvania wage law. <u>Id</u>.  The court, however, specifically noted that if the plaintiff were a party, he could have claimed a violation of the WPCL. <u>Id</u>. at 854. Accordingly, another Pennsylvania court declined to follow <u>Little</u> and held that the Pennsylvania wage law did <u>not</u> preclude individuals and the class they presented from bringing state wage law claims even though they had contracted through corporate entities.  <u>See</u> <u>Myers v. Jani-King of Philadelphia, Inc.</u>, 2015 WL 1055700, at *7 (E.D. Pa. Mar. 11, 2015), <u>aff'd sub nom.</u> <u>Williams v. Jani-King of Philadelphia Inc.</u>, 837 F.3d 314 (3d Cir. 2016).  The SJC's ruling in <u>Chambers</u> suggests that the <u>Jani-King</u> case is the proper one to follow here.

Defendants also cite to another Pennsylvania case, <u>Reyes v. XPO Last Mile, Inc.</u>, for the proposition that delivery contractors cannot recover lost wages simply because they formed corporate entities.  Defs.' Opp. at p. 9.  The <u>Reyes</u> case has not been cited by another court in the

---

[8]     At the same time, the <u>Rogier</u> case expressly supports a ruling in favor on Plaintiffs on their claim that Border Transfer president Patrick McCluskey can be held personally liable under the Wage Act.  The court held, the Wage Act "makes the president and treasurer of a corporation and any officers or agent having the management of the corporation 'deemed' to be the employer."  <u>Id</u>. at *3 (citing M.G.L. c. 149, § 148). Indeed, "[t]he expansion of liability beyond the direct employer applies to '*individuals* with the authority to shape the employment and financial policies of an entity ...'" <u>Id</u>. (quoting <u>Cook v. Patient Edu., LLC</u>, 465 Mass. 548, 554 (2013).  McCluskey served at Border Transfer's president and had substantial control over the way Border Transfer classified and pays its delivery contractors.  <u>See</u> Pls.' SOF at ¶ 108-11.  Thus, he is plainly liable under the Wage Act, and as discussed below, Defendants have made no effort to contest that aspect of Plaintiffs' motion.

nearly three years since it was decided and appears to run directly contrary to every decision in the First Circuit and nearly every other decision throughout the country which Plaintiffs have cited above.  It appears, therefore, to have been wrongly decided.[9]  See, e.g., Chambers, 476 Mass. at 109 (Massachusetts Wage Act applies  where a delivery company "required [its drivers] to incorporate in order to misclassify them as independent contractors"); Hargrove v. Sleepy's, LLC, 220 N.J. 289, 309, 106 A.3d 449, 461 (2015) (rejecting Sleepy's argument that a direct contractual relationship between the parties was required before liability could be shown under the New Jersey wage laws).

**B.      Defendants Cannot Satisfy Prong A Because They Retained the Right to Control Every Aspect of the Class Members' Work Pursuant to their Contracts and In Fact.**

To meet its burden under Prong A, Border Transfer "must show that the individual was free from its control both as a matter of contract and as a matter of fact."  Order dated Nov. 9, 2017 at p. 16 (ECF No. 95).  Defendants plainly cannot satisfy this prong, requiring a ruling in Plaintiffs' favor on summary judgment.

**1.      Class Members Worked for Defendants on a Full-Time Basis**

Defendants argue that they can satisfy Prong A because Plaintiffs have failed to show that class members worked full-time for Defendants.  Defs.' Opp. at p. 9-12.  In doing so, however, Defendants ignore large portions of the record and, otherwise, attempt to mischaracterize the rest. For example, Defendants wholly mischaracterize Cesar Zuniga's testimony by cherry-picking a statement from his deposition where he states that on some occasions, he did not provide deliveries

---

[9]      Moreover, Reyes is directly contradicted by other Pennsylvania cases which have held a direct contractual relationship is not required to recover pursuant to the state wage law.  See, e.g., Myers v. Jani-King of Philadelphia, Inc., 2015 WL 1055700, at *7 (E.D. Pa. Mar. 11, 2015), aff'd sub nom. Williams v. Jani-King of Philadelphia Inc., 837 F.3d 314 (3d Cir. 2016); Silfee v. Automated Data Processing, Inc., 2016 WL 4903961, at *6 (M.D. Pa. Sept. 15, 2016) ( an employer was not absolved of liability for unpaid wages by merely contracting with an intermediary third party (in this case, a payroll company) to fulfill its wage payment obligations).

during the day.  Zuniga's testimony, however, is completely consistent with the statements in his

declaration that he worked full-time for Defendants.  Zuniga plainly testified that, during the six

months he ran one truck for Defendants, he worked as the driver, full-time, five to six days a week.

Pls.' Suppl. SOF at ¶ 1-3.  Zuniga further stated in his declaration and at his deposition that, when

he ran two trucks for Defendants, he personally performed delivery services approximately five

days a week.[10]  Pls.' SOF 85-86; Pls.' Suppl. SOF, ¶ 2-3.  It is also plain from the testimony of the

other contractors, aside from the named Plaintiffs, the class members were unable to work for

another delivery business, in part, because they were required to work full-time performing

deliveries for Defendants.  See Pls.' Suppl. SOF, ¶ 8-9 (contractor Jose Medina worked full-time

approximately seven days a week); ¶ 17 (contractor Alfred Owusu-Ansah worked five days a week

exclusively for Defendants);

   Moreover, Defendants completely ignore a mountain of other evidence that shows

conclusively that contractors worked full-time for Defendants.  For example, Border Transfer's own

Route Reviews shows that most drivers were assigned 18-20 stops per day and routinely had routes

---

[10]     Any confusion comes from Defendants' misleading excerpt of Zuniga's testimony where he stated
that sometimes he would go to the warehouse to make sure the other drivers were able to load and get off the
dock without a problem.  Defs.' Opp. at p. 10 (citing DCSOF, ¶ 10).  But even a cursory glance at Zuniga's
testimony shows that he did not include such days when he stated that he was working an average of four to
five days a week, full-time, because those were not days when he was on the truck personally performing
deliveries.  Here is the complete exchange:

   Q. How did you come up with the average of four to five days a week to put into the declaration?

   A. Because sometimes my help wasn't needed, but I will still go and be at the warehouse in the
   morning for loadout, and if everything is fine, I'll be going home. So on an average, I thought it was
   like four to five days that I will actually be out there working on the truck. If you are consider getting
   up in the morning and going to spend a few hours doing loadout, it's in the amount on the route, a
   working day.

   Q. And you did not consider that a working day?

   A. I considered that not a working day because I didn't spend the whole day in the truck.

Pls.' Resp. to Defs.' SOF at ¶ 10.

that ranged from 100-200 miles in a single day. Pls.' SOF at ¶ 82. Furthermore, Border Transfer's records shows that it took an average of 10 hours a day for drivers to complete their daily routes as assigned by Border Transfer. Pls.' SOF at ¶ 83. Moreover, Sears personnel told the contractors that it would ensure there were "no more low stop counts." Pls.' SOF at ¶ 84. Moreover, a review of Border Transfer's daily logs, which showed who drove the trucks and how many stops the completed each day, further showed that all but a few contractors personally performed deliveries on a full-time basis. Pls.' SOF at ¶ 88.[11] Thus, there was plenty of evidence to support the testimony of contractors Ferreira, DaSilva, Zuniga, Medina and Owusa-Ansah, that they worked full-time for Defendants.[12] See Pls.' SOF, ¶¶ 85-86; Pls.' Suppl. SOF at ¶ 2-3, 8, 17. Again remember if they did not drive they were not class members.

## 2. Class Members Were Not Free From Control and Direction Under their Contracts

Defendants put forward the circular argument that the contractors were free from control under their contracts because the contracts stated that the contractors were independent contractors

---

[11]    Defendants attempt to chip away at the mountain of evidence showing that their contractors personally worked full-time making deliveries by citing to an opinion from the District Court of New Jersey holding that Plaintiffs' counsel had failed to show the delivery drivers worked full-time in that case. Defs.' Opp. at p. 11 (citing Hargrove v. Sleepy's, LLC, 2018 WL 1092457 (D.N.J. Feb. 28, 2018). That decision involved a denial of class certification, which this Court has already granted in this case. More relevant to the instant motion, the court in Hargrove granted summary judgment to the three named Plaintiffs holding that they were misclassified as independent contractors pursuant to Prongs A, B, and C of the New Jersey ABC test. See Hargrove v. Sleepy's LLC, 2016 WL 8258865, at *1 (D.N.J. Oct. 26, 2016). As for showing that drivers worked full-time, there was a claim regarding overtime pay pursuant to New Jersey state law in Hargrove which presented questions of how many hours the drivers worked, which is not present here.

[12]    Defendants suggest that Plaintiffs' review of the delivery logs is not accurate, but fail to provide any evidence suggesting that contractors did not work full time. Instead, Defendants ask the court a series of rhetorical questions, none of which actually serve their purpose. Defs.' Opp. at p. 11. For example, Defendants pick out a portion of Rebecca Shuford's declaration stating that a contractor, Antonio Rosa, personally performed deliveries 788 out of 798 days he was assigned deliveries. Rosa stated in his declaration that he took a vacation of 22 days at some point, but still ran his truck for Defendants. DCSOF, § 12. This statement is consistent with Shuford's tally, given they it appeared that there were 10 days (or two-weeks) where Rosa's trucks ran for Defendants, but Rosa was not personally driving. Thus, Rosa could have taken his vacation and continued to run his truck for Defendants for two out of three weeks. This would be consistent with the statements in Rosa's declaration.

who were free to exercise their discretion and judgment.[13]  Defs.' Opp. at p. 13.  Defendants,

however, either downplay or completely ignore the rest of the contract, which contains a long list of

requirements and provides Defendants with the right to control most of the contractors' work.  For

example, the contract requires drivers to perform the deliveries in the manner required by Border

Transfer and Sears, including within time windows for each delivery as designated on their

manifests.  SOF, ¶ 40-43.  Indeed, contractors are instructed that they must meet Sears' "strict

demands for timely delivery" and that the driver "must run all delivery routes exactly as specified

on the manifest."  SOF, ¶ 42.  Furthermore, among other things, Defendants' standard contract

requires the contractors to attend morning meetings (Pls.' SOF at ¶ 35); wear a uniform (Pls.' SOF

at ¶ 18); obtain insurance at extremely high levels dictated by Defendants (Pls.' SOF at ¶ 25), and

allows Defendants to terminate any contractor who fails to make deliveries pursuant to Defendants'

instructions (Pls.' SOF at ¶ 33).[14]  Thus, there should be no dispute regarding the extensive control

exercised by Defendants pursuant to their contracts.[15]

   Defendants do not dispute that they retained the right to control the work of the contractors

in exactly the manner prescribed by their contract with Sears, including its requirement that

---

[13]     Merely labeling the drivers as independent contractors cannot shield Defendants from liability under the Wage Act.  Bos. Bicycle Couriers, Inc. v. Deputy Dir. of Div. of Employment & Training, 56 Mass. App. Ct. 473, 484, 778 N.E.2d 964, 972 (2002) ("boilerplate language replete with designations and labels incorporated into form contracts by the employing unit may not be used as a subterfuge to avoid liability" under the unemployment law's ABC test).

[14]     The contracts further state that contractors cannot enter a customer's home without an adult present (Pls.' SOF at ¶ 48) and requires that contractors "meet [Sears'] strict demands for timely delivery of merchandise" by running "all delivery routes as specified on the manifest."  Pls.' SOF at ¶ 42.

[15]     Defendants argue that there is no evidence that they retained the right to control who contractors used as helpers.  Defs.' Opp. at p. 14.  The record, however, plainly supports Plaintiffs' claims in this regard. Defendants' manager testified that he recalled one instance where Defendants disqualified a helper.  Pls.' SOF at 21-22.  See also Pls.' Suppl. SOF at ¶ 14.  Indeed, Sears requires that Defendants retain the right to control which helpers are used .  Pls.' SOF at ¶ 23.  Thus, Defendants plainly retained the right to control that aspect of the contractors' work.  See, e.g., Rainbow Dev., LLC v. Com., Dep't of Indus. Accidents, 2005 WL 3543770, at *3 (Mass. Super. Nov. 17, 2005) ("it is the right of control rather than the exercise of it").

deliveries be performed with time windows and in the order they are assigned. [16]  Instead,

Defendants argue that the control they exercise over the class members' work is not dispositive

because the control is pursuant to Defendants contract with Sears.  This is simply absurd.  Indeed,

when faced with a similar argument in a worker misclassification case, the Eleventh Circuit

responded that the "inquiry requires us to examine the nature and degree of the alleged employer's

control, not why the alleged employer exercised such control. Business needs cannot immunize

employers from [statutory] requirements. If the nature of a business requires a company to exert

control over workers to the extent that [Defendants have] allegedly done, then that company must

hire employees, not independent contractors."  Scantland v. Jeffry Knight, Inc., 721 F.3d 1308,

1316 (11th Cir. 2013) (emphasis added).  Thus, regardless of where the requirement that Defendants

maintain the right to control came from, Defendants cannot meet Prong A.[17]

C. **Defendants Cannot Satisfy Prong C Because They Cannot Show that Class Members Were Customarily Engaged in an Independently Established Trade Occupation or Business**

Defendants argue that they can satisfy Prong C based entirely on the speculation that class

members could have provided delivery services to other businesses.  Defs.' Opp. at p. 17-18.

Defendants do not even try to show that this was possible.  Indeed, there is no evidence that a

---

[16]    The contract between Sears and Border Transfer contains many provisions requiring Border Transfer to retain the right to control the work of the contractors.  For example, the Sears contract states that Border Transfer must retain the right to terminate any helpers contractors want to use (Pls.' SOF at ¶ 23), sets the amounts of insurance coverage contractors must obtain (Pls.' SOF at ¶ 25), states that Border Transfer must require drivers to attend morning meetings (Pls.' SOF at ¶ 35), and states that Border Transfer will not permit drivers to "co-load" their trucks with any other stores' merchandise.  Pls.' SOF at ¶ 79.

[17]    Defendants cite to a line of cases for the general proposition that it is not "inherently wrong" to classify transportation workers as independent contractors.  Defs.' Opp. at p. 16, n. 8.  While that may be true, the cases Defendants rely on are not applicable here.  For example, in In re Marwa, the Mass. Dept. of Unemployment Assist. ("DUA") held that a delivery was not an employee under the ABC test because he "did not operate his truck in the performance of delivery services."  See Order at ¶ 4 (attached to Defs.' Opp. at ECF No. 142-1).  That is completely contrary to the class of drivers here, who all personally provided delivery services.

contractor who was personally providing delivery services for Defendants could have performed delivery services for another business.[18]

Moreover, Defendants misconstrue their burden on Prong C.  "'Whether the service in question could be viewed as an independent trade or business because the worker is capable of performing the service to anyone wishing to avail themselves of the services, or, conversely, whether the nature of the business compels the worker to depend on a single employer for the continuation of the services.'"  Oliveira v. Advanced Delivery Sys., Inc., 2010 WL 4071360, at *7 (Mass. Super. July 16, 2010) ((quoting Athol Daily News v. Bd. Of Review Of Div. Of Employment And Training, 439 Mass. 171, 181 (2003)).  Here, the class members worked solely for Defendants performing deliveries and Defendants were their only source of income.  See Pls.' SOF at ¶ 87; Pls.' Suppl. SOF at ¶ 8.  It is simply not possible for class members to work for other companies where Defendants assigned daily routes that required class members to work 10 hours a day, five to seven days week, and where Defendants prohibited class members from co-loading their trucks with another company's merchandise.  See Pls.' SOF at ¶ 87; Pls.' Suppl. SOF at ¶ 5, 9. Defendants "cannot have it both ways: that is, [it] cannot claim that [delivery drivers] are independent contractors, who would traditionally be free to use their skills wherever they please, and simultaneously prevent them from working for other [delivery companies]."  Harris v. Skokie Maid & Cleaning Serv., Ltd., 2013 WL 3506149, at *9 (N.D. Ill. July 11, 2013)

Courts have widely held that Prong C "calls for an enterprise that exists and can continue to exist independently of and apart from the particular service relationship. The enterprise must be one

---

[18]     Indeed, as discussed above, Defendants rely exclusively on declarations from Humberto Chantre and Jose Pinto which only demonstrate that they were not class members during the period that they contracted with multiple companies because they were not personally providing delivery services on any basis, much less a full-time basis, for Defendants at that time.  Thus, even if Defendants can satisfy Prong C as to Chantre and Pinto, this is not relevant to a ruling on the employment status of class members, who were working full-time for Defendants.

that is stable and lasting—one that will survive the termination of the relationship." <u>Hargrove</u>, 220 N.J. at 305 (emphasis added). "[T]he employee must be engaged in such independently established activity <u>at the time of rendering the service involved</u>." <u>Philadelphia Newspapers, Inc. v. Bd. of Review</u>, 397 N.J. Super. 309, 323, 937 A.2d 318, 327 (App. Div. 2007) (emphasis added). <u>See also</u> <u>AFM Messenger Serv., Inc. v. Dep't of Employment Sec.</u>, 198 Ill. 2d 380, 401, 763 N.E.2d 272, 285 (2001) (holding that couriers did not operate independent businesses where the putative employer procured customers and set delivery prices, made delivery assignments, billed customers, set commission rates, paid the drivers, and maintained the right to terminate its relationship with drivers at any time.); <u>Veterans Messenger Serv., Inc. v. Jordan</u>, 393 Ill. App. 3d 715, 722 (2009) (delivery company failed to meet Prong Three because it presented no evidence that its "couriers could operate their delivery services without the solicitation of customers by [the company] or another similarly situated 'delivery brokerage service.'"). Similarly, in applying Prong C, the SJC flatly rejected an employer's argument that Prong 3 merely presents a "capability" test that considers "what an individual is capable of doing as opposed to what an individual actually did." <u>Coverall N. Am., Inc. v. Com'r of Div. of Unemployment Assistance</u>, 447 Mass. 852, 858 (2006). Defendants weakly attempt to distinguish <u>Coverall</u> on the grounds that it also called for an inquiry into whether "the nature of the business compels the worker to depend on a single employer for the continuation of services." Defs.' Opp. at p. 18. This does not help Defendants. Rather, the exclusive nature of the work class members performed for Defendants plainly demonstrates that they did not operate independently established businesses, but, instead, were entirely reliant on Defendants for their work and income. Thus, Defendants cannot meet Prong C.

>    **D.      Defendants Failure to Meet Prong C Does Not Trigger FAAAA Preemption.**

Defendants once again argue that, if they fail to meet their burden of showing that the delivery contractors operated independently established businesses, that Plaintiffs' claims are

preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), 49

U.S.C. § 14501(c)(1).  Defs.' Opp. at 19.  This Court has already held, however, that application of

Prongs A and C are not preempted by the FAAAA.  Order at ECF No. 49.  In doing so, the Court

held that Border Transfer failed to show that the Wage Act had a "significant impermissible effect

on [Border Transfer's] prices, routes and services."  Id. at p. 11.  All of the other courts to have

recently ruled on this issue have agreed with this Court's ruling.[19]  See Vargas, 245 F.Supp.3d at

287; Chambers, 476 Mass. at 105 (accord); Portillo v. Nat'l Freight, Inc., 2016 WL 5402215, at *5

(D.N.J. Sept. 26, 2016); Kloppel v. Sears Holdings Corp, 2018 WL 1089682, at *6 (W.D.N.Y. Feb.

28, 2018), report and recommendation adopted, 2019 WL 1226017 (W.D.N.Y. Mar. 15, 2019)

(holding N.Y. state wage law not preempted by the FAAAA because it is a "labor law, which

regulates the motor carrier as an employer, [and] is often too 'remote' to warrant FAAAA

preemption.").  More recently, the Third Circuit looked at claims for unlawful deductions brought

by delivery drivers who were classified as independent contractors pursuant to New Jersey wage

law and Illinois wage law and held in both cases that the claims were not preempted by the

FAAAA.[20]  See Bedoya v. Am. Eagle Express Inc., 914 F.3d 812, 824 (3d Cir. 2019) (holding that

"that New Jersey's ABC classification test is not preempted as it has neither a direct, nor an

---

[19]     Similarly, in Martins II, the court expressly rejected the argument that deductions claims were
preempted by the FAAAAA.  2014 WL 1271761, at *3.  Indeed, merely requiring Border Transfer to stop
taking deduction from Plaintiffs' pay will have only a tangential impact on Border Transfer's prices, routes,
or services, which is "too tenuous" to trigger preemption.  See, e.g., Costello v. BeavEx, Inc., 810 F.3d 1045,
1055 (7th Cir. 2016) (Illinois deductions law not preempted because "[l]aws that merely govern a carrier's
relationship with its workforce . . . are often too tenuously connected to the carrier's relationship with its
consumers to warrant preemption.").

[20]     Furthermore, on March 18, 2019, the Supreme Court denied a petition for certiorari review of a
decision by the Ninth Circuit holding that the California Labor Commission's decisions finding truck drivers
to have been misclassified as independent contractors were not preempted by the FAAAA.  California
Trucking Ass'n v. Su, No. 18-887, 2019 WL 145720, at *1 (U.S. Mar. 18, 2019).

indirect, nor a significant effect on carrier prices, routes, or services"); Lupian v. Joseph Cory

Holdings LLC, 905 F.3d 127, 136 (3d Cir. 2018) (holding claims under the Illinois wage law were

not preempted and finding "such laws are a part of the backdrop that motor carriers and all business

owners must face in conducting their affairs. The IWPCA does not single out trucking firms, and it

only concerns the relationship between employers and employees.").  Moreover, the Prong C

applied pursuant to the Massachusetts Wage Act is nearly identical to the Prong C applied in New

Jersey and Illinois.  N.J. Stat. Ann. §§ 43:21-19(i)(6)(C) ("Such individual is customarily engaged

in an independently established trade, occupation, profession, or business."); 820 ILCS 115/2(3)

("who is in an independently established trade, occupation, profession or business) with M.G.L. c.

149, § 148B(3) ("the individual is customarily engaged in an independently established trade,

occupation, profession or business of the same nature as that involving the service performed").

Accordingly, the courts in all three states have interpreted Prong C to require a showing by the

putative employer that the putative employee is actually engaged in an independent business and

not merely that he or she has the capability to do so.  See, e.g., Coverall, , 447 Mass. at 858 (court

must focus not on what worker was "capable of doing," but on "what an individual actually did");

Philadelphia Newspapers, Inc, 397 N.J. Super. at 323 ("employee must be engaged in such

independently established activity at the time of rendering the service involved."); AFM Messenger

Serv., Inc., 198 Ill. 2d at 401 (holding messenger service could not satisfy Prong C where "the

evidence did not demonstrate that the drivers were able to operate their 'delivery businesses'

without the benefit of a relationship with AFM, or another messenger service company like AFM").

        Thus, Defendants' failure to show that class members actually performed deliveries for other

companies while they personally performed deliveries for Border Transfer is fatal under Prong C.

See, e.g., Coverall, 447 Mass. at 858  (flatly rejecting an employer's argument that Prong C merely

presents a "capability" test that considers "what an individual is capable of doing as opposed to

what an individual actually did"); <u>Boston Bicycle Couriers, Inc</u>, 56 Mass. App. Ct. at 481-82 (defendant failed to satisfy prong 3 where the worker did not hold himself out as capable of performing delivery services for other potential customers and worker did not have his own "clientele").

Defendants argue that the application of Prong C would require that it treat its contractors at employees.  Defs.' Opp. at p. 20.  As this Court already held, "as the Massachusetts Supreme Judicial Court recently held, Prongs 1 and 3 do not have such a drastic effect."  Order at p. 12 (citing <u>Chambers v. RDI Logistics, Inc.</u>, 2016 WL 7253568, at *7 (Mass. Dec. 16, 2016) ("Unlike prong two, there is nothing intrinsic to [Prongs 1 and 3] that prevents motor carriers from using independent contractors.")).[21]  Moreover, Defendants' claim is not support by the record. Defendants ensured that the class members could only work for Border Transfer through their policies of assigning contractors full-time work, five to seven days a week; assigning them stand-by shifts where they are required to report to the facility without pay; requiring that deliveries be made within strict time windows; prohibiting co-loading of other merchandise; and charging contractors for refused routes, all make it nearly impossible for contractors to work for anyone else.  <u>See</u> Pls.' SOF at ¶¶ 82-83, 85-88; Pls.' Suppl. SOF, ¶ 3, 16-17; Pls.' Resp. to Defs.' Counter SOF at ¶ 4.

Moreover, as discussed above, the proper application of Prong C does not present the kind of patchwork enforcement problem raised by Massachusetts' unique Prong B.  Indeed, Judge

---

[21]     In fact, Prong C "still allow[s] a carrier to use an independent contract driver model as long as the carrier does not exert a certain level of control over them or prevent them from engaging in an independently established trade."  Moreover, prior to this Court's ruling, two Massachusetts courts had considered the First Circuit's ruling in <u>Schwann</u> and held that both Prongs A and C of the wage statute are not preempted by the FAAAA.  <u>See</u> <u>Khan v. East Coast Critical</u>, No. 2015-2762-D (Suffolk Sup. Ct. May 4, 2016) at p. 3 ("Prongs 1 and 3 of 148B(a) on their face adopt wide-spread and apparently nationally uniform tests for the determining the employer/employee relationship, including the degree of control and the employee's investment in the business." ) (attached as Ex. A); <u>Wilson v. Xpressman Trucking & Courier, Inc.</u>, No. 14-01110 (Mass. Super. Apr. 6, 2016) ((attached hereto as Ex. B) (holding that Plaintiffs

Hillman held that the "factors for satisfying . . . [Prong C] are typical of the elements used to determine independent contractor status in many states and for purposes of federal law." Vargas, 245 F. Supp. 3d at 282.  There is ample support for this holding.  See, e.g., Labor & Logistics Mgmt. v. Adm'r, Unemployment Comp. Act, 2012 WL 5205557, at *6 (Conn. Super. Ct. Oct. 3, 2012) (holding that under Prong C, at the time they worked for the defendant, the defendant must that the worker is "actively supplying the same kind of services to third persons in order to be considered independent contractors") (emphasis added); Philadelphia Newspapers, Inc., 397 N.J. Super. at  323, 937 A.2d 318, 327 (App. Div. 2007); Veterans Messenger Serv., , 393 Ill. App. 3d at 722.  As one court noted in finding that delivery drivers were employees of Federal Express Ground – "[i]f 'lightning' were to strike so that there would be no [FedEx], there would in fact be nothing left for the [drivers] to do and they suddenly would be totally bereft of business." Estrada v Fed Ex Ground, 2004 WL 5631425 (Cal.Super. July 26, 2004), aff'd on appeal, 154 Cal.App.4th 1 (2007). Thus, there are no grounds for reversing course and finding that Prong C is preempted by the FAAAA.

> **E.    Defendants Have Conceded That Patrick McCluskey Is Individually Liable for Any of Border Transfer's Violations of the Massachusetts Wage Act.**

Plaintiffs have sought summary judgment in their favor on the issue of individual liability of Border Transfer's president and owner, Patrick McCluskey.  See Pls.' Mot. at p. 19-20.  Defendants have not addressed Plaintiffs' arguments in their opposition and, thus, the Court should grant summary judgment in Plaintiffs' favor on the issue McCluskey's individual liability.

## CONCLUSION

For all these reasons, the Court should grant Plaintiffs' partial motion for summary judgment on the issue of employment status and deny Defendants' motion for summary judgment.

DATED:  March 22, 2019

Respectfully Submitted,
MARCOS DaSILVA, et al., individually
and on behalf of all others similarly
situated,
By their attorneys,


  /s/ Harold L. Lichten
Harold L. Lichten BBO# 549689
Benjamin J. Weber BBO# 673736
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994 5800
hlichten@llrlaw.com
bjweber@llrlaw.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on March 22, 2019, the foregoing document was filed electronically through the ECF System and is available for viewing and downloading from the ECF System, that it will be sent electronically to counsel of record identified as registered participants on the Notice of Electronic Filing, and that paper copies will be sent to those indicated as non-registered participants.


/s/ Harold L. Lichten
Attorney for Plaintiffs