# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ) | | |
| MARCOS DaSILVA and MATTEUS ) | | |
| FERREIRA, on behalf of themselves ) | | |
| and all others similarly situated, ) | | |
| ) | | |
| Plaintiffs, ) | Case No. 16-cv-11205-PBS | |
| ) | | |
| v. ) | | |
| ) | | |
| BORDER TRANSFER OF MA, INC. ) | | |
| and PATRICK MCCLUSKEY, ) | | |
| ) | | |
| Defendants. ) | | |
| ) | | |

## PLAINTIFF'S ASSENTED-TO MOTION FOR PRELIMINARY APPROVAL OF A CLASS ACTION SETTLEMENT

Plaintiffs Marcos DaSilva and Matteus Ferreira seek preliminary approval of a class

action settlement agreement and release ("Settlement Agreement") entered into between the

Parties in this action.  See Settlement Agreement attached as Ex. A.  The proposed settlement

creates a $450,000 settlement fund.  After reduction for the proposed awards of attorneys' fees

and costs, and incentive payments to the named Plaintiffs, a net fund of $270,000 will be

distributed to the approximately 41 class members (if all class members respond) who will

receive pro rata shares based on the amount of time they worked for BTMI and the amount of

deductions that were taken out of their compensation.  The settlement is non-reversionary and

will provide the class with substantial compensation.  If every contractor files a claim, even

though it is more likely that closer to 75 percent will file claims, the average share will exceed

$6,500, while approximately 25 percent of the class will receives shares in excess of $10,000.

Due to limitations on BTMI's ability to pay the settlement in a single distribution, BTMI

will fund the proposed settlement with a payment of $325,000 upon final settlement approval

from this Court and a second payment of $125,000 approximately one year after an order

granting preliminary approval.  Payments to claiming class members will be made in two

distributions, with each installment payment being distributed in full to class members who have

submitted claims by that date, as well as for attorney's fees, and incentive payments for the class

representatives.  None of the settlement funds will be held back, but any amounts remaining after

the final distribution due to uncashed checks will be distributed to the cy pres beneficiary, the

Employment Unit of Greater Boston Legal Services.

As set forth below, Plaintiff's counsel believes that the settlement is fair and reasonable,

and bestows significant monetary benefits upon the class.[1]  On November 9, 2017, this Court

granted Plaintiffs' motion for class certification pursuant to Fed. R. Civ. P. 23 and certified a

class defined as: "All individuals who 1) entered into a Contract Carrier Agreement (or similar

agreement) directly or through a business entity; 2) personally provided delivery services for

[BTMI] on a full-time basis in Massachusetts (at least 40 hours per week); and 3) who were

classified as independent contractors, at any time since June 23, 2013."  ECF No. 95 at p. 33.

After thoroughly reviewing Defendants' records, the parties have identified approximately 40

individuals who meet the class definition.[2]

---

[1]      Indeed, the proposed settlement is similar to class action settlements reached in other
cases involving claims that delivery drivers were misclassified as independent contractors in
Massachusetts and in other states that have similar wage laws.  See, e.g., Martins v. 3PD, Inc.,
No. 11-11313-DPW (March 2, 2016 D.Mass.) (ECF No. 209); Tavares v. XPO Last Mile, Inc.,
No. 15-1550 (Aug. 11, 2017 D. Conn.) (ECF No. 123); Brandon v. 3PD, Inc., No. 13-3745 (Jan.
26, 2016 N.D. Ill.) (ECF No. 151); Kephart v. BeavEx, Inc., No. 12-cv-07843 (June 4, 2018
N.D. Ill.) (ECF No. 227).

[2]      The parties identified approximately 20 other individuals whose companies contracted
with BTMI to provide delivery services in Massachusetts during the class period, but did not
personally perform deliveries on a full-time basis (at least 40 hours per week) as required by the
Court to be included in the class.  These individuals have been excluded from the class and from
this settlement.  The 20 individuals, however, will receive notice that they have been determined

Plaintiff, therefore, requests that the Court issue an Order in the form attached hereto as Ex. E: 1) granting preliminary approval of the class action settlement; 2) approving the Parties' proposed Notice (attached as Exhibit B) and Claim Forms (attached as Exhibit C); 3) authorizing the Parties to initiate the Notice and Claims process set forth in their Agreement and described below; and 4) setting a date for a hearing on final approval of the class action settlement for 60 days after the date of preliminary approval.[3]

## I.      BACKGROUND

### A.      Procedural Background

This lawsuit has been extensively litigated over the last three years.  Plaintiffs Marcos DaSilva and Matteus Ferreira initiated this lawsuit on June 23, 2016 by filing their complaint in United States District Court for the District of Massachusetts alleging that Defendant BTMI's actions violated the Massachusetts wage laws, M.G.L. c. 149, § 148 (Count I); and constituted unjust enrichment (Count II). ECF No. 1.  On August 8, 2016, Defendant BTMI filed a motion to dismiss the complaint, arguing that Plaintiffs' claims were preempted by the Federal Aviation Administration Authorization Act of 1994, 49 U.S.C. § 14501(c) ("FAAAA"), and that Plaintiffs' claim for unjust enrichment should also be dismissed.  ECF No. 8.  On January 5, 2017, the court denied the motion to dismiss Count I (Wage Act), but granted BTMI's motion to dismiss Count II (unjust enrichment).  ECF No. 49.

On March 6, 2017, the parties held a full-day mediation with a well-respected class action wage and hour mediator, Michael Loeb, but the mediation was ultimately unsuccessful.

On March 15, 2017, Plaintiffs filed a motion to amend the complaint to add Patrick McCluskey

---

not be members of the class and are, thus, not participating in this settlement. See Proposed Notice to Non-Class Members (attached as Ex. D).

[3]      The Settlement Agreement is attached hereto as Ex. A.

as an individual defendant.  ECF No. 55.  On May 1, 2017, the Court granted Plaintiffs' motion and

the amended complaint was filed on May 1, 2017.  ECF Nos. 64-65.  Defendants filed their answer to

the amended complaint on May 22, 2017.  ECF No. 66.

On June 19, 2017, Plaintiffs filed a motion for class certification.  ECF No. 73.  Defendants

filed their opposition to class certification on June 30, 2017, and Plaintiffs filed their reply in support

of class certification on July 26, 2017.  ECF Nos. 80, 86.  On November 9, 2017, the Court granted

Plaintiffs' motion for class certification and certified a class defined as:

> All individuals who 1) entered into a Contract Carrier Agreement (or similar agreement)
> directly or through a business entity; 2) personally provided delivery services for [BTMI] on
> a full-time basis in Massachusetts (at least 40 hours per week); and 3) who were classified as
> independent contractors, at any time since June 23, 2013.

ECF No. 95 at p. 33.

On December 5, 2017, Plaintiffs filed a motion to compel the production of a class list and

permit Plaintiffs' counsel leave to administer class notice in-house.  ECF no. 96.  On February 1,

2018, the Court granted, in part, Plaintiffs' motion to compel.  ECF No. 106.  Defendants produced a

class list of approximately 59 individuals and, on February 6, 2018, notice was mailed to the 59 class

members identified by Defendants.

On October 8, 2018, Defendants filed a motion for summary judgment on liability.  ECF No

108.  On November 19, 2018, Plaintiffs filed their opposition to Defendants' motion for summary

judgment.  ECF No. 120.  On November 20, 2018, Plaintiffs filed their own partial motion for

summary judgment.  ECF No. 122.

On December 10, 2018, Defendants filed a motion to compel depositions of class members

whose declarations were submitted in support of Plaintiffs' motion for summary judgment.  ECF No.

130.  On December 17, 2018, Defendants filed their reply in support of summary judgment.

On January 3, 2019, the Court granted Defendants' motion to compel depositions. ECF No. 139. Defendants conducted further depositions and, on February 22, 2019, Defendants filed an amended opposition to Plaintiffs' motion for summary judgment. ECF No. 140. On March 22, 2019, Plaintiffs filed their reply in support of summary judgment. ECF No. 148.

On May 1, 2019, the Court issued its ruling on summary judgment. ECF No. 158. The Court granted summary judgment in Plaintiffs favor for class members who worked pursuant to BTMI's Contract Carrier Agreement Defendants used from June 2013 to April 2017. At the same time, the Court held that there were issues of fact regarding whether class members who worked pursuant to the Contract Carrier Agreement used by Defendants after April 2017 were employees or independent contractors. In addition, the Court held that, for contractors found to be employees of Defendants, deductions BTMI made to payments for the contractor's deliveries violated the Massachusetts Wage Act and that amounts paid by contractors for worker's compensation and cargo insurance violated further violated the Wage Act.

On May 31, 2019, the parties attended a second full-day mediation with Magistrate Judge Judith G. Dein. ECF No. 167. Prior to the mediation, Defendants produced data showing all of the deductions from its carriers compensation during the class period. In addition, Plaintiffs reviewed thousands of documents that BTMI produced and shared a list of the carriers whom Plaintiffs had determined performed deliveries for BTMI in Massachusetts on a full-time basis.

### B.    Sears Bankruptcy

BTMI serviced one customer at its Massachusetts operation, Innovel Solutions, Inc. Sears is, by a significant margin, Innovel's largest customer serviced at the Massachusetts operation.. In October 2018, Sears filed for Chapter 11 bankruptcy. While Sears emerged from bankruptcy and continues to do business, its has gone from having 4,000 stores in operation in 2012 to having

approximately 400 still in business today.  Accordingly, BTMI's business has also suffered.  The

downturn in Sears' business has cut the volume of Sears' products that BTMI delivers by 75 percent.

Moreover, BTMI lost a combined $110,000 in 2017 and 2018 and continues to operate at a reduced

capacity as a result of Sears' financial problems.

## I.     THE TERMS OF THE PROPOSED SETTLEMENT.

### A.  Monetary Terms.

The total settlement amount is $450,000, to be distributed to all 40 class members or as

many who are found and file claims with no reversion back to Defendants.  Plaintiffs' counsel

believes that the financial settlement will provide reasonable compensation to the class members

for the wrongs alleged in the complaint, particularly given the litigation risks if the case were to

move forward, which would include, for example, the risk of decertification, the Court granting a

motion for reconsideration of the summary judgment order that Defendants planned to file,  loss

at trial, or losing on an appeal.

Plaintiff's counsel anticipates a very high participation rate among the class members, but

if an individual fails to submit a claim form, his settlement share will not revert to Defendants –

instead, that amount will be redistributed to the participating class members.  Further, unclaimed

funds from any class members who exclude themselves from the settlement will also be

redistributed to participating class members.

The settlement agreement proposes that, if approved by the Court, the settlement fund of

$450,000 will be distributed as follows:

1. To pay an incentive payments of $15,000 to named Plaintiffs Marcos DaSilva and

   Matteus Ferreira who both initiated this action to benefit the entire class of

   contractors who made deliveries for BTMI in Massachusetts, who both sat for

depositions, who both traveled to attend the two full-day mediations held in this

matter, and who actively participated in this action, responded to written discovery,

and helped Plaintiff's counsel prepare for mediation.

2. To pay an award of one-third of the gross settlement amount ($150,000), to class

counsel, which will cover both their fees and expenses in litigating this lawsuit.

Plaintiff's counsel will administer the settlement in-house, thereby saving the costs of

a third-party class action administrator.

3. The remaining amount, the Net Settlement Fund, will total at minimum $270,000 to

be distributed to all participating class members, based on a formula that takes into

consideration the number of weeks the individual's business was under contract with

BTMI pursuant to a Contract Carrier Agreement to provide delivery services, and

personally provided such services and the amount of deductions BTMI took  from

payments for those  delivery services  (described in more detail below).

**B.      Procedures and Formula for Distribution of the Class Funds.**

If this Court grants this motion, the settlement administration will be conducted by Class

Counsel's law firm, Lichten & Liss-Riordan, P.C., which maintains an in-house staff for that

purpose.  This will save thousands of dollars for the class that would otherwise have gone to pay

for a third-party class action administrator.  Class Counsel will send a notice to each class

member (as approved by the Court) informing them of the settlement, how they can share in the

net settlement amount by signing and submitting a simple claim form, and, of their right to

participate in the settlement, object to the settlement, or to opt out of the settlement.  See

Proposed Notice Form (attached as Ex. B).  The notice will also inform class members that this

7

settlement will settle all related claims that they may have had against Defendants up until the date this court grants preliminary approval of the settlement.

Class members will also receive a claim form, which must be signed by the class member to take part in the settlement.  See Proposed Claim Form (attached as Ex. C).  The notice will request that class members return their claim forms within 60 days.

If notices come back as undeliverable at the address provided, Class Counsel will, using software they have purchased, attempt to obtain more accurate addresses for those individuals and resend the notices.  Although the notice will inform individuals they must return their claim form within 60 days, in fact the parties agree that any individual who files a valid claim form up until five days before the net settlement fund is distributed will be eligible to receive their full share.  Class counsel will, if necessary, follow up with phone calls or emails to obtain maximum participation.

As this Court has ruled, class members who were misclassified as independent contractors may recover deductions made from their pay as well as amounts they paid for worker's compensation and cargo insurance.  With that in mind, the net settlement fund of $270,000 will be allocated as follows:

Class members who file claims will receive a 1.0 share for each week their respective business was under contract with BTMI and during which the class member personally performed deliveries.  On top of that, claimants will receive a share multiplier based on the relative amount of deductions that were taken from their compensation by BTMI.  Claimants will be divided into three tiers based on their average weekly deductions – claimants in the top tier will receive a share multiplier of 1.4, claimants in the middle tier will receive a share multiplier

of 1.2, and claimants in the bottom tier with the least in deductions will receive a share multiplier of 1.0 (or no share bonus).

The Net Settlement Amount will be divided by the number of total weeks under contract (plus the bonus weeks) by all the claimants to establish a dollar amount per week.  Each claimant's share will then be calculated by multiplying the claimant's Contract Weeks (including their bonus weeks) by the weekly amount.

Furthermore, the settlement is non-reversionary – meaning 100 percent of the net settlement fund will be distributed to class members who file claims.  Any unclaimed shares will be redistributed to the claimants.  In the event that the settlement checks remain uncashed 90 days after being sent out, such remaining funds will go to a *cy pres* beneficiary, Employment Unit of Greater Boston Legal Services.

## II.     ARGUMENT

### A.     The Proposed Settlement is Fair and Reasonable

It is well established that courts favor settlements of lawsuits over continued litigation. See, e.g., Williams v. First Nat'l Bank, 216 U.S. 582, 595 (1910); E.E.O.C. v. Astra U.S.A., Inc., 94 F.3d 738, 744 (1st Cir. 1996) ("We do not doubt that public policy strongly favors encouraging voluntary settlement"); Durett v. Housing Auth. of  Providence, 896 F.2d 600, 604 (1st Cir. 1990) (recognizing the "clear policy in favor of encouraging settlements"); Newberg on Class Actions, §11:41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy").  The advantages of settlements are particularly apparent in the compromise of class actions, which are "often complex, drawn out proceedings demanding a large share of finite judicial resources…." Mayfield v. Barr, 985 F.2d 1090, 1092 (D.C. Cir. 1993).

The Federal Rules of Civil Procedure require court approval of class action settlements, and mandates approval of such settlements if they are "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e); see also In re Relafen Antitrust Litig., 360 F. Supp. 2d 166, 195 (D. Mass. 2005). Court approval of class action settlements is a two-step process. First, counsel submits the proposed terms of the settlement and the court makes a preliminary fairness evaluation. If the preliminary evaluation of the proposed settlement indicates that the settlement is fair, the court should direct that notice be given to the class members of a formal fairness hearing, at which the court undertakes a more thorough evaluation of the settlement's fairness, reasonableness, and adequacy. See generally Torrisi v. Tucson Elec. Power Co., 8 F.3d 1370, 1377 (9th Cir. 1993) (noting and implicitly approving the district court's use of a preliminary approval process).

"The preliminary approval decision is not a commitment to approve the final settlement; rather, it is a determination that 'there are no obvious deficiencies and the settlement falls within the range of reason.'" Gates v. Rohm & Haas Co., 248 F.R.D. 434, 439 (E.D. Pa. 2008) (citations and quotation marks omitted). As noted by the Second Circuit, approving the dissemination of notice "is at most a determination that there is what might be termed 'probable cause' to submit the proposal to class members and hold a full-scale hearing as to its fairness." In re Traffic Executive Association- Eastern Railroads, 627 F.2d 631, 634 (2d Cir. 1980). A presumption of fairness, adequacy, and reasonableness attaches to a class settlement "reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal–Mart Stores, 396 F.3d at 116; see also City P'ship Co. v. Atl. Acquisition Ltd. P'ship, 100 F.3d 1041, 1043 (1st Cir. 1996) ("when sufficient discovery has been provided and the parties have bargained at arms-length, there is a presumption in favor of the settlement."). More specifically, there is a "presumption that the settlement is within the range of reasonableness" when "(1) the

negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of

the settlement are experienced in similar litigation; and (4) only a small fraction of the class

objected."  In re M3 Power Razor System Marketing & Sales Practice Litig., 270 F.R.D. 45, 62-

63 (D. Mass. 2010).

Moreover, "[t]he assistance of an experienced mediator in the settlement process

confirms that the settlement is non-collusive."  Burkholder v. City of Ft. Wayne, 750 F.Supp.2d

990, 995 (N.D. Ind. 2010 (quoting Carter v. Anderson Merchandisers, LP, 2010 WL 144067, at

*6 (C.D. Cal. Jan. 7, 2010)).

Finally, a defendant's financial condition may also be considered in determining whether

a settlement is fair, adequate, and reasonable. See e.g., Redman v. RadioShack Corp., 768 F.3d

622, 632 (7th Cir. 2014); Lucas v. Vee Pak, Inc., 2017 WL 6733688, at *9-11 (N.D. Ill. Dec. 20,

2017) (finding proposed class settlement amount reasonable given defendant's inability to

withstand a large judgment); Kleen Prods. LLC v. Int'l Paper Co., 2017 WL 5247928, at *2

(N.D. Ill. Oct. 17, 2017) (defendants' ability to pay considered in determining reasonableness of

class settlement).  "The financial condition of the defendant in class action settlement is a

legitimate – if not entirely pragmatic – consideration."  Swift v. Direct Buy, Inc., 2013 WL

5770633, at *7 (N.D. Ind. Oct. 24, 2013) (citing In re Wireless Tel. Fed. Cost Recovery Fees

Litig., 396 F.3d 922, 932 (8th Cir. 2005)).

Applying these principles, the Court should preliminarily approve the proposed

settlement.  The settlement is the product of arms-length bargaining conducted after extensive

analysis of the relevant discovery record and compensation data, and after two full days of

mediation -- in March 2017 and May 2019 – the second of which with Magistrate Judge Judith

Dein.  Plaintiffs' counsel is experienced in similar wage and hour class action litigation on behalf

of delivery drivers and other allegedly misclassified workers, and have successfully litigated and

obtained settlement approval in many similar cases across the country.  Lead counsel Harold

Lichten has litigated and successfully settled dozens of similar class actions.  See, e.g., Scovil v.

FedEx Ground Package Sys., Inc., 2014 WL 1057079, at *4 (D. Me. Mar. 14, 2014) ("Lead

counsel, Harold Lichten, has represented numerous classes alleging misclassification and failure

to pay wages and other benefits in individual and class actions across the country [and] the law

firm of Lichten & Liss-Riordan represented classes of [FedEx] drivers in Connecticut,

Massachusetts and Vermont….").[4]  Many of these cases have results in class actions settlements

that were approved by the courts and which included similar methods of notifying class

members, calculating and distributing claimants settlement shares, allocating incentive payments,

and providing for the same one-third provision for attorney's fees.[5]

---

[4]    See also Costello v. BeavEx, Inc., 810 F.3d 1045 (7th Cir. 2016) (representing class of misclassified delivery drivers); Scantland v. Jeffry Knight, Inc., 721 F.3d 1308 (11th Cir.2013) (representing class of misclassified cable installers seeking unpaid wages); Brandon v. 3PD, Inc., C.A. No. 13-cv-03745 (N.D. Ill. 2013) (represented class of misclassified delivery drivers working for company purchased by XPO); Martins v. 3PD, Inc., No. 11–11313–DPW, 2013 WL 1320454 (D. Mass. Mar. 28, 2013) (same); Rodriguez v. Joseph Eletto Transfer, Inc. et al., Index No. 005431/2016 (N.Y. Sup. Ct. 2016); Stull et al. v. Joseph Eletto Transfer, Inc. et al., Civ. Act. No. 1573-CV-00500 (Mass. Sup. Ct. 2015); Anderson v. Homedeliveryamerica.com, Inc., 2013 WL 6860745 (D. Mass. Dec. 30, 2013) (class of delivery drivers were employees under Massachusetts law); Somers v. Converged Access, Inc., 911 N.E.2d 739 (Mass.2009) (landmark decision of the Massachusetts Supreme Judicial Court on independent contractor misclassification); Oliveira v. Advanced Delivery Systems, Inc., C.A. No. 09-1311 (Mass. Super. Ct. 2009); Sherman v. American Eagle Express, Inc., d/b/a AEX Group, C.A. No. 2:09-00575-JS; (E.D. Pa. 2009); Fucci v. Eastern Connection Operating, Inc., C.A. No. 2008-2659 (Mass. Super. Ct. 2008).

[5]    These cases include the following: Vargas v. Spirit Delivery & Distribution Services, Inc., No. 13-12635 (D. Mass. July 24, 2018); Bokanoski v. LePage Bakeries Park St., LLC, No. 15-00021 (D. Conn.); Tavares v. S-L Distribution Co., 2016 WL 1743268, at *1 (M.D. Pa. May 2, 2016); Tavares v. XPO Last Mile, Inc., No. 15-1550 (D. Conn.); Martins v. 3PD, Inc., No. 11-11313 (D. Mass.); Brandon v. 3PD, Inc., No. 13-3745 (N.D. Ill.); Belaabd v. Early Bird Delivery, Norfolk Cty. No. 14-579 (Mass. Super. Ct); Barkley v. The Convertible Castle, Inc., Suffolk Cty. Civ. A. No. 13-1078 (Mass. Super. Ct.); Reynolds v. City Express, et al., Suffolk Cty. C.A. No. 10-2655 (Mass. Super. Ct.); Reynolds v. World Courier Ground, Inc., Norfolk C.A. No. 10-11060 (Mass. Super. Ct.).

Although Plaintiffs believe that they have strong and meritorious claims, several concerns have led Plaintiffs' counsel to conclude that a settlement with Defendants is preferable to a trial on the remaining issues of fact.  First, BTMI's financial condition raised serious concerns that even if Plaintiffs were successful at trial, BTMI's ability to pay would have made it difficult to collect a judgment.  BTMI derives nearly all of its income from performing deliveries for Innovel Solutions in Massachusetts and Ohio, and Sears is Innovel's largest customer by a significant margin.  Sears has experienced significant financial trouble and has gone from having 4,000 stores nationwide in 2012 to just over 400 stores today, leading Sears to file for bankruptcy on October 15, 2018.  While BTMI continues to have carriers performing deliveries out of the Innovel facility in Westwood, Massachusetts, the number of deliveries has decreased by 75% over the last couple of years and BTMI has lost approximately $110,000 since 2017.  Thus, the class faced a risk of being unable to recover their damages even if they were successful on the merits.[6]

Second, since this Court defined the class as individuals who personally performed deliveries full time (at least 40 hours a week), Defendants would have argued at trial that Plaintiffs could not show which class members worked full time and could have moved to decertify the class.  Third, Defendants could have prevailed at trial on the question of whether carriers who signed contracts after April 2017 were employees or independent contractors, substantially reducing Plaintiffs damages.  Finally, at trial, Defendants would argue that

---

[6]     Plaintiffs also faced obstacles in recovering any of their damages from individual defendant Patrick McCluskey.  McCluskey resides in Tennessee and claimed at the mediation that all of his assets are jointly owned with his wife.  Under Tennessee law, any jointly held assets, including personal property and bank accounts, are held as a tenancy in the entirety and, as a result, a creditor of one spouse may not be able to reach the combined interests of the spouses.  Avenell v. Gibson, 2005 WL 458733, at *2 (Tenn. Ct. App. Feb. 28, 2005).

Plaintiffs could only recover deductions and other costs that were directly attributable to the

trucks they personally drove which, again, would substantially reduce the amount of damages

where some carriers operated multiple trucks for BTMI.  Thus, despite litigating this case for

three years, Class Counsel has determined that, based on BTMI's financial situation, the best

interests of the class are served by obtaining substantial compensation now rather than face the

risk of being unable to recover anything at this action's conclusion.

Notwithstanding those concerns, Plaintiffs' counsel believes they have still obtained a

great result for the class members.  Assuming a claims rate of 75 percent, claimants will receive

approximately 65 percent of their single damages based on Plaintiffs' counsel's calculations

(which includes both deductions taken from their compensation as well as amounts they paid for

worker's compensation and cargo insurance).  Moreover, carriers who operated only one truck

and personally drove their trucks on a full-time basis over 90 percent of the weeks they worked

for BTMI, will receive approximately 100 percent of the deductions they suffered based on

Plaintiffs' counsel's calculations, including the amounts they paid out of their own pockets for

worker's compensation and cargo insurance.  Thus the proposed settlement is inherently fair and

reasonable for the class.

**B.      The Proposed Incentive Payments and Attorney's Fees Are Fair and
Reasonable**

The Court need not rule on the reasonableness of proposed incentive payments to the two

named Plaintiffs and attorney's fees until it rules on Plaintiffs' motion for final settlement

approval.  However, the proposed awards of incentive payments and attorney's fees are

reasonable.

The settlement proposes incentive payments of $15,000 each Plaintiffs Marcos DaSilva

and Matteus Ferreira.  DaSilva and Ferreira initiated this lawsuit on behalf of their co-workers

and it was through their initiative that this recovery was eventually obtained.  Furthermore, over

the three years this matter has been litigated, DaSilva and Ferreira provided invaluable assistance

to class counsel, including providing documents, responding to written discovery, sitting for

depositions, and attending both full-day mediations.[7]  Thus, both of the named Plaintiffs have

provided ample services to the class to justify the proposed incentive payments.  Indeed, courts

"have awarded incentive payments to named Plaintiffs who "[have] been actively involved in the

litigation since its inception and provided counsel with assistance which lead to a favorable

settlement for the entire class."  Plummer v. PJCF, LLC, 2015 WL 5952426, at *3 (M.D. Fla.

Oct. 13, 2015) (quoting Heath v. Hard Rock Cafe Intern. (STP), Inc., 2011 WL 5877506, at *4

(M.D.Fla. Oct. 28, 2011)).

Moreover, the proposed incentive payments are within the range regularly approved in

similar wage and hour cases.  See, e.g., Martins v. 3PD, Inc., No. 11-11313 (July 22, 2016) (ECF

No. 211) (approving total of $60,000 in incentive payments --$20,000 to each of three named

plaintiffs); Civil v. Spirit Delivery, No. 13-12635 (D. Mass. July 24, 2018) (ECF No. 242)

(approving incentive payment of $25,000 for named plaintiff); Brandon v. 3PD, Inc., No. 13-

3745 (Jan. 26, 2016 N.D. Ill.) (ECF No. 151) (approving incentive payments of $20,000 for two

class representatives and $10,000 for named plaintiff not in the proposed class);, Willix v.

Healthfirst, Inc., 2011 WL 754862, at *7 (E.D.N.Y. Feb. 18, 2011) (approving incentive

payments of $30,000, $15,000, and $7,500 in wage and hour class action settlement); In re

---

[7]     Ferreira, who now resides in Florida, traveled to Boston for the mediation with Judge
Dein on May 31, 2019.

Janney Montgomery Scott LLC Financial Consultant Litigation, 2009 WL 2137224, *12

(E.D.Pa. July 16, 2009) ($20,000 incentive payments in FLSA and Pennsylvania wage and hour

case); Torres v. Gristede's Operating Corp., 2010 WL 5507892, at *8 (S.D.N.Y. Dec.21, 2010)

aff'd, 519 F. App'x 1 (2d Cir.2013) (finding reasonable service awards of $15,000 to each of 15

named plaintiffs).  One of the reasons for awarding incentive payments in employment cases,

including wage and hour cases, is that workers bringing wage claims face the very real threat of

retaliation.  As one court observed: "[Enhancement] awards are particularly appropriate in the

employment context. In employment litigation, the plaintiff is often a former or current

employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit

of the class as a whole, undertaken the risk of adverse actions by the employer or co-workers."

Frank v. Eastman Kodak Co., 228 F.R.D. 174, 187 (W.D.N.Y. 2005).  Thus, as Plaintiffs will

demonstrate in the motion for final settlement approval, the proposed incentive payments of

$15,000 are fair and within the range approved in similar cases.

Furthermore, in the motion for final approval, Plaintiff's counsel will request an award of

attorneys' fees which will provide them one-third of the gross amount recovered under the

settlement, i.e., $150,000.  A one-third attorney's fee in a common fund case has been

consistently approved as reasonable.  See, e.g., In re Thirteen Appeals Arising Out of the San

Juan Dupont Plaza Hotel Fire Lit., 56 F.3d 295 (1st Cir. 1995) (awarding attorneys' fees of $68

million out of a $220 million settlement fund); Matamoros et al v. Starbucks Corporation, C.A.,

No. 08-10772 (D. Mass. 2013) (approving award of one-third attorneys' fee for a $23.5 million

settlement in a Tips Law class action); Johnson et al. v. Morton's Restaurant Group, Civ. A. No.

05-11058 (D. Mass. 2009) (approving award of one-third attorneys' fee for a $12 million

settlement in a Tips Law class action); Chalverus v. Pegasystems, Inc., Civ. A. No. 97-12570 (D.

Mass. 2000) (awarding as an attorneys' fee one-third of a more than $5 million recovery).  Thus, Plaintiff's counsel's proposed one-third fee is fair and reasonable.

Moreover, even if the Court utilizes the "lodestar cross-check", the fees requested here are eminently reasonable, as they come to less than Plaintiff's counsel's estimated lodestar. This case entailed extensive discovery, including numerous depositions, and multiple and extensive briefing of dispositive motions and class certification. The two principal attorneys who worked on this case – Harold Lichten and Benjamin Weber - spent approximately 700 hours litigating this case over the past three years. Using a blended hourly rate of $400 for all counsel, Plaintiffs' counsel's attorneys' fee lodestar (for the three principal attorneys who worked on the case alone) totals approximately $280,000.  The one-third fee they are requesting -- $150,000 – is approximately $130,000 less than the lodestar.

Furthermore, the amount includes costs paid by Plaintiffs' counsel in this case, which include costs associated with conducting two depositions and two mediations, which total approximately $5,000.  Plaintiff's counsel will not seek any costs or fees for the administrative expenses, staff time, and attorneys' time dedicated to administration of the settlement, and performance of all of this work in-house, as opposed to through a third-party administrator, will save thousands of dollars of the class members' funds.  Moreover, the proposed attorney's fees and costs are inclusive of all future expenses and time that Plaintiff's counsel will incur in the next several months administering the settlement fund, calculating settlement shares, taking care of all mailings and filings, responding to inquiries from class members, and issuing checks and necessary tax forms.  Plaintiff's ability to administer the class settlement without hiring a class action settlement administrator will result in a substantial savings to the settlement fund, which can then be more properly used to pay distribution shares to class members.

### III.    CONCLUSION

Plaintiff requests that the Court enter the Proposed Order attached hereto as Exhibit A and

1) grant preliminary approval of the class action settlement,

2) approve the Parties' proposed Notice and Claim Forms, while allowing them to make minor, non-substantive changes to the same as necessary consistent with the terms above,

3) authorize the Parties to initiate the Notice and Claims process set forth in their Agreement and described below, and

4) authorize Plaintiffs' counsel to send out the attached notice to individuals who received class notice in 2017, but are deemed to no longer be members of the class; and

5) set a date for a hearing on final approval of the class action settlement for 60 days after the date of preliminary approval.

Dated: July 5, 2019.

Respectfully submitted,

MARCO DaSILVA and MATTEUS FERREIRA,
individually and on behalf of all others similarly
situated            ,

By their Attorneys,

 _/s/ Harold L. Lichten_____
Harold L. Lichten
Benjamin J. Weber
Lichten & Liss-Riordan, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
Tel. (617) 994-5800
Emails: hlichten@llrlaw.com
        bjweber@llrlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on July 5, 2019, a copy of this document was served by electronic

filing on all counsel of record.

 _/s/ Harold L. Lichten_____
  Harold L. Lichten

## CERTIFICATE OF CONFERENCE

I hereby certify that on July 5, 2019, I conferred with counsel for Defendants regarding

the relief sought in this motion and that counsel assented the motion.

_/s/ Harold L. Lichten_____
Harold L. Lichten

4836-6877-9163, v. 1